DATE FILED: August 7, 2020 3:49 PM
FILING ID: BB4825099D167
CASE NUMBER: 2020CV32719

| | |
|---|---|
| **DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**<br>1437 Bannock Street<br>Denver, Colorado 80202<br>(720) 865-8301 | |
| **Plaintiff:** KAREN TOWNSEND,<br><br>v.<br><br>**Defendant:** THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY. | ▲ COURT USE ONLY ▲ |
| Bradley A. Levin, Atty. Reg. 10395<br>Kerri J. Rugh, Atty. Reg. 29966<br>**LEVIN SITCOFF PC**<br>1512 Larimer St., Suite 650<br>Denver, Colorado 80202<br>Phone Number: (303) 575-9390<br>Fax Number: (303) 575-9385<br>bal@levinsitcoff.com<br>kjr@levinsitcoff.com | Case Number:<br><br>Div.: |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiff Karen Townsend, by and through undersigned counsel, LEVIN SITCOFF PC, for her Complaint and Jury Demand against Defendant The Northwestern Mutual Life Insurance Company, states and alleges as follows:

## PARTIES AND JURISDICTION

1. Plaintiff Karen Townsend is an individual residing in the State of Colorado.

2. Defendant The Northwestern Mutual Life Insurance Company ("Northwestern") is a corporation created and existing under the laws of the State of Wisconsin and which has, at all times herein, been authorized to conduct business in the State of Colorado.

3. The insurance policies that are the subject of this lawsuit were issued by Northwestern in the State of Colorado.

4. This Court has jurisdiction over the subject matter of this action and the parties hereto.

EXHIBIT A

      5.      Pursuant to C.R.C.P. 98(c), venue is proper in this county, which Plaintiff designates as the place of trial of this action.

## GENERAL ALLEGATIONS

      6.      Darren and Karen Townsend (collectively, the "Townsends") were married in 1992. Eighteen (18) years later they adopted a daughter.

      7.      As part of their desire to ensure their family was financially protected, the Townsends turned to Scott G. Van Sickle, a Northwestern insurance agent, to help them secure replacement life insurance coverage.

### The Policies

      8.      Specifically, Mr. Van Sickle prepared a Northwestern personal planning analysis in March 2017 that involved replacing two individual life insurance policies insuring Darren's life through another insurer with a survivorship policy that insured both of the Townsends, as well as a new individual policy for Darren.

      9.      The Townsends decided to move forward in or about June 2017. Accordingly, Mr. Van Sickle ordered a paramedical examination for Darren. That exam took place at the Townsends' home on June 6, 2017 – the day before Darren's 44th birthday.

      10.      Portamedic conducted the exam, which included filling out a form titled Medical History Questionnaire (the "Questionnaire"). Question 4(c) in the Questionnaire reads: "In the last ten years, have you used marijuana, cocaine, heroin, methamphetamine, hallucinogens, or any other illegal drug or substance?" According to the completed document provided by Northwestern the "no" box is checked, indicating that the Portamedic examiner asked Darren that question verbatim and that Darren answered the question "no." The Questionnaire appears to have been completed by the examiner, and Darren's signature is at the bottom.

      11.      A few days later, on June 14, 2017, a staff member or other agent at Mr. Van Sickle's office filled out the Townsends' Survivorship Life Application. Nothing in that application, or the survivorship policy that was eventually issued, indicates that Northwestern requested or obtained Darren Townsend's medical history for this coverage.

      12.      At the same time, the Townsends continued the process for securing an individual policy for Darren. Accordingly, a staff member or other agent at Mr. Van Sickle's office filled out the Individual Life Insurance Application and Darren signed it on or about August 16, 2017. No medical questions are asked in that application.

13. In addition, Darren was given a Personal Health and Status Declaration form (the "Declaration") to sign. The Declaration indicates that by signing it, the applicant is declaring that "my answers provided in my most recent application sent to the Company are still, to the best of my knowledge and belief, complete, true, and correct today" and that "since providing the answers I have not: . . . 5. Taken any medication or drugs (prescription or nonprescription, legal or illegal); . . .." The Declaration is also dated August 16, 2017.

14. The Declaration was incorrect on its face, as Darren's responses on the Questionnaire indicated that he was suffering from depression and taking medication to control those symptoms. Yet, despite its awareness of this discrepancy, Northwestern proceeded to issue Term Life Policy No. 22 219 582 (the "Individual Policy") to Darren with an effective date of September 20, 2017. Karen Townsend was listed as the named beneficiary.

15. Around the same time, the survivorship coverage was put in place. It is unclear whether Northwestern required a new application to be completed and submitted or whether the June 14, 2017 application was used. In any event, Northwestern contends that it required the Townsends to sign Personal Health and Status Declaration forms at that time and that in reliance thereon, the company issued Survivorship Whole Life Policy No. 22 247 352 with an effective date of October 20, 2017 (the "Survivorship Policy").

**Darren's Hospitalization and Subsequent Death**

16. Darren had struggled with mental illness for many years. He was prescribed medication to control his moods but by October 2018, Darren had stopped taking them.

17. One afternoon, after becoming intoxicated, Darren cut his wrist. Karen transported Darren to Sky Ridge Medical Center, where he was admitted before being transferred to mental health facility Highlands Behavioral Health ("Highlands") in the early morning hours of October 15, 2018.

18. Once at Highlands, Darren was subjected to an intake process during which various Highlands personnel asked multiple questions about his health history. One of those personnel was an intake technician who asked Darren questions about his substance use, given he was intoxicated at the time of admission. The technician completed a form by hand that purported to record Darren's answers to those questions.

19. Highlands discharged Darren the next day with instructions for follow-up appointments with his physician and his therapist, and prescription medication.

20. Darren, however, did not get better. Despite working with his physician over the next few months, Darren never found the right medication combination that provided him with relief and, finding himself unable to bear up under the weight of everyday living, took his own life on April 18, 2019.

3

### The Claim for Benefits

21.   Karen Townsend subsequently submitted a claim for benefits under the Individual Policy to Northwestern.  Northwestern denied the claim by letter dated September 11, 2019, asserting that Darren had lied in connection with his application for insurance.  Northwestern deduced this from one section of one of the forms completed by the Highlands intake technician:

| ☐ DENIES | | SUBSTANCE USE | | | |
|---|---|---|---|---|---|
| ☒ Yes ☐ No | HAVE YOU USED ANY PSYCHOACTIVE OR MOOD ALTERING SUBSTANCES WITHIN THE PAST 12 MONTHS? | | | | |
| ☒ Alcohol<br>☐ Amphetamines<br>☐ Benzodiazepines<br>☐ Barbiturates | ☐ Caffeine<br>☐ Cocaine/Crack<br>☐ Hallucinogens<br>☐ Inhalants | ☐ Marijuana<br>☐ Methadone<br>☐ Nicotine<br>☐ Opiates | | ☐ Pain Medication<br>☐ Sedatives<br>☐ Other:_____ | |
| Substance top 3 | Amount/Frequency/Route | Duration of Use | Age of 1st use | Last use | Amount used in last 24-48 hours |
| ETOH | 2-5 DRINK / 1-2x WK / ORAL | 10+ YRS | 16 | N/W | 4 DRINKS |
| COCAINE | DID 1-2x, SNORT | 1-2x ONLY | 43 | 3/18 | 0 |
| UTOX results: ⊖ FOR ALL, EXCEPT ETOH | | | | | |
| Longest period of sobriety: N/A | | Drug of choice (specific): ETOH | | | |
| Do You Smoke: ☐ Yes ☒ No | | If Yes how much a day: N/A | | | |

22.   Without endeavoring to determine who had recorded this information in the Highlands chart or contacting Highlands, Karen Townsend, or anyone else regarding the chart entry and Darren's cocaine use, Northwestern instead assumed that Darren had used cocaine "as early as" June 7, 2016 – his 43rd birthday – which would have been within the ten-year period of time covered by question 4(c) on the Questionnaire.  Because the box for that question is checked "no," Northwestern concluded that the Questionnaire, the Declaration, and the subsequent declaration related to the application for the Survivorship Policy were all untruthful and "significantly affected the underwriting of his policies."  Northwestern stated that if it had known of Darren's purported "cocaine use" when he was age 43, it would not have issued the Individual Policy and would have underwritten a different survivorship policy with increased premiums.

23.   Therefore, Northwestern surmised, it was entitled to rescind both the Individual Policy and the Survivorship Policy (collectively, the "Policies") and refund the premiums collected for them.

### FIRST CLAIM FOR RELIEF
### (Breach of Contract)

24.   Plaintiff reasserts the allegations in paragraphs 6-23 above as if fully set forth herein.

25.   The Individual Policy is a contract of insurance that was in force and effect on the date of Darren Townsend's death.  As the named beneficiary, Plaintiff was entitled to receive, and

Northwestern was obligated to pay, Plaintiff the benefit under the Individual Policy following his death.

26. All conditions precedent to payment of the death benefit were satisfied by Plaintiff or waived by Northwestern.

27. Northwestern, on the other hand, did not have reliable information that Darren's answer to question 4(c) in the Questionnaire was false, let alone that he knowingly made a misrepresentation about his cocaine use. Indeed, such information does not exist. Therefore, Northwestern could not, and cannot, establish that it was legally entitled to rescind the Individual Policy.

28. Northwestern's failure and refusal to pay the benefit and its attempted rescission of the Individual Policy constitute breaches of that contract as a result.

29. As a result of Northwestern's breaches, Plaintiff has suffered damages in amounts to be proven at trial.

## SECOND CLAIM FOR RELIEF
### (Breach of the Duty of Good Faith and Fair Dealing)

30. Plaintiff reasserts the allegations in paragraphs 6-29 above as if fully set forth herein.

31. Northwestern owed duties arising from the Policies' implied covenants of good faith and fair dealing, under which Northwestern covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiff fairly and honestly, faithfully perform its duty of representation, and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff's rights to receive the benefits provided by the Policies.

32. Northwestern breached its duty of good faith and fair dealing by its actions, which include, without limitation, the following unreasonable acts:

    a. Failing and refusing to conduct a reasonable investigation of Plaintiff's claim under the Individual Policy based upon all available information;

    b. Failing to promptly provide Plaintiff with a reasonable explanation of its claim decision;

    c. Not attempting in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim for which liability had become reasonably clear;

    d. Placing its interests above those of Plaintiff by relying on double hearsay

     statements in a medical record as the sole basis for denying the claim;

  e. Falsely stating that the Questionnaire, the Declaration, and the subsequently submitted declaration form all provided inaccurate information and relying on that assertion as a basis for denying the claim, when such an assertion was objectively impossible;

  f. Attempting to rescind the Policies without reasonable proof that Darren made a false statement of fact in the Questionnaire, the Declaration, or the subsequent declaration, and without any proof that Darren knowingly did so; and

  g. Other conduct to be revealed in discovery.

  33. Northwestern's unreasonable conduct includes violations of C.R.S. § 10-1-101, subparts of C.R.S. § 10-3-1104(1)(h), and industry standards and laws governing the conduct of insurers in the State of Colorado.

  34. As a direct and proximate result of Northwestern's bad faith breach of insurance contract, Plaintiff has suffered damages in amounts to be proved at trial.

### THIRD CLAIM FOR RELIEF
### (Declaratory Judgment)

  35. Plaintiff reasserts the allegations in paragraphs 6 – 34 above as if fully set forth herein.

  36. Northwestern has asserted that it was entitled to rescind the Survivorship Policy because it would have issued a different policy to the Townsends with higher premiums if it had known about Darren Townsend's alleged drug use in the year preceding the policy application. Plaintiff contends that Northwestern did not have a legally proper basis for attempting to rescind the Survivorship Policy.

  37. There is, therefore, an actual controversy between the parties.

  38. Plaintiff is entitled to a declaration pursuant to C.R.S. §13-51-101 *et seq.* that Northwestern wrongfully attempted to rescind the Survivorship Policy, and must therefore reinstate the Survivorship Policy pursuant to the terms and conditions under which it was originally issued.

  **WHEREFORE**, Plaintiff Karen Townsend respectfully requests that judgment be entered in her favor and against Defendant Northwestern Mutual Insurance Company as follows:

  a. For compensatory damages in amounts to be proved at trial;

  b. For a declaration that Northwestern wrongfully attempted to rescind the Survivorship Policy and must reinstate the contract according to the terms and conditions under which it was originally issued;

  c. For reasonable attorneys' fees and costs of suit herein;

  d. For all interest, statutory or moratory, allowed by law; and

  e. For such other and further relief as this Court deems just and proper.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

Dated this 7th day of August 2020.

            Respectfully submitted,

            **LEVIN SITCOFF PC**

            *s/ Kerri J. Rugh*
            Bradley A. Levin
            Kerri J. Rugh
            *Attorneys for Plaintiff*

<u>Plaintiff's Address:</u>
12380 Jasper Point Way
Castle Pines, CO 80108

EXHIBIT A