**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-02809-KLM

KAREN TOWNSEND,

      Plaintiff,

v.

THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY,

      Defendant.

---

**DEFENDANT'S RULE 702 MOTION TO EXCLUDE CERTAIN OPINIONS OF
PLAINTIFF'S PROFFERED EXPERT LAURA PARKER**

---

Defendant The Northwestern Mutual Life Insurance Company (Northwestern) respectfully moves pursuant to Fed. R. Evid. 702 to exclude certain opinions of Plaintiff's proffered claim handling expert, Laura Parker. Pursuant to D.C.COLO.LCivR 7.1(a), counsel for Northwestern has conferred with counsel for Plaintiff about this Motion, which is opposed.

Ms. Parker's opinions detailed in this Motion, expressed in her initial and rebuttal reports and deposition testimony, are inadmissible. They include:

- opinions that a mental health facility's "intake note" stating Darren Townsend's reported cocaine use is "not a medical record" and the licensed professional counselor who prepared the note is "not a medical provider," which unreliable opinions Ms. Parker is unqualified to render;

- speculative opinions, based on a selective summary of available information, on:

   o alleged lack of "veracity" of the medical record stating Mr. Townsend's reported cocaine use, relied on by Northwestern in its denial of Plaintiff Karen Townsend's claim for life insurance benefits following Mr. Townsend's death;

   o further claim investigation Northwestern allegedly should have performed,

although Ms. Parker cannot identify what information such investigation might have revealed or how it could have changed Northwestern's claim decision, given available information including Mr. Townsend's similar report of cocaine use to a separate medical provider at a separate facility;

- unsupported allegations of Northwestern's wrongful intent in its claim decision;

- irrelevant general allegations of insurers' asserted financial incentives to deny claims;

- legal conclusions barred under *Specht v. Jensen,* 853 F.2d 805 (10th Cir. 1988).

These opinions should be excluded from trial. Northwestern further states as follows.

## I.    STATEMENT OF THE CASE

Northwestern issued an individual policy insuring Darren Townsend's life and a joint policy insuring the lives of Mr. Townsend and Plaintiff Karen Townsend, both policies providing coverage according to their terms and conditions ("Policies"). Northwestern issued the Policies in reliance on application information the Townsends provided, including a Medical History Questionnaire ("MHQ") completed on June 6, 2017, by Mr. Townsend, who answered "no" to question 4(c): "In the last ten years, have you used . . . cocaine, . . . or any other illegal drug or substance?" (NORTHWESTERN575-76, **Ex. A**, p. 576.)

Mr. Townsend tragically died by suicide on April 18, 2019. Plaintiff submitted a claim for benefits under the individual policy. As permitted under the Policies, Northwestern performed a contestable review to verify the completeness and accuracy of application representations made by Mr. Townsend as part of underwriting for the Policies.

The review included obtaining medical records from Mr. Townsend's medical providers. The records included those from treatment at Highlands Behavioral Health ("Highlands"), a mental health treatment facility, which included the following October 15, 2018, entry within a Comprehensive Assessment Tool report for Mr. Townsend:

| ❑ DENIES | SUBSTANCE USE | | | | | |
|---|---|---|---|---|---|---|
| ☒ Yes ❑ No | HAVE YOU USED ANY PSYCHOACTIVE OR MOOD ALTERING SUBSTANCES WITHIN THE PAST **12** MONTHS? | | | | | |
| ☒ Alcohol<br>❑ Amphetamines<br>❑ Benzodiazepines<br>❑ Barbiturates | ❑ Caffeine<br>❑ Cocaine/Crack<br>❑ Hallucinogens<br>❑ Inhalants | | ❑ Marijuana<br>❑ Methadone<br>❑ Nicotine<br>❑ Opiates | | ❑ Pain Medication<br>❑ Sedatives<br>❑ Other:_____ | |
| Substance top 3 | Amount/Frequency/Route | | Duration of Use | Age of 1st use | Last use | Amount used in last 24-48 hours |
| EToH | 2-5 DRINK / 1-2 X WK / ORAL | | 10+ YRS | 16 | 10/14 | 4 DRINKS |
| COCAINE | DID 1-2 X , SNORT | | 1-2 X ONLY | 43 | 3/18 | ∅ |
| | | | | | | |
| | | | | | | |

UTOX results: ⊖ FOR ALL , EXCEPT ETOH

Longest period of sobriety: _____ N/A _____        Drug of choice (specific): _____ ETOH _____

Do You Smoke: ❑ Yes ☒ No        If Yes how much a day: _____ N/A _____

(Excerpt from NORTHWESTERN306 (**Ex. B**), also copied to Complaint (Doc. 5), ¶ 21.)  That record depicted an "age of 1st use" of cocaine by Mr. Townsend of "43."  Since Mr. Townsend's date of birth was June 7, 1973, the "age of 1st use" period was June 7, 2016 – June 7, 2017 – that is, within ten years before the Northwestern Policies' June 6, 2017, MHQ was completed and signed by Mr. Townsend.

Also during its claim investigation, Northwestern interviewed Plaintiff.  She reported Mr. Townsend had no history of any difficulties with alcohol or drug use and had not seen or been advised to seek treatment or counseling for drug or alcohol use. (**Ex. C**, NORTHWESTERN521-525, p. 524.)

In Northwestern's September 11, 2019, letter to Plaintiff, Northwestern stated the claim for benefits under Mr. Townsend's individual policy was denied; the Policies would not have issued had Northwestern been aware of Mr. Townsend's cocaine use during the ten-year period prior to when the MHQ was completed; the Policies were rescinded and the premiums were being refunded; and Plaintiff was invited to submit additional information for Northwestern's consideration. (**Ex. D**, NORTHWESTERN0052-54.)   Despite Northwestern's invitation to

submit further information regarding Mr. Townsend's cocaine use, Plaintiff did not do so.

This action followed. In her Complaint (Doc. 5), Plaintiff alleges claims for breach of contract, common-law bad faith, and declaratory relief. A five-day jury trial is scheduled to begin April 22, 2022.

With her initial disclosures in this action, Plaintiff produced previously-undisclosed medical records from Mr. Townsend's treatment at HealthOne/Sky Ridge ("Sky Ridge") before his admission to Highlands. Those records include the following October 14, 2018, entry within a Behavioral Health Assessment report for Mr. Townsend:

```
      - - DRUG USE - -
Drug or illegal substance use within last 12 months: Yes
Other substances used: Yes
Other substance type:
  - - Cocaine - -
Instance list status: Active
Amount used per week: one line
Last date used: 03/28/18
Last use amount: One line
<End>
   Pattern of drug use: Episodic
        Last drug use: 6 or seven months ago
          Age of onset: 43
```

(Excerpt from **Ex. E**, TOWNSEND 448.) The above states "Age of onset" of cocaine use: "43." In addition to being consistent with the Highlands record on the age of initial cocaine use, the Sky Ridge record described the last date of use as in March 2018, as had the Highlands record.

With her expert disclosures in this action, Plaintiff disclosed Laura Parker, whose work involves disability and life insurance consulting, as a retained expert on insurance claim handling. Plaintiff submitted Ms. Parker's initial report and CV (**Ex. F**) and rebuttal report (**Ex. G**). Northwestern took Ms. Parker's deposition on September 30, 2021 (relevant rough transcript excepts are attached as **Ex. H**).

Other depositions have been taken in this case, including those of the Plaintiff; Jeremiah (Jero) Repinski, the Highlands licensed professional counselor who completed the Comprehensive Assessment Tool excerpted above; and Carmen Merwin, a licensed professional counselor who prepared the Sky Ridge Behavioral Health Assessment excerpted above. Relevant portions of these depositions, discussed further below, are attached (**Ex. I, J,** and **K,** respectively).

During discovery, disputes arose between the parties.  These included Northwestern's requests for production of Mr. Townsend's records of employment at the Colorado School of Mines and Shotgun Willie's, and of unredacted medical records from Darren Townsend's therapist, referenced as "Tupa" in pre-litigation records and first identified by complete name in Plaintiff's discovery responses.  Following an informal hearing, the Court directed production only of employment records from Shotgun Willie's referencing cocaine use (if any) and dates of employment, but not of any Colorado School of Mines records (*see* Doc. 32).  After *in camera* review of Ms. Tupa's treatment records, the Court ruled Plaintiff was not required to produce unredacted copies of the records (*see* Doc. 33).

## II.    MS. PARKER'S OPINIONS CHALLENGED BY NORTHWESTERN

Northwestern challenges the admissibility of the following of Ms. Parker's opinions as expressed in her reports and deposition, stated to be based on her review of information including the Northwestern claim file and depositions of Plaintiff, Mr. Repinski, and Ms. Merwin (*see* **Ex. F**, p. 31).

### A.    Opinions on Highlands Record as Medical Record and Mr. Repinski as Medical Provider

- "Intake notes were received from Highlands Behavioral Health, *not medical records*."

The "notes" "contained information that differed from all the *actual medical records* on file" from "*treating providers.*"  (Ex. F, p. 16; emphases added.)

- "The intake notes from Highlands Behavioral Health are *not medical 'records'* that specifically state that Mr. Townsend did cocaine at age 43" (*id.*; emphasis added).

- Mr. Repinski "is *not a* physician or *medical provider*" (Ex. G, p. 5; emphases added).

- " . . . Northwestern Mutual chose to rely solely on an *unverified intake form as opposed to* Mr. Townsend's own *medical records from his treating providers*" (Ex. G, p. 5; emphases added; *see also id.,* p. 4, containing similar opinion.)

Ms. Parker disregards Mr. Repinski's testimony that he is a licensed professional counselor and certified addiction counselor (*see* Ex. J, 10:7-15).  Further, in her deposition, Ms. Parker conceded the Highlands record would likely be treated as a medical record by Highlands (*see* Ex. H, 69:8-19).

## B.    Opinions on Lack of "Veracity" of Highlands Record

- The Highlands record "could have been interpreted in a number of different ways"; was "unsubstantiated and conflicting"; contained information that "may or may not have come from Mr. Townsend himself"; and was of "questionable veracity" (*see, e.g.*, Ex. F, pp. 16, 21, 25, 27; Ex. G, pp. 3, 4, containing similar opinions).

- "Regarding cocaine, the [Highlands Behavioral Health] form indicates use of 1 or 2 times only with last usage 3/18. Giving equal consideration to Mr. Townsend, Northwestern Mutual certainly could have considered that Mr. Townsend tried cocaine 1-2 times only on March 18, 2018. That would have made 'age at 1st use' 44 and the notation of '43' by the intake specialist at Highlands Behavioral a mistake or miscalculation of age by either the intake specialist or Mr. Townsend himself. Instead, Northwestern Mutual chose to treat the notation of 'age of 1st use' '43' as fact despite the possibility of it not being true. Specifically, it is not plausible that Mr. Townsend first used cocaine at age 43 if he used cocaine once or even twice in March 2018. In March of 2018, at the time he admitted to 'last' using cocaine, he was 44." (Ex. F, p. 18; *see also id.*, p. 19, with similar opinions.)

Nonetheless, in her deposition Ms. Parker conceded Northwestern had the right under insurance industry standards to rely on the Highlands record.  (*See* Ex. H, 67:11-69:19.)

6

**C.    Opinions on Further Investigation Northwestern Should Have Performed**

- *Failure to interview Mr. Repinski*

  o   Ms. Parker criticizes Northwestern for failing to contact Mr. Repinski to ask questions about the Highlands record (*e.g.*, Ex. F, p. 17).  She testified she had read Mr. Repinski's deposition (Ex. H, 70:9-11).

  o   Ms. Parker cites in her reports Mr. Repinski's deposition statement that he was "sloppy" in completing the Highlands record (*e.g.,* Ex. F, p. 23).

  o   Ms. Parker does not reference Mr. Repinski's testimony that he would be "more precise" regarding cocaine usage, as opposed to other substances, reported by a patient (Ex. J, 69:19-70:8); his failure to check some boxes on the intake form was his "little petty rebellion against the redundancies of the paperwork" (*id.*, 63:19-25); he wrote down what Mr. Townsend told him regarding age of first use of cocaine (*id.*, 51:2-4; 57:18-23); and "I wrote down 43, and so I'm led to believe he said 43" (*id.*, 70:12-13).

  o   Ms. Parker also does not note Mr. Repinski's deposition testimony regarding his adherence to HIPAA privacy requirements and refusal to speak with persons seeking information about the Highlands record without authorization (*e.g.,* Ex. J, 12:18-13:2; 13:25-14:22; 58:2-17).

- *Failure to obtain Sky Ridge records*

  o   Ms. Parker criticizes Northwestern for failing to seek records from Sky Ridge regarding Mr. Townsend's treatment there in October 2018 (*e.g.*, Ex. F, p. 18).

  o   Ms. Parker does not reference in her reports the Sky Ridge record's report of Mr. Townsend's cocaine use with "age of onset 43" and date of last use in March 2018 (*see* Ex. E) or the consistencies between the Highlands and Sky Ridge records (although she stated in her deposition she had read both, as discussed below).

  o   Ms. Parker also does not reference Ms. Merwin's testimony about her preparation of the Sky Ridge medical record based on information from Mr. Townsend, or on her unwillingness to speak to individuals about that record without authorization (*see* Ex. K, 42:16-43:4; 90:5-91:11).

- *Failure to obtain Tupa records*

  o   Ms. Parker faults Northwestern for failing to contact "Tupa" during the claims phase (*e.g.*, Ex. F, pp. 18, 20).

- o Ms. Parker does not mention that Northwestern unsuccessfully attempted to obtain the since-identified Elizabeth Tupa's unredacted records of treatment of Mr. Townsend. (*See* Doc. 33, order denying request for production of unredacted records.)

- o Ms. Parker acknowledged in her deposition that she does not know if any information in the Tupa records would be relevant to the claim determination (Ex. H, 50:10-15).

- *Failure to contact coworkers*

  - o In her deposition (Ex. H, 46:11-17), Ms. Parker stated Northwestern should have sought information about Mr. Townsend's cocaine use from coworkers.

  - o Ms. Parker does not acknowledge that Northwestern sought records from Mr. Townsend's employers and the Court directed that only information from Shotgun Willie's on cocaine use and dates of employment need be produced. (Doc. 32.)

  - o Ms. Parker testified she did not know if information from coworkers would have been relevant to the claim (Ex. H, 46:21-47:7).

- *Failure to interview Plaintiff about cocaine use*

  - o Ms. Parker faults Northwestern for failing to ask Plaintiff about Mr. Townsend's cocaine use (*e.g.*, Ex. F, pp. 18, 25).

  - o Ms. Parker references the Northwestern interview of Ms. Townsend, but fails to mention Northwestern's inquiry about Mr. Townsend's drug use (Ex. F, p. 4; *cf.* Ex. C).

  - o Ms. Parker also does not acknowledge Plaintiff's deposition testimony that Mr. Townsend admitted to her he had used cocaine (although Plaintiff thought the use occurred during 2018) (*see* Ex. I, 38:18-23; 42:23-43:2; 44:16-20; 45:12-47:16; 49:6-15; 72:16-74:11; 90:2-20).

- *Failure to contact other medical providers*

  - o In her deposition Ms. Parker stated Northwestern should have contacted Mr. Townsend's medical providers Larry Wilner, M.D. and Larry Sanders, M.D., whose records Northwestern had obtained (*see* Ex. H, 77:12-13).

  - o Ms. Parker could not state whether those providers – whose records did not mention cocaine use – could have provided any information that would have mattered to the claim (*id.,* 77:18-79:10).

**D.** **Opinions on Northwestern's "Intent," Northwestern's Asserted Conduct, and Insurers' Alleged Financial Incentives to Deny Claims**

- Ms. Parker's report has repeated references to Northwestern's alleged intent regarding its claim determination. *See, e.g.*, Ex. F, p. 16 (Northwestern "*chose* to place the greatest weight on intake notes that would be most favorable to itself"); 16-17 (Northwestern's alleged failure to investigate the Highlands Behavioral Health record "demonstrates Northwestern's *bias*"); 18 (regarding Northwestern's "*refusing* to perform an investigation" and stating Northwestern "*did not bother*" to obtain Sky Ridge records or contact Highlands); 19 (Northwestern "*specifically chose to ignore* certain pieces of information in order to deny the claim" and its interpretation "*speaks volumes* as to where Northwestern Mutual's *priorities and interests lay*"); 21 (Northwestern investigated the claim "*with an eye toward denial* not approval" and has "demonstrated that it had *no intent* on investigating the claim with an eye toward payment" but instead "*focused on denying the claim*"); 22 (Northwestern "*ignore[ed] documentation*"); 26 ("Northwestern *refuses* to pay any benefits" even though it "*knows* that the information it based its rescission and denial on, *may not be accurate*"); 27 (Northwestern "*disregarded* all other information" regarding cocaine use and "*knowingly chose to discontinue its investigation*" and "*ignored* industry standards") (emphases added). (*See also* Ex. G, pp. 3-4, stating similar opinions.)

- Ms. Parker also faults Northwestern for "[m]isrepresenting relevant facts" and "[m]isconstruing information" (Ex. F, pp. 16, 26).

- In addition, Ms. Parker generally opines on insurers' alleged financial incentives to deny claims (Ex. F, p. 13).

**E.** **Opinions that are Legal Conclusions**

- Ms. Parker opines Northwestern had to treat Plaintiff with "equal consideration." (*E.g.*, Ex. F, pp. 18, 19, 20.)

- Ms. Parker suggests the applicable standard in this case is whether Mr. Townsend "lied" or "intentionally misled or misrepresented his cocaine use" (Ex. F, pp. 20, 22).

- Without providing any supporting citations for the asserted "sources," Ms. Parker states:

  o "In order to ensure objective, thorough and fair claim evaluations, *insurance industry sources* have fundamentally agreed that life insurance carriers and those adjudicating life insurance claims comply with the following *pertinent guidelines*:

9

- Fully investigate all pertinent facts of claims and base claim decisions on facts.
- Consider all claim documentation fully and fairly.
- Err in favor of the insured when claim evaluations are inconclusive.
- *Ensure the burden to prove eligibility for benefits is not placed inappropriately on the claimant.*
- Provide training pertaining to procedures, policy language, medical, vocational, financial and legal issues.
- Remain objective in the assessment of eligibility for benefits and not bias the claim evaluation in any manner.
- Make claims decisions independent of company financial goals.
- Consider all medical documentation, Independent Medical Examinations, and attending physician's statements fully, fairly and objectively.
- *Accept claimants' providers' records and opinions unless shown to be inconsistent with clinical and diagnostic standards.*
- Utilization of outside, independent medical resources when there is conflicting medical evidence or conflicting medical opinions." (Ex. F, p. 11; emphases added.)

- "Northwestern Mutual ignored industry standards and chose to place its own interests above those of the Townsends'. Their actions in the claim violated numerous industry claims handling standards including:

  o Knowingly misrepresenting to claimants and insureds relevant facts or policy provisions relating to coverage at issue.
  o Failing to adopt and implement reasonable standards for the prompt investigation and settlement of claims arising under its policies.
  o Not attempting in good faith to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear.
  o Refusing to pay claims without conducting a reasonable investigation." (Ex. F, pp. 27-28.)

## III.    MS. PARKER'S INABILITY TO SPECIFY WHAT FURTHER INVESTIGATION WOULD HAVE ACCOMPLISHED

Notwithstanding her critiques of Northwestern's investigation of Plaintiff's claim, and the statement in her report that further investigation "could have led to approval and payment" (Ex. F, p. 21), Ms. Parker testified that she could not specify what information, if any, Northwestern would have gained had it done the further investigation she advocates. (*See* Ex. H, 44:3-55:9; 74:2075:6; 76:22-79:10; 80:1-81:17.)  As she testified: "I don't know what [Mr.

Townsend's medical providers] would have provided" and can't say whether a different claim decision would have resulted, "because I don't know."  (Ex. H, 81:17; 82:23-83:1.)

But Ms. Parker acknowledged the Sky Ridge record mentioned Mr. Townsend's cocaine use and, like the Highlands record, stated Mr. Townsend's first use of cocaine was at age 43. (*See id.,* 58:6-61:7.)  In addition, while she claimed Sky Ridge personnel might have provided more information about the medical record, she did not acknowledge reviewing the deposition of Ms. Merwin, who prepared the record.  (*See* Ex. K, 64:12-22; 66:4-14.)  She also stated she had read Mr. Repinski's entire deposition but could not explain her omission of the above-referenced testimony regarding his preparation of the Highlands record.  (*See* Ex. H, 70:8-73:8.)

## IV.    LEGAL PRINCIPLES

The Court's Rule 702 standard is well-known.  Expert opinion testimony is admissible if the expert is qualified to render the opinion, and the opinion is both reliable and relevant; an opinion is "reliable" if the "reasoning or methodology of the expert is valid" – that is, "supported by good grounds, based on what is known," and "can be applied to the facts in issue"; and an opinion is relevant if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Lua v. QBE Ins. Corp.*, No. 18-cv-01233-KLM, 2019 WL 5104477, *2, n.3 (D. Colo. Oct. 11, 2019) (internal quotations omitted).  *Ipse dixit* conclusions are inadmissible as unhelpful to jurors.  *See U.S. v. Nacchio*, 555 F.3d 1234, 1258 (10th Cir. 2009).  The testimony's proponent has the burden of demonstrating compliance with Rule 702.  *Id.* at 1241.

Further, the underlying basis for expert opinion must be of sufficient probative force and reliability that a reasonable expert could base an opinion on such facts.  *See In re Breast Implant Litigation*, 11 F.Supp.2d 1217, 1234 (D. Colo. 1998); Fed. R. Evid. 703.  Thus, admissible

opinions must be based on "more than subjective belief or unsupported speculation." *Id*. at 1222. "[S]peculative" expert testimony not grounded in fact should be excluded. *O'Sullivan v. Geico Cas. Co.*, 233 F.Supp.3d 917, 927 (D. Colo. 2017).

Moreover, expert opinion must not invade the province of the jury or of the judge. Thus, in an insurance bad faith action, expert proclamations regarding alleged insurer "intent" to deny benefits are inadmissible because they intrude on determinations for the jury to make. *Tuft v. Indem. Ins. Co.*, No. 19-cv-01827-REB-KLM, 2021 WL 1041665, *4 (D. Colo. Jan. 27, 2021); *see also George v. Metropolitan Prop. & Cas. Ins. Co.*, No. 18-cv-01663-PAB-SKC, 2020 WL 70424, *11 (D. Colo. Jan. 2, 2020) (excluding opinions regarding the insurer's "subjective intent in handling" a claim). Ms. Parker's similar "intent" opinions were recently excluded by the U.S. District Court for the Northern District of Alabama in a disability insurance case, *Lemons v. Principal Life Ins. Co.*, No. 18-CV-01040-CLM, 2021 WL 3508685, *4 (N.D. Ala. Aug. 9, 2021), in a ruling that Ms. Parker could not testify that the insurer "never intended to pay [the insured's] benefits or had no intention of objectively evaluating [the insured's] claim."

Further with respect to admissibility of insurance claim handling expert opinion testimony, as stated in *O'Sullivan,* 233 F.Supp.3d at 921-22, 928:

> While an expert witness's testimony must assist the jury to be deemed admissible, it may not usurp the jury's fact-finding function. The line between what is helpful to the jury and what intrudes on the jury's role as the finder of fact is not always clear, but it is well-settled that an opinion is not objectionable just because it embraces an ultimate issue.
>
> * * *
>
> Here, the central issue in dispute is the reasonableness of [the insurer's] conduct. The reasonableness of an insurer's conduct is determined objectively, based on proof of industry standards, and the jury will be tasked with deciding whether [the insurer's] actions were reasonable . . . .

> *Thus [the expert] may offer testimony articulating what he believes to be the relevant industry standards, and explaining—factually—how [the insurer's] conduct did or did not comport with those standards.*

*Id.* (internal citations omitted, emphasis and paragraph break added). Thus, the expert "may not simply tell the jury what result it should reach without providing any explanation of the criteria on which that opinion is based or any means by which the jury can exercise independent judgment." *Id.* at 929.

As to the role of the Court, "our system reserves to the trial judge the role of adjudicating the law for the benefit of the jury," and expert opinions intruding on such role are inadmissible. *Specht,* 853 F.2d at 808-09. The *Lemons* court recently excluded Ms. Parker's opinions constituting legal opinions. *Lemons*, 2021 WL 3508685 at *4.

Finally, expert opinion testimony should be excluded under Rule 403 if it would cause unfair prejudice. As noted by the U.S. Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579, 594 (1993):

> Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses.

## V.      ARGUMENT

**A.     Ms. Parker's Opinions that the Highlands Record is Not a Medical Record and Mr. Repinski is Not a Medical Provider Should be Excluded**

Ms. Parker should not be allowed to tell the jury that the Highlands record is "not a medical record," and that Mr. Repinski is "not a medical provider." None of Ms. Parker's experience in the insurance arena, primarily disability insurance, qualifies her to make her attempted distinction. The opinions are without reliable factual or methodological basis in

insurance industry standards, and Ms. Parker has provided none; they are pure *ipse dixit*. She disregards Mr. Repinski's role as a licensed professional counselor and certified addiction counselor. Further, she acknowledged at her deposition that Highlands would likely consider the record to be subject to HIPAA privacy protections. Her inadmissible opinions would be unhelpful to a jury and would confuse them, and would unfairly prejudice Northwestern. Fed. R. Evid. 403, 702, 703.

**B.     Ms. Parker's Speculative Attacks on the Highlands Record Should be Excluded**

Ms. Parker attempts through speculation to read ambiguity into the Highlands record but cannot escape the fact that the record states Mr. Townsend reported he first used cocaine at age 43 – that is, within the ten-year period before the application for the Northwestern Policies, and in contradiction to his answer to the MHQ application question. Nothing in Ms. Parker's experience in insurance matters qualifies her to state her attacks on the validity of the record. Her opinions lack a reliable basis, given her selective recitation of the available facts, and disregard of Mr. Repinksi's testimony that he wrote down what Mr. Townsend told him. Ms. Parker provides no methodology or other support in insurance industry standards – including those on medical records for which she provides no source – for her attempts to disregard what the record says on its face, or to impugn Northwestern's reliance on the record. In fact, she conceded in her deposition that Northwestern had the right to rely on the record. Her opinions attacking the record and Northwestern's reliance on it are based only on speculation, and they more resemble argument of counsel than expert testimony.

Further, Plaintiff cannot show Ms. Parker's opinions on the validity of the record will be helpful to the jury. The jury members can read the Highlands and Sky Ridge records and

14

consider testimony by Mr. Repinski and Ms. Merwin regarding preparation of the records. Expert witness testimony is unnecessary to assist them in doing so. Ms. Parker's opinions would intrude on the jurors' factfinding role. The opinions are inadmissible and unfairly prejudicial. Fed. R. Evid. 401, 403, 702, 703.

**C.    Ms. Parker's Speculative Opinions on Investigation Northwestern Should Have Done, Based on an Unreliable, Selective Review of Information, Should be Excluded**

Nor should Ms. Parker be allowed to tell the jury her opinions on what Northwestern should have done to further investigate the claim. She ties all of these opinions to her conclusory, *ipse dixit* "failure to investigate" allegations. But under the facts here – including post-litigation depositions on which Ms. Parker allegedly relies – her opinions are speculative and have no reliable factual basis. The opinions are based on a selective, cherry-picked summary of available information that provides no reliable basis at all. In brief, her criticisms, and their lack of merit based on the facts, are:

| Opinion | Factual non-support |
|---|---|
| Northwestern should have contacted Highlands to get more information about the Highlands record. | Mr. Repinski testified he wrote down what Mr. Townsend told him, and he would not have spoken to someone who called to ask about the record unless they had legal authority to do so. |
| Northwestern should have obtained the Sky Ridge records and contacted Sky Ridge. | The Sky Ridge records also say Mr. Townsend first used cocaine at age 43 and last used it in March 2018, and Ms. Merwin testified she wrote down what Mr. Townsend told her and would not have spoken to individuals about the record without authorization. |
| Northwestern should have obtained the Tupa records. | Once Ms. Tupa was identified in discovery, Northwestern could not obtain the records even through litigation discovery; Ms. Parker does not explain how Northwestern could have done so pre-litigation with no discovery tools available or why obtaining the records would have mattered for the claim. |
| Northwestern should have asked Mr. | Northwestern could not obtain Mr. Townsends' |

| Townsend's co-workers about cocaine use. | unredacted employment records through litigation discovery; Ms. Parker does not explain how Northwestern could have obtained the information necessary to attempt to contact co-workers pre-litigation, let alone explaining why such individuals would voluntarily respond or how the information would have mattered for the claim. |
|---|---|
| Northwestern should have asked Plaintiff about Mr. Townsend's cocaine use. | Plaintiff told Northwestern Mr. Townsend had no drug use problems; she did not respond when Northwestern invited her to submit further information in response to Northwestern's coverage determination letter; Plaintiff testified in her deposition that Mr. Townsend told her he had used cocaine (although she stated she thought it was during 2018). |
| Northwestern should have contacted Drs. Wilner and Sanders. | Ms. Parker does not identify how such contact would have affected the claim determination. |

Indeed, at her deposition Ms. Parker conceded she could not demonstrate what, if anything, her proposed further investigation would have accomplished, or how it would have changed the claim determination.

The lack of a reliable foundation and fact-based link to industry standards for her opinions means her testimony does not meet the standard in *O'Sullivan, supra*, for admissibility of claim handling expert opinion testimony. Her opinions on what Northwestern should have further done to investigate would not assist the jury in resolving the issues, and would unfairly prejudice Northwestern.

Moreover, Plaintiff ought not be allowed to call a witness to testify about Northwestern's alleged wrongful failure to obtain Ms. Tupa's records and information from Mr. Townsend's coworkers, when Plaintiff refused to produce Ms. Tupa's unredacted records and Mr. Townsend's unredacted employment records, precluding Northwestern from defending against such proposed opinions. In any event, those opinions should be excluded. Fed. R. Evid. 401,

403, 702, 703.

**D.    Ms. Parker's Opinions on Northwestern's Alleged Intent and Misconduct Should be Excluded**

Ms. Parker's opinions are replete with allegations regarding Northwestern's supposed wrongful "intent" in its claim determination.  But Ms. Parker's attacks are again based on speculation rather than any reliable factual basis or methodology.  Her opinions would invade the jury's role as factfinders and as determiners of witness credibility and of the ultimate question of alleged bad faith.  Her opinions on "intent" should be excluded here, as they were in *Lemons, supra*; *see Tuft and George, supra*.  In addition, her opinions on Northwestern' alleged "misrepresentation" and "mis-construing" of information are without any reliable factual basis and should be stricken.  Fed. R. Evid. 401, 403, 702, 703.

**E.    Ms. Parker's Generalized Insurer Financial Incentive Opinions Should be Excluded**

Ms. Parker's report includes generalized allegations regarding insurers' asserted financial motivations to avoid paying claims.  But Ms. Parker's abstractions have no tie to the facts here, no reliable basis, and no relevance.  There is no evidence in this case that any Northwestern employee had any financial incentive to deny claims.  Ms. Parker's opinions would confuse the jury and prejudice Northwestern.  Fed. R. Evid. 401, 403, 702, 703.

**F.    Ms. Parker's Legal Conclusions Should be Excluded**

Finally, Ms. Parker's claim handling conclusions that resemble legal opinions should be excluded.  These include her allegations regarding "equal consideration," which are not supported by Colorado law in this first-party life insurance case.  *See, e.g., Zolman v. Pinnacol Assurance Co.,* 261 P.3d 490, 501 (Colo. App. 2011) (standard applies only in third-party context).  They further include her suppositions about the legal standard Northwestern must meet

17

regarding Mr. Townsend's misstatements in the MHQ and list of unattributed asserted insurance industry "standards" including on asserted burden of proof for insurance claims.  In addition, they include her conclusory statements without reliable factual support that Northwestern violated various provisions lifted from C.R.S. § 10-3-1104 – including the above-discussed unreliable opinions on alleged failure to investigate the claim.

Such opinions would intrude on the roles of the Court in instructing on the law, and of the jury in determining whether Northwestern acted in bad faith.  *See Specht, supra*; *O'Sullivan, supra*.  They should be excluded here as they were in the *Lemons* case.  Unfair prejudice would otherwise result.  Fed. R. Evid. 403, 702.

## VI.    CONCLUSION

Northwestern respectfully requests that the above opinions of Ms. Parker be excluded from the trial of this case.

Respectfully submitted,

*s/ Marilyn S. Chappell*
Jon F. Sands
Marilyn S. Chappell
Sweetbaum Sands Ramming PC
1125 Seventeenth Street, Suite 2100
Denver, Colorado 80202
Phone: (303) 296-3377
jsands@sweetbaumsands.com
mchappell@sweetbaumsands.com

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2021, I electronically filed the foregoing **DEFENDANT'S RULE 702 MOTION TO EXCLUDE CERTAIN OPINIONS OF PLAINTIFF'S PROFFERED EXPERT LAURA PARKER, WITH EX. A-K,** with the Clerk of the Court using the CM/ECF system.

Bradley A. Levin
Kerri J. Rugh
Levin Sitcoff PC
1512 Larimer St., Suite 650
Denver, Colorado 80202
bal@levinsitcoff.com
kjr@levinsitcoff.com

*s/ Megan MacLennan*