# Expert Rebuttal Report: Debra Conner

Karen Townsend v The Northwestern Mutual Life Insurance Company

Laura B Parker, CLU®, ChSNC®, CDMS
Seacoast Benefits LLC
9-7-2021

EXHIBIT 2

## Table of Contents

**Experience** ................................................................................................................................ 2

**Analysis** ................................................................................................................................ 3-8

**Conclusion** ........................................................................................................................... 9-10

**CV** ............................................................................................................................................ 11

**Laura B Parker, CLU® ChSNC®, CDMS**
**Seacoast Benefits LLC**
[lparker@seacoastbenefits.net](mailto:lparker@seacoastbenefits.net)
**207-703-6820**

## Introduction

This report has been prepared with the purpose of providing an opinion as to The Northwestern Mutual Life Insurance Company's retained expert witness report, prepared by Ms. Debra Conner, dated August 6, 2021.

## Experience and Background

**Overview**.  I have over 25 years of experience in the insurance industry with specialized knowledge in claims and industry practices, procedures and customs.

I began my insurance career with Chubb Life America in the Individual Disability Income Claims Department; there I handled all aspects of the administration of individual disability claims.  I was employed by UNUM, now known as Unum Group, from 1994-2000 in the Individual Disability Claims Department.  I was initially a part of the Association Disability Claims Unit.  I was promoted to the Complex Claims Unit, and then went on to a Consultant role in the Appeals Unit.  In 2000, I was hired by Disability Reinsurance Management Services (DRMS) as Association Disability Claims Manager.  In that role, I was responsible for all aspects of the newly-formed Association Claims Unit.  I met with numerous agencies, associations, and insurers to assist in devising and implementing claims processes and procedures.  While at DRMS, I also managed the Short Term Disability Claims team, created and implemented a Quality Review program for the claims department, and handled appeals for numerous client companies.  I joined Salt Associates in December 2012 as an Appeals Consultant.  I was solely responsible for providing client companies with industry best practices, Third Party Non-binding Arbitration and appeals expertise for Short Term Disability, Long Term Disability, Waiver of Premium, Life Insurance and Critical Illness claims.

**Certifications and Licenses.**  I am a licensed Maine Life and Health Insurance Consultant; Maine Life and Health Producer; Maine Property and Casualty Adjuster; New Hampshire Life, Accident & Health Producer; and New York Accident and Health Independent Adjuster.  I hold the following insurance designations:  Chartered Life Underwriter (CLU®); Chartered Special Needs Consultant (ChSNC®); Associate, Life and Health Claims (ALHC); Health Insurance Associate (HIA); Associate, Customer Service (ACS); Fellow, Life Management Institute (FLMI); and Certified Disability Management Specialist (CDMS).

**Education.**  BA, Business Administration, University of New Hampshire; MBA, Business Administration, Southern New Hampshire University.

**Compensation.**  Claim file review and report preparation: $200 per hour; Deposition testimony: $250 per hour; and Trial testimony: $300 per hour.

## Analysis

As noted in my previous report dated August 9, 2021, my conclusions and opinions were based on the documentation reviewed and available as of that date.  It was further noted that should additional documentation become available for review, a supplemental report may be provided to include additional analysis, conclusions and opinions.   After reviewing the report by The Northwestern Mutual Life Insurance Company's retained expert Debra Conner, dated August 6, 2021, my additional/rebuttal opinions are outlined below.

Ms. Debra Conner opined the following:

- Northwestern conducted a prompt, thorough, and objective investigation of Mr. Townsend's contestable life claim.
- Northwestern's handling of Mr. Townsend's claim was reasonable and consistent with industry customs and practices.
- As a result of Northwestern's investigation and the evidence received, they had a reasonable basis to rescind the two life insurance policies that were issued and deny the claim that was submitted.
- Northwestern's claim review and decision did not violate the Colorado Unfair Claims Settlement Practices or any other industry standards, customs, or practices, and in some respects, they exceeded industry standards in the handling of this claim.

The report by Ms. Conner discusses the following topics:

- Notice of Claim, Assignment and Claim Segmentation
- Investigation at the time of Claim Submission
- Reasonableness of Northwestern's Decision to Rescind the Policy

After review of Ms. Conner's August 6, 2021 report, I have not changed any opinions from my August 9, 2021 report.  Ms. Conner's opinions are not supported by the documentation contained in the claim file.  The claim file clearly supports that Northwestern Mutual rescinded coverage and denied benefits based solely on unverified, unsubstantiated information from a late-night, post-suicide attempt, post-intoxication, sleep-deprived October 2018 intake interview.  Her report does not address an insurer's obligation to diligently seek out information in support of payment of the claim and to place insureds interests at least equally to its own.  Her opinion that Northwestern Mutual has implemented best practices that exceed industry standards is not supported by the claim handling and decisions made on Mr. Townsend's claim.

Specifically, the claim file reveals that Northwestern Mutual did not take any action to verify the validity of the October 2018 intake notes.  Instead, it disregarded all other information and placed all the emphasis on one piece of information taken from a late-night, post-suicide intake interview.

The actions taken by Northwestern Mutual benefited only Northwestern Mutual.  Mrs. Townsend's interests were not considered equally and they were not afforded a full, fair, thorough review in accordance with industry good faith claims handling standards.  Northwestern Mutual knowingly chose to discontinue its investigation and use information that the company should have known was of

3

questionable veracity to the detriment of Ms. Townsend.  Northwestern Mutual ignored industry standards and chose to place its own interests above those of the insured.

Ms. Conner addresses the following topic/opinion in the August 6, 2021 report:

**Notice of Claim, Assignment and Claim Segmentation**

*Once notice of this claim was received by Northwestern it was assigned to a specialized unit that handled contestable claims. It is a "best practice" in the industry to segment complex claims and have them handled by claim analysts that have more years of experience. This makes sense both from a risk management perspective to assure that benefits are being paid correctly, as well as a customer service perspective in that a more experienced claim analyst has the knowledge to handle the claim from prior experience and work with the beneficiary. Ms. Strupp testified that she had 27 years of experience at Northwestern.*

*Northwestern was transparent about the contestable claim process with Mrs. Townsend. This is important from the perspective that many of the documents that are sought in these types of investigations such as autopsy, toxicology and the police report typically take more time to obtain because parties may be reluctant to release the information or are still processing the reports at the time of the claim investigation.*

Ms. Conner opines that it is an industry best practice to segment complex claims and have them handled by claims analysts with more years of experience.  She further points out Ms. Strupp's 27 years of experience at Northwestern.

Insurance companies are obligated to perform full, fair, thorough claims evaluations with an insured's interests placed at least equally to its own.  The utilization of resources and the implementation of reasonable standards for the prompt investigation of claims arising under its policies is required.  The mere fact that Northwestern Mutual assigned Mr. Townsend's claim to a claims person with 27 years' experience does not automatically equate to meeting industry best practices and standards.  In fact, claims examiners, on behalf of the insurance company as a whole, are expected to have, and certainly should have, the expertise to adjudicate claims in accordance with the policy provisions and industry standards.  In addition, other resources, such as medical, vocational and financial specialists, should be, and often are, called upon to provide opinions in their respective areas of expertise.

Again, the utilization of resources is expected, and well-established, as part of the process in determining eligibility for disability benefits.  To equate segmenting "complex claims" and having them "handled by claim analysts that have more years of experience" to meeting or exceeding industry standards is inaccurate.  The actual utilization and performance of thorough, full, fair claims evaluations with an eye toward payment is a measure of meeting industry standards, not the act of setting up a complex claims unit and allowing its claims personnel to choose to interpret information in the manner least favorable to its policyholders.

Ms. Conner also states that Northwestern Mutual was transparent about the claim process with Mrs. Townsend and that it typically takes more time to obtain documents such as autopsy, toxicology and police reports because parties may be reluctant to release information or are still processing the reports at the time of claim investigation.

4

The claim file reflects that Mrs. Townsend was willing, able and available to provide Northwestern Mutual with any additional information, answers or clarification.  Northwestern Mutual chose not to contact her, or any of Mr. Townsend's providers, for input, information and/or clarification after receipt of the Highlands Behavioral Health October 2018 intake form.  In addition, there was no reluctance or delay in providing the autopsy, toxicology and police reports in this case.  Transparency, and a fair claims evaluation with an eye toward payment, would have included fully verifying the information in the October 2018 intake note, especially if the information would so detrimentally affect the policyholder.

Ms. Conner indicates the following as support of her opinion that Northwestern Mutual did not violate industry claims handling standards in the handling of Mr. Townsend's claim:

**Investigation at the time of Claim Submission**

*Ms. Strupp referred the claim to the special investigations unit to assist with the following:*

*1. Preliminary background check including obtaining a copy of the obituary:*

*2. Scheduling a telephone interview with the next of kin (Mrs. Townsend);*

*3. A copy of the Sheriff's report; and*

*4. A copy of the autopsy and toxicology reports.*

*It is not a standard in the industry to contact the beneficiary during a claim investigation to confirm information the Company has acquired from health care providers' medical records.*

*A claim department has an absolute right to rely on physician's records based upon the fact that physicians have an ethical obligation to manage medical records appropriately.*

*Thus, the medical records contain the most reliable information available on such claims.*

Ms. Conner indicates that it is not standard to contact the beneficiary during a claim investigation to confirm information the Company has acquired from health care providers' medical records.  Ms. Conner neglects to mention that in Mr. Townsend's case, there were reasons to question the accuracy of the information obtained from Highlands Behavioral Health.  In addition, the intake form from Highlands Behavioral Health was not a medical record.  The fact of the matter is, the intake form from Highlands Behavioral Health contained information that could have been inaccurate.  To solely rely on information that could potentially be wrong, without first at least attempting to verify its accuracy, to the detriment of the policyholder, is not reasonable and/or in accordance with industry good faith claims handling standards.

Ms. Conner makes a point to indicate that claims departments have an absolute right to rely on physicians' records and that medical records contain the most reliable information.  In Mr. Townsend's case, Northwestern Mutual chose not to rely on Mr. Townsend's medical providers' records, which indicated no support of any cocaine use prior to the effective date of insurance coverage.  In fact, Northwestern Mutual chose to rely on information on an intake form completed by someone who was not a physician or medical professional, not medical records, as the sole basis for denying the claim and rescinding coverage.  It is unclear why Ms. Conner is stating that medical records contain the most reliable information available; yet, Northwestern Mutual chose to rely solely on an unverified intake form as opposed to Mr. Townsend's own medical records from his treating providers.

5

It should also be noted that Ms. Conner stated in her report that Ms. Townsend "reported that the insured had no history of any difficulties with alcohol or drug use and has not seen or been advised to seek treatment or counseling for drug or alcohol use" and refers to this as an inconsistency.

Ms. Townsend was contacted by phone on May 18, 2019.  Northwestern Mutual received the intake form from Highlands Behavior in June 2019.  No one from Northwestern Mutual contacted Ms. Townsend to ask her about the information received from Highlands Behavioral.  Had Ms. Townsend been asked about her husband's cocaine use, she had information to offer them.  Specifically, she knew that Darren had tried cocaine in 2018 while working at Shotgun Willie's.  Had Northwestern Mutual asked Ms. Townsend about whether Darren had used cocaine at age 43, she would have been able to advise them that the information on the Highlands Behavioral intake form was not accurate.  However, Northwestern Mutual chose not to even attempt to verify the information.

Ms. Conner indicates the following final point as support of her opinion that Northwestern Mutual had a reasonable basis to deny the claim and rescind coverage:

**Reasonableness of Northwestern's Decision to Rescind the Policy:**

*At the time that Northwestern made the decision to rescind both life insurance policies they had a reasonable basis upon which to do so based upon the information they had obtained during the claim adjudication process.*

*Ms. Strupp did an excellent job in coordinating the resources available to her to obtain information as quickly as possible. It is an industry best practice that the special investigations unit and the claim department were able to coordinate retrieving information for the contestable claim review. There was timely follow-up in obtaining information that remained outstanding such as the Sheriff's report that was finally obtained by Tony Breitrick in July. As soon as Northwestern had obtained all the necessary information to make a decision, they notified Mr. Vansickle in a telephone call. Their decision was rendered as soon as they had enough information to make the decision in accordance with Colorado Unfair Claims Settlement Practices and industry standards. When Mr. Vansickle asked them to take another look at the decision, they referred the case to underwriting for a second opinion. They then notified Mrs. Townsend by letter dated September 11, 2019, of their decision to rescind the two policies. The letter outlines the appropriate policy language, the information received from Mr. Townsend's medical records and the misrepresentation made in the application for insurance. Mrs. Townsend was advised that if she had additional information, she should contact Northwestern.*

Ms. Conner states that it is industry best practice for a special investigations unit and claim department to coordinate retrieving information for the contestable claim review.  It is industry best practice for an insurance company to ensure a full, fair, reasonable, thorough claims review with an insured's interests placed at least equally to its own.  Had Northwestern Mutual met its obligation to perform a full, fair, reasonable, accurate claims evaluation, it would have taken the time and resources to ensure the veracity of the information that it was going to use as its sole basis for denying the claim and rescinding coverage.

As part of her support for Northwestern Mutual's claims practices, Ms. Conner states that Mr. Van Sickle (the financial representative) was contacted as soon as Northwestern Mutual had obtained all the necessary information to make a decision.  When Mr. Van Sickle was contacted by Northwestern Mutual

6

about the application for coverage, he was not asked about the Medical History Questionnaire or anything about Darren's health.   In fact, Mr. Van Sickle hadn't even completed the Medical History Questionnaire at the time of application.  Contacting an insured's financial representative to inform him of a denial decision that was made based on unverified, unsubstantiated information is not indicative of industry best practices.

Industry best practices and good faith claims handling processes include verifying the information upon which claims decisions are made.  Conducting full, fair, thorough claims reviews with an eye toward payment, not denial, is indicative of industry good faith claims handling standards.

It should also be noted that Ms. Conner points out that Northwestern Mutual's underwriting department provided a second opinion upon Mr. Vansickle's request.  The underwriting department did not review the claim decision nor the incomplete evaluation conducted by the claims department.  Had Ms. Townsend's claim actually been fully and fairly reviewed, in accordance with industry good faith claims handling standards, payment of the claim would have been considered taking into account the totality, accuracy and veracity of the information provided.

In summary, Ms. Conner states the following:

*Based on my foregoing review and analysis it is my opinion that there was a reasonable basis for the decision that Northwestern reached on this life insurance claim based upon the information they obtained during the claim investigation. It is also my opinion, claim practices, as demonstrated in this file, conform to generally accepted insurance practices and standards in the life insurance industry. Additionally, Northwestern implemented best practices that exceed industry practices by ensuring that complex claims are handled by more experienced claim analysts in a specialized unit. Similarly, the assistance provided by the Special Investigations Unit is a positive differentiator in the industry. Northwestern's claim handling in this case does not appear to have violated any of Colorado's Unfair Claim's Settlement practices and was in accordance with the principles of claim handling set forth by the International Claims Association. Northwestern's decision to rescind the policy was not unreasonable under the facts and circumstances of the claim and there is no evidence in the file that they knowingly denied the claim without a reasonable basis to do so.*

Ms. Conner states that Northwestern Mutual's establishment of a specialized unit to handle complex claims is an example of exceeding industry practices.  I agree that utilizing resources, particularly those with experience, is part of the process of ensuring a full, fair, complete, accurate, reasonable claims review.  However, if the purpose of the "specialized unit" and its "more experienced claims analysts" is to exceed industry practices, then it stands to reason that that very unit would take all the necessary steps to verify the accuracy of the information upon which it is basing its ultimate decision.  It does not make sense nor is it reasonable that Northwestern Mutual chose to interpret information in a light least favorable to Mr. Townsend.  Had any reasonable effort been put forth to verify the accuracy of the information upon which it was making an adverse, detrimental decision, Northwestern Mutual would have realized that denying benefits and rescinding coverage was unreasonable and not supported by the facts.

7

Ms. Conner did not address, answer, or explain any of the unreasonable, inappropriate and inaccurate actions performed by Northwestern Mutual in Mr. Townsend's case, as detailed in my August 9, 2021 report.  The claim file speaks for itself and the opinions expressed in her report are not supportive of a fair, good faith evaluation.  My opinions remain unchanged from those outlined in my previous report.

8

## Conclusion

Darren Townsend was issued Individual Term Life Policy 22219582 on September 20, 2017 and Survivorship Whole Life Policy as of October 20, 2017.  At the time of application in 2017, Mr. Townsend took part in interviews, a medical examination, and completed applications including revealing his medical and psychiatric history.

A claim for benefits was filed by Ms. Karen Townsend, Darren's wife, after his death in April 2019.  Upon receiving a notation on June 15, 2019 of an intake interview from Mr. Townsend's October 2018 admission to Highlands Behavioral Health mentioning cocaine usage at the age of 43, Northwestern Mutual rescinded coverage and denied benefits.  The claim file demonstrates that Northwestern Mutual took that one mention of cocaine usage at the age of 43 and used it as the sole reason for rescinding coverage and denying all benefits.

Instead of placing Mr. Townsend's interests at least equally to those of itself and continuing to evaluate eligibility for benefits and move the claim toward payment, Northwestern Mutual chose to stop its investigation and deny benefits and coverage.

Ms. Conner opines in her report dated August 6, 2021 that Northwestern Mutual had a reasonable basis to deny benefits and rescind coverage.  However, Mr. Conner fails to address that Northwestern Mutual chose to deny benefits and rescind coverage based on a piece of information that it did not verify and could potentially have been incorrect.  Northwestern Mutual chose to interpret information from a late-night, post-suicide attempt, post-intoxication, sleep-deprived interview as fact, without any verification or follow-up whatsoever.  Interpreting information in the most detrimental manner possible, without any follow up investigation or verification is not indicative of industry best practices and standards.  On the contrary, an insured's interests are to be considered at least equally to those of the insurer with an eye toward payment.  To indicate that it is a reasonable claim practice to deny benefits and rescind coverage based solely on unverified statements is inexplicable.

There is no reasonable or acceptable explanation for violating industry standards; therefore, Ms. Conner chose to ignore all the violations, not address them in her report, and instead attempt to equate the existence of a specialized unit and years of experience with meeting or exceeding industry good faith claims handling standards.  The fact that Northwestern Mutual had a specialized claims unit with experienced claims personnel does not then allow it to violate industry standards and refuse to pay benefits.

Ms. Conner's opinions are not demonstrative of how an insurer should conduct itself in regard to meeting its duty of good faith and fair dealing.  Industry standards are in place to ensure claimants are afforded a full, fair, thorough claims review.  Ms. Conner does not explain how Northwestern Mutual's failure to provide a full, fair, reasonable claim review, with Ms. Townsend's interests placed at least equally to its own, is acceptable or reasonable under any circumstance.  The claim file clearly outlines that Northwestern Mutual chose not to verify or investigate the very piece of information upon which it was making a detrimental decision.  This is unacceptable and unreasonable and goes unaddressed by Ms. Conner in her report.

9

Northwestern Mutual knowingly chose to discontinue its investigation and use information that the company should have known was of questionable veracity to the detriment of the Townsends.  This is not reasonable, acceptable, or in accordance with industry standards.

The opinions in this rebuttal report are based on my review of Ms. Conner's August 6, 2021 expert report, the claim file documents provided by Levin Sitcoff PC and my education, background, training and experience.  In addition, opinions are based on insurance industry specific documentation including, but not limited to, information from the National Association of Insurance Commissioners, Market Conduct Examinations, International Claims Association, state specific insurance regulations, insurance conferences, and insurance company claims manuals, policies and procedures.

This report is based on the documentation reviewed as of the date of this report.  Should additional documentation become available for review, this report may be supplemented to include additional analysis, conclusions and opinions.

Per 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is a true and correct copy of my report.  Executed on September 7, 2021.

Respectfully submitted,

Laura B Parker, CLU®, ChSNC®, CDMS
Independent Disability Consultant
Seacoast Benefits LLC

10

# Laura B Parker

**29 Creekview Drive, Eliot ME 03903 – (207) 703-6820 – lparker@seacoastbenefits.net**

## Professional Experience

**Seacoast Benefits LLC – Eliot ME**                                    September 2015 to present
**Owner/Disability Claims Consultant**
- President of claims management consulting firm specializing in the complexities of disability insurance.
- Provider of independent, expert disability claim file opinions, audits and reviews.

**Salt Associates – Yarmouth ME**                                    December 2012 to September 2015
**Disability Claims/Appeals**
- Managed client companies' complex disability claim appeals including audits of policies, procedures and overall appeals handling processes.
- Responsible for adjudicating all aspects of Non-Binding/Third Party Mediation Process.
- Developed and implemented Quality Assurance programs and processes for clients.
- Performed disability claims organization audits for client companies.

**DRMS – Westbrook ME**                                    April 2000 to November 2012
**Disability Claims/Appeals**
- Created and implemented all processes and procedures for Association Claims Unit.
- Client visits to discuss and implement claims adjudication processes.
- Managed team of direct reports – STD, LTD, Association Disability claims analysts.
- Administered all aspects of complex ERISA and non-ERISA appeals.
- Developed and implemented disability claims Quality Assurance program.

**UNUM – Portland ME**                                    May 1996 to April 2000
**Individual Disability Complex Claims**
- Adjudicated Individual Disability claims as part of Complex Claims Unit.
- Administered and handled all aspects of Individual Disability claims as part of Complex Claims Unit.
- Mentored, trained, and supervised Individual Disability Appeals team.

**Chubb Life America – Concord NH**                                    April 1994 to May 1996
**Individual Disability Claims**
- Adjudicated all aspects of complex Individual Disability Claims.
- Performed field visits and claimant interviews.
- Developed and implemented disability claims internship program.

## Education

**MBA - University of Southern New Hampshire – Business Administration**        May 2001
**BS - University of New Hampshire – Business Administration**                    May 1992

## Professional Designations/Licenses

Chartered Life Underwriter – CLU®; Chartered Special Needs Consultant - ChSNC®
ALHC; HIA; ACS; FLMI; CDMS
Maine:  Licensed Life & Health Consultant; Life and Health Producer; Property and Casualty Adjuster
New Hampshire:  Accident, Life & Health Producer
New York:  Independent Adjuster – Accident and Health