**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-02809-KLM

KAREN TOWNSEND,

      Plaintiff,

v.

THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY,

      Defendant.

---

**MOTION FOR SUMMARY JUDGMENT OF DEFENDANT THE NORTHWESTERN
MUTUAL LIFE INSURANCE COMPANY**

---

Defendant The Northwestern Mutual Life Insurance Company (Northwestern) respectfully moves pursuant to Fed. R. Civ. P. 56 for summary judgment on Plaintiff Karen Townsend's claims against it.  As a matter of law, based on the admissible, undisputed or indisputable facts, Plaintiff cannot prevail on her claims against Northwestern.

Plaintiff's late husband made a material misstatement in applying for the Northwestern policies.  He answered "no" to a question on illegal drug use within the preceding ten years.  But he told two different medical providers at two different facilities at two different times that he had used cocaine during the one-year period before his policy application, as shown by his medical records.  Northwestern would not have issued the policies had it known about the cocaine use.

Plaintiff cannot prove Northwestern breached the policies by denying coverage for Plaintiff's claim for policy benefits and rescinding the policies.  Nor can Plaintiff prove bad

faith.  She cannot demonstrate that Northwestern acted without a reasonable basis in denying the claim, let alone that it acted with reckless or knowing disregard, and the lack of coverage as a matter of law also defeats her bad faith claim.  Because Plaintiff's breach of contract claim fails, so does her associated declaratory judgment claim.

Summary judgment is thus warranted on Plaintiff's claims.  Northwestern further states as follows in support of this motion.

## I.    STATEMENT OF THE CASE

Northwestern issued an individual policy insuring Darren Townsend's life and a joint policy insuring the lives of Mr. Townsend and Plaintiff Karen Townsend, both policies providing coverage according to their terms and conditions ("Policies").  Mr. Townsend tragically died by suicide on April 18, 2019.  Plaintiff submitted a claim for benefits under the individual policy.

As permitted under the Policies, Northwestern performed a contestable review to verify the completeness and accuracy of application representations made by Mr. Townsend as part of underwriting for the Policies.  Northwestern's review included obtaining medical records from Mr. Townsend's medical providers. The records included those from a mental health treatment facility, with an entry stating Mr. Townsend had used cocaine – which was in contravention of information he provided in applying for the Policies.  Also during its claim investigation, Northwestern interviewed Plaintiff; she reported Mr. Townsend had no history of drug use difficulties.

By letter to Plaintiff, Northwestern stated the claim for benefits under Mr. Townsend's individual policy was denied; the Policies would not have issued had Northwestern been aware of Mr. Townsend's cocaine use shown on the mental health treatment record; the Policies were

2

rescinded and the premiums were being refunded; and Plaintiff was invited to submit additional information for Northwestern's consideration.  Plaintiff did not submit further information on Mr. Townsend's cocaine use.

This action followed.  In her Complaint (Doc. 5) ("Compl."), Plaintiff alleges claims for breach of contract and common-law bad faith, and for declaratory relief regarding the joint policy.  In its Amended Answer (Doc. 25-1), Northwestern denies Plaintiff's claims and asserts as an affirmative defense that, pursuant to the Policies' language, Plaintiff's claims are barred and Northwestern may rescind the Policies, due to material misstatement in the Policies' application which did not disclose Mr. Townsend's cocaine use.

With her Rule 26 disclosures in this action, Plaintiff produced Mr. Townsend's records of emergency room treatment occurring shortly before his mental health facility treatment, with entries on cocaine use similar to those in the latter's records.  The parties have engaged in written discovery and taken numerous depositions, including of the Plaintiff, Northwestern personnel, medical providers including the authors of the above-described records, and Plaintiff's proffered claims handling expert.  A five-day jury trial is scheduled to begin April 22, 2022.

## II.    STATEMENT OF MATERIAL FACTS

The following facts ("SMFs") are undisputed or incapable of reasonable dispute.

1.    Northwestern issued Policy No. 22219582, insuring the life of Darren Townsend (Ex. A) ("Individual Policy"), and Policy No. 22247352, insuring the lives of Mr. Townsend and of Plaintiff (Ex. B) ("Survivorship Policy") (collectively, "Policies"), both providing life insurance coverage according to their terms and conditions.

2.    Both Policies include the following provision, under Section 1.4, Incontestability:

> . . . [T]he Company will not contest this Policy after the Policy has been in force, during the lifetime of the Insured, for two years from the Date of Issue . . . . In issuing the insurance, the Company has relied on the application(s).  While the insurance is contestable, ***the Company, on the basis of a material misstatement in the application(s), may rescind the insurance or deny a claim***.

(Ex. A, p. 1525; Ex. B, p. 1544; emphasis added.)

3.      Northwestern issued the Policies based on information the Townsends provided in applying for the Policies.  (*See* Ex. A, p. 1525; Ex. B, p. 1544.)

4.      The information the Townsends provided in their applications for the Policies included a Medical History Questionnaire ("MHQ") (Ex. C) signed on June 6, 2017, by Mr. Townsend, with an answer of "no" to question 4(c): "In the last ten years, have you used . . . cocaine, . . . or any other illegal drug or substance?"  (*Id.*, p. 576; Compl., ¶¶ 9, 10.)

5.      Mr. Townsend also signed Personal Health and Status Declarations ("PHSDs") dated August 16, 2017, September 20, 2017, and October 26, 2017, stating that the information provided in the MHQ was still correct.  (*See* Compl., ¶¶ 13, 14, 15; Ex. D; Plaintiff Depo. Trans., 59:17-62:15; 64:21-65:8.)

6.      After Mr. Townsend died by suicide on April 18, 2019, Plaintiff submitted a claim for benefits under the Individual Policy.  (Compl., ¶¶ 20, 21.)

7.      Northwestern performed a contestable review with respect to application representations made by Mr. Townsend as part of underwriting for the Policies.  (*See* Ex. A and B, §1.4.)

8.      Northwestern's review included obtaining medical records from Mr. Townsend's medical providers through release authorizations for such records, including Highlands Behavioral Health ("Highlands"), a mental health treatment facility.  (*See* Compl., ¶¶ 17-19, 21;

Doc. 40-8, release authorization forms.[1])

9.      The Highlands records included the following October 15, 2018, entry within a Comprehensive Assessment Tool report for Mr. Townsend ("Highlands Record"):

| ❏ DENIES | SUBSTANCE USE | | |
|---|---|---|---|
| ☒ Yes ❏ No | HAVE YOU USED ANY PSYCHOACTIVE OR MOOD ALTERING SUBSTANCES WITHIN THE PAST **12** MONTHS? | | |

| ☒ Alcohol | ❏ Caffeine | ❏ Marijuana | ❏ Pain Medication |
|---|---|---|---|
| ❏ Amphetamines | ❏ Cocaine/Crack | ❏ Methadone | ❏ Sedatives |
| ❏ Benzodiazepines | ❏ Hallucinogens | ❏ Nicotine | ❏ Other:_____ |
| ❏ Barbiturates | ❏ Inhalants | ❏ Opiates | |

| Substance top 3 | Amount/Frequency/Route | Duration of Use | Age of 1st use | Last use | Amount used in last 24-48 hours |
|---|---|---|---|---|---|
| EToH | 2-5 drinks / 1-2x wk / oral | 10+ yrs | 16 | 10/14 | 4 drinks |
| Cocaine | did 1-2x, snort | 1-2x only | 43 | 3/18 | Ø |
| | | | | | |
| | | | | | |

UTOX results: ⊖ for all, except EToH

Longest period of sobriety: N/A          Drug of choice (specific): EToH

Do You Smoke: ❏ Yes ☒ No          If Yes how much a day: N/A

(Ex. F, excerpt, also copied to Compl., ¶ 21.)

10.      As Mr. Townsend's date of birth was June 7, 1973, the period during which he was age 43 was June 7, 2016 – June 6, 2017.  (*See* Compl., ¶¶ 9, 22; Scheduling Order (Doc. 19), p. 8, ¶5.)

11.      Also during its claim investigation, Northwestern interviewed Plaintiff, who reported Mr. Townsend had no history of any difficulties with drug use and had not sought or been advised to seek treatment or counseling for drug use.  (Ex. G, p. NORTHWESTERN 524.)

12.      Under Northwestern's underwriting standards, a policy applicant's use of cocaine within one year before application results in an automatic decline of the application for life insurance.  (Ex. H, Dep. Trans., Northwestern Life Technical Underwriting Consultant Melissa Guidinger, 9:16-17; 56:1-11; 79:5-14); Ex. I (Confidential Guidinger Dep. Trans. 100:9-101:15);

---

[1] Those forms are exhibits to Plaintiff's Response (Doc. 40) to Northwestern's Rule 702 Motion directed to opinions of Plaintiff's proffered expert, Laura Parker (Doc. 37).

Ex. J (Confidential Northwestern underwriting standard, Chap. 304.2: Drug Abuse, p. NORTHWESTERN 1592).[2]

13.     Information and medical records Northwestern had obtained during underwriting for the Policies did not disclose any cocaine use by Mr. Townsend. (*See* Ex. H, 61:16-62:1; 70:1-17.)

14.     In Northwestern's September 11, 2019, letter to Plaintiff, Northwestern stated the claim for benefits under Mr. Townsend's individual policy was denied; the Policies would not have issued had Northwestern been aware of Mr. Townsend's cocaine use during the ten-year period before the MHQ was completed; the Policies were rescinded and the premiums were being refunded; and Plaintiff was invited to submit additional information for Northwestern's consideration. (Ex. K; *see also* Compl., ¶¶ 21-23.)

15.     Plaintiff did not provide Northwestern with further information regarding Mr. Townsend's cocaine use before filing the present lawsuit.

16.     With her Rule 26 disclosures in this action, Plaintiff produced medical records from Mr. Townsend's treatment in the emergency department at HealthOne/Sky Ridge ("Sky Ridge") shortly before his admission to Highlands, which records included the following October 14, 2018, entry within a Behavioral Health Assessment report for Mr. Townsend ("Sky Ridge Record"):

---

[2] Pursuant to D.C.COLO.LCivR 7.2 and the Protective Order entered in this action (Doc. 28), Exhibits I and J are being filed as restricted documents and are subject to Northwestern's Motion to Restrict filed with this Motion.

```
          - - DRUG USE - -
Drug or illegal substance use within last 12 months: Yes
Other substances used: Yes
Other substance type:
  - - Cocaine - -
Instance list status: Active
Amount used per week: one line
Last date used: 03/28/18
Last use amount: One line
<End>
   Pattern of drug use: Episodic
           Last drug use: 6 or seven months ago
             Age of onset: 43
```

(Ex. L, excerpt.)

17.    Jeremiah (Jero) Repinski, who authored the Highlands Record, gave deposition testimony in this case which included the following:

      a.     He is a licensed professional counselor and certified addiction counselor (Ex. M, 10:7-15).

      b.     He wrote down what Mr. Townsend told him regarding age of first use of cocaine; "I wrote down 43, and so I'm led to believe he said 43" (*id.*, 51:2-4; 57:18-23;70:12-13).

      c.     He asked more questions and was "more precise" in recording cocaine usage, as opposed to other substances, reported by a patient because cocaine use can result in severe depressive reactions and is of particular interest to the Highlands doctors (*id.*, 69:19-70:8).

      d.     While he failed to check the "cocaine" box on the record regarding drug use, this was his "little petty rebellion against the redundancies of the paperwork" (*id.*, 63:19-25).

7

e.    He adheres to HIPAA privacy requirements and would refuse to speak with persons seeking information about the Highlands Record without authorization. (*Id.*, 12:18-13:2; 13:25-14:22; 58:2-17.)

18.    Carmen Merwin, who authored the Sky Ridge Record, gave deposition testimony in this case that included the following:

a.    She prepared the Sky Ridge Record based on information from Mr. Townsend (Ex. N, 42:16-43:4).

b.    The notation that Mr. Townsend first used cocaine at age 43 was information provided by Mr. Townsend (*id.*, 42:16-43:4).

c.    She would be unwilling to speak to individuals about the Sky Ridge Record without authorization (*id.*, 90:5-91:11).

19.    In discovery in this case, Northwestern requested production of unredacted records from Mr. Townsend's treatment by a therapist referenced in claim file materials as "Tupa" and identified by Plaintiff in discovery as Elizabeth Tupa; following *in camera* review, the Court ruled Plaintiff was not required to produce unredacted records from Ms. Tupa (which would mean they did not address cocaine use) (*see* Doc. 33).

20.    Northwestern also sought through discovery records from Mr. Townsend's employers, the Colorado School of Mines and Shotgun Willie's; the Court directed that only information from Shotgun Willie's on cocaine use and dates of employment must be produced (*see* Doc. 32), and no documents on cocaine use were produced.

21.    Northwestern deposed Plaintiff, who testified that Mr. Townsend admitted to her he had used cocaine (although Plaintiff thought the use occurred during 2018) (Ex. E, 38:18-23;

42:23-43:2; 44:16-20; 45:12-47:16; 49:6-15; 72:16-74:11; 90:2-20).

22.    Northwestern also deposed Plaintiff's proffered claim handling expert, Laura Parker, as described in Northwestern's pending Rule 702 motion to exclude certain of Ms. Parker's opinions (Doc. 37); *see* Ex. O (deposition transcript excerpts).[3]

23.    As stated in her affidavit (Ex. P, ¶¶ 3-8), the paramedical examiner who completed Mr. Townsend's MHQ, Irina Rountree, followed her routine practice with Mr. Townsend, including asking him word for word the drug use question on the MHQ, recording his answer word for word, and having him review and sign the MHQ.

### III.    LEGAL PRINCIPLES

#### A.    Summary Judgment Standard; Conjecture and Speculation Not Evidence

Summary judgment should be granted if, based on admissible evidence in the record, there is no genuine, material fact issue and the movant is entitled to judgment as a matter of law. *Coleman-Domanoski v. St. Paul Guardian Ins. Co.*, 456 F.Supp.3d 1250, 1254 (D. Colo. 2020). An issue is genuine if a reasonable jury could resolve the issue against the moving party based on the evidence, and a fact is material if it might affect the outcome of the case.  *Id.*  If the movant does not bear the ultimate burden of persuasion at trial, to oppose summary judgment the non-movant must put forth evidence that would allow a reasonable jury to find in its favor.  *Id.*

"Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence."  *Id.*  Argument of counsel does not constitute evidence.  *Pinkerton v. Colo. Dept. of Transp.*, 563 F.3d 1052, 1061 (10th Cir. 2009).

---

[3] The attached excerpts are from the final transcript of Ms. Parker's deposition; the excerpts submitted with Northwestern's Rule 702 motion (Doc. 37-8) were from the rough transcript as the final transcript was not then available.

**B.      Elements of Proof and Legal Principles for Plaintiff's Claims**

      **1.       Breach of contract/*Hollinger* factors**

For Plaintiff to establish her breach of contract claim, she must demonstrate failure to perform the policy's obligations by Northwestern, as well as existence of the contract, Mr. Townsend's performance of the contract, and resulting damages.  *See Marechal v. Safeco Ins. Co.*, No. 19-cv-02572-RM-KLM, 2021 WL 4046415, *4 (D. Colo. June 7, 2021).  Information generated since the claim determination may be considered as to that claim.  *See Curtis Park Grp., LLC v. Allied World Specialty Ins. Co.*, No. 20-cv-00552-CMA-NRN, 2020 WL 5406130, *5 (D. Colo. Sept. 9, 2020); *Rowell v. Northwestern Mutual Life Ins. Co.*, 21-cv-00098-PAB-NYW, 2021 WL 5072064, *5 (D. Colo. Aug. 23, 2021).

Colorado courts have held that an insurer who seeks to "avoid a life insurance policy on the basis of misrepresentations in the application" must demonstrate five factors.  They are: (1) "the applicant made a false statement of fact or concealed a fact in his application for insurance"; (2) "the applicant knowingly made the false statement or knowingly concealed the fact"; (3) the omitted fact materially affected the risk; (4) the insurer was ignorant of the fact; and (5) the insurer relied on the omission of the fact in issuing the policy.  *Hollinger v. Mut. Benefit Life Ins. Co.*, 192 Colo 377, 560 P.2d 824, 827 (1977).

On the first above element, while Northwestern has not located a reported Colorado decision with similar facts to those here, courts from other jurisdictions have held life insurers may rely on statements by insureds in insureds' medical records concerning their drug use, in determining whether application misrepresentations have been made.  *See, e.g., Burkert v. Equitable Life Assurance Soc'y of Am.*, 287 F.3d 293, 297 (3d Cir. 2002); *Mass. Mut. Life. Ins.*

*Co. v. Jordan*, No. 3:10-0016, 2011 WL 1770435, *4, nn.2,3 (S.D. W. Va. May 9, 2011); *Moeller Tevez v. Allmerica Fin. Life. Ins. and Annuity Co.*, 534 F.Supp.2d 253, 260 (D. P.R. 2008); *Am. Gen. Life Ins. Co. v. Green*, No. 2:06-CV-02048-MCE-KJM, 2008 WL 2096833, **2, 5 (E.D. Cal. May 16, 2008).

The second *Hollinger* factor is based on an objective standard – that is, "whether a reasonable person, under the circumstances, would have known that the application called for such disclosure." *Peterson v. USAA Life Ins. Co.*, 814 Fed. Appx. 408, 413 (10th Cir. 2020) (Colorado law).  The insurer is not required to prove the insured's subjective intent or intent to deceive the insurer.  *Hollinger,* 560 P.2d at 826-27.  This factor may be decided as a matter of law.  *See id.,* affirming JNOV for insurer where decedent failed to provide information on mental health treatment called for in policy application, making a "knowing misrepresentation as a matter of law"; *Peterson*, 814 Fed. Appx. at 409-11 (affirming summary judgment for insurer where insured omitted respiratory illness information despite unambiguous application question about such illness); *W. Coast Life Ins. Co. v. Hoar*, 558 F.3d 1151, 1153, 1158 (10th Cir. 2009) (same as to failure to list "heli-skiing" in response to application question about "other hazardous avocation or hobby"); *cf. Wade v. Olinger Life Ins. Co.*, 192 Colo. 401, 560 P.2d 446, 450, 452 (1977) (insured not chargeable with misrepresentation in response to question too "open-ended" to allow a reasonable response).

### 2.    Common-law bad faith

On Plaintiff's common-law bad faith claim, she must prove that Northwestern "knowingly or recklessly disregarded the claim's validity" and that a reasonable insurer under the circumstances would have paid the claim, plus resulting damages.  *See Marechal*, 2021 WL

4046415 at *7. The inquiry regarding insurer conduct is based on information before the insurer at the time of the claim determination. *Schultz v. GEICO*, 429 P.3d 844, 845-46 (Colo. 2018).

Under Colorado law, an insurer is permitted wide latitude in its investigation of claims. *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1274 (Colo. 1985). The reasonableness of an insurer's conduct is not evaluated based on whether the insurer was "right" or "wrong" or whether the insurer handled the claim perfectly; rather, the standard is conduct that is reasonable under the circumstances. *Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 573 (Colo. App. 2003); *accord Wheeler v. Reese*, 835 P.2d 572, 578-79 (Colo. App. 1992). It is not unreasonable conduct for an insurance company to challenge a claim that is fairly debatable. *Marechal*, 2021 WL 4046415, *8. An insurer acts in bad faith "only if it intentionally denies, fails to process, or fails to pay an insurance claim without a reasonable basis." *Id.*

In evaluating insurer conduct, courts have held insurers may reasonably rely on medical records, as opposed to interviewing medical providers regarding statements in the records. *See Am. Gen.*, 2008 WL 2096833 at *9; *see also Roberts v. State Farm Mut. Auto. Ins. Co.,* 61 Fed. Appx. 587, 591-92 (10th Cir. 2003) (Oklahoma law); *Kimmel v. W. Reserve Life Assurance Co.,* 678 F.Supp.2d 783, 805-06 (N.D. Indiana 2010). *See also Peterson*, 814 Fed. Appx. at 409-10 (life insurer denied coverage based on information in medical records; no discussion of any obligation by insurer to further investigate content of medical records). As stated by the court in *American General*:

> [The plaintiff/claimed beneficiary] cites to no relevant case law, nor has this Court found any, supporting the proposition that, in order to conduct an investigation in good faith, an insurer confronted with evidence of an insured's past drug use must contact the insured's doctors, rather than relying solely on his medical records, to rescind a policy. To the contrary, the relevant case law indicates that insurance companies can properly rely on medical records to deny a

claim.

*Am. Gen.*, 2008 WL 2096833 at *9.   Courts have further held that insurers do not act unreasonably in failing to pursue investigation of claims that would not yield information that would change their coverage determinations.  *See, e.g., Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 891-93 (10th Cir. 2006) (Oklahoma law).   As further noted by the court in *American General*:

> [C]ontrary to the authority provided by [plaintiff], and contrary to her own argument in opposition of this Motion, any further investigation would have been futile. [The insurer] would not have uncovered additional facts that would have required it to honor the Policy. Indeed, [plaintiff] is unable, even now, to put forth such facts that she claims [the insurer] should have labored to expose.

*Am. Gen.*, 2008 WL 2096833 at *9.

While reasonable insurer conduct is normally a question of fact for a jury, it can be decided as a matter of law under appropriate circumstances, where there are no material disputed fact issues.  *See Polland v. State Farm Mut. Auto. Ins. Co.*, No. 19-cv-01416-KLM, 2019 WL 10258801, *7 (D. Colo. Oct. 15, 2019).

Where there is no coverage under an insurance policy as a matter of law, no bad faith claim can lie.  *See, e.g.*, *Coleman-Domanoski*, 456 F.Supp.3d at 1262-63, quoting *MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1192-93 (10th Cir. 2009) ("[h]aving concluded that the insurance companies' denial of coverage was proper as a matter of law, we must also affirm the district court's grant of summary judgment in their favor on MarkWest's bad faith claim").

### 3. Declaratory judgment

The resolution of a claim for declaratory relief depends on the nature of the underlying

issues for which a declaration is sought.  *See Cardtoons v. Major League Baseball Ass'n*, 95 F.3d 959, 964-65 (10th Cir. 1996).

**C.      Admissibility of Statements in Medical Records Regarding Drug Use**

Statements by an insured in the insured's medical records are admissible under Fed. R. Evid. 803(4) (hearsay exception for statements made for medical diagnosis or treatment).   *See Golden Rule Ins. Co. v. Skees*, No. 05-cv-00803-EWN, 2008 WL 11515575, *1 n.1 (D. Colo. July 29, 2008).   This includes statements in medical records by the insured concerning the insured's drug use.  *See Mass. Mut.*, 2011 WL 1770435 at *4, n.3; *Moeller Tevez*, 534 F.Supp.2d at 261; *Am. Gen.*, 2008 WL 2096833 at *5.  *See also* Fed. R. Evid. 803(6) (business records hearsay exception); *Mass. Mut.*, 2011 WL 1770435 at *4, n.3 (citing Rule 803(6)).

**IV.      ARGUMENT**

**A.      Evidence Admissible for Summary Judgment Purposes:   Statements in Medical Records as Opposed to Hearsay**

Preliminarily, the scope of admissible evidence for the summary judgment record should be defined.   As detailed above, Mr. Townsend's statements contained in his medical records regarding his cocaine usage (SMFs 9, 16) are non-hearsay.  *See* Fed. R. Evid.  803(4) and 803(6). While Plaintiff alleges in her Complaint (¶32(d)), that Mr. Townsend's statements regarding cocaine use in the Highlands Record are "double hearsay," that is incorrect.   Nor is there any question about the authenticity of the Highlands or Sky Ridge Records, or certainly their relevance.   Both records are admissible.

By contrast, any statements Plaintiff asserts Mr. Townsend made to her regarding the timing of his past cocaine use (SMF 21) would not be admissible for the truth of the matter asserted regarding such timing.  Those statements are hearsay and do not fall within any hearsay

14

exception. Thus, Plaintiff cannot meet her burden of showing the statements are admissible. *See*

*Oaster v. Robertson*, No. 15-cv-00871-KLM, 2016 WL 126291, *4 (D. Colo. Jan. 11, 2016);

Fed. R. Evid. 801.[4] In addition, admitting the statements regarding timing of cocaine use would

run afoul of Colorado's Dead Man's Statute for lack of any corroboration of the statement by

"material evidence of a trustworthy nature." *See* C.R.S. § 13-90-102(1)(b); *Estate of Brookoff v.*

*Clark*, 429 P.3d 835, 838 (Colo. 2018) (statute applies in "all civil actions"). Thus, while the

statements may be considered for the fact that Mr. Townsend told his wife he used cocaine, the

asserted truth of the matter regarding timing of such use is inadmissible – and the asserted

statements cannot create material fact disputes.

**B.      Plaintiff Cannot Prevail on her Breach of Contract Claim as a Matter of Law**

Northwestern respectfully submits that Plaintiff cannot prevail on her breach of contract

claim, as a matter of law, based on the admissible undisputed and indisputable facts. The

Policies (§ 1.4) state that Northwestern, "on the basis of a material misstatement in the

application(s), may rescind the insurance or deny a claim" (SMF 1-2). Based on the summary

judgment record facts here, a material misstatement in the Policies' application occurred. Mr.

Townsend answered "no" to the MHQ question regarding cocaine use during the preceding ten

---

[4] To the extent Plaintiff may argue the statements are admissible under Fed. R. Evid. 804(3) (hearsay exception for statements against interest), that rule does not apply here. The alleged statements were made by Mr. Townsend to his wife, not to law enforcement, and would be subject to spousal privilege; they concerned cocaine use allegedly occurring months earlier, with no pending criminal charges; and they were made after the Policies had issued and did not purport to apply to information in the Policies' application. (*See* Ex. E, 38:18-23; 74:3-4.) The statements thus would not have exposed Mr. Townsend to "civil or criminal liability." *Cf. U.S. v. Hammers*, 942 F.3d 1001, 1010 (10th Cir. 2019) (discussing statement exposing declarant to potential criminal liability); *Dexia Credit Local v. Rogan*, No. 02 C 8288, 2009 WL 10736163, *1 (N.D. Ill. May 26, 2009) (same regarding civil liability); *Fenn v. U.S.*, 175 F.Supp.3d 602, 610 n.4 (E.D. Va. 2016) (statement not subject to marital privilege and fell within hearsay exception as it was made to spouse and third party).

years, and he reaffirmed the continuing accuracy of the MHQ representations in three subsequent PHSD submissions (SMF 4-5). This "no" answer on the MHQ was contrary to his admission of cocaine use at age 43, within one year before the MHQ – that is, during the period June 7, 2016 – June 6, 2017 - as reported in the Highlands Record (SMF 8-10). Northwestern would not have issued the Policies had it known about the cocaine use (SMF 12, 14). It denied Plaintiff's claim and rescinded the Policies because of the cocaine use (SMF 14).

The correctness of Northwestern's determination based on the Highlands Record was confirmed by the Sky Ridge Record. The two records have similar information on Mr. Townsend's use of cocaine, including first use at age 43 and last use in March 2018 – showing that Mr. Townsend reported the same information to two different medical providers at two different medical facilities at two different times (*see* SMF 9 and 16). Also, the authors of both records have testified that they recorded what Mr. Townsend told them (SMF 17, 18), further buttressing the correctness of Northwestern's determination.

No admissible evidence contradicts the Highlands Record and Sky Ridge Record regarding the timing of Mr. Townsend's cocaine use. Plaintiff's statements are admissible, if at all, only for the purpose of showing Mr. Townsend told her he had used cocaine. Any alleged timing of the use – that is, the truth of the matter asserted regarding timing – is hearsay. Thus, no material fact dispute regarding Mr. Townsend's cocaine use at age 43 exists in the record.

Thus, Northwestern's denial of Plaintiff's claim and rescission of the Policies was correct as a matter of law, based on the Policies' language and the admissible facts. Plaintiff cannot demonstrate Northwestern failed to comply with the Policies, or that Mr. Townsend substantially complied with the Policies' application requirements. *See Marechal*, 2021 WL 4046415, \*4.

Moreover, as a matter of law, Northwestern's determination adheres to the *Hollinger* factors. Northwestern submits the latter three of those factors – materiality of the cocaine use information, Northwestern's ignorance of that information, and Northwestern's reliance on the Policies' applications – are not subject to dispute. (*See* SMF 2, 3, 4, 5, 12, 13, 14.)

On the first *Hollinger* factor (false or concealed information), the admissible evidence in the record – the Highlands and Sky Ridge Records – again shows that Mr. Townsend reported he used cocaine at age 43 but answered "no" on the MHQ question regarding cocaine use. Thus, Mr. Townsend provided false information or concealed information regarding his cocaine use in the application for the Policies.

As to the second factor (knowingly providing false information or concealing information), the inquiry under Colorado law is an *objective one* – whether a reasonable person in Mr. Townsend's position would have known how to respond to the MHQ question on cocaine use. Northwestern need not prove Mr. Townsend's subjective intent, or whether he "lied" or "intended to deceive" Northwestern, in answering "no" to the MHQ question (or for that matter, in reaffirming that answer in the PHDSs). Here, given the unambiguous nature of the cocaine use question, a reasonable person would have known the information sought and the answer required. That question is equally as cut-and-dried, if not more so, than those regarding mental health treatment history at issue in *Hollinger*, 560 P.2d at 826-27; respiratory illness in *Peterson*, 814 Fed. Appx. at 409-11; and "hazardous" activity in *Hoar*, 558 F.3d at 1153, 1158. In all three of those cases, courts determined the life insurance policies at issue were avoidable as a matter of law given the insureds' failure to disclose material information in applications for the policies. The same result should occur here.

17

Thus, Plaintiff cannot, as a matter of law, prove that Northwestern breached the Policies. Summary judgment on Plaintiff's breach of contract claim is in order.

**C.      Plaintiff Cannot Prove Bad Faith as a Matter of Law**

Nor, as a matter of law, can Plaintiff prove her common-law bad faith claim.  To do so she must demonstrate Northwestern acted without a reasonable basis and knowingly or recklessly disregarded the validity of Plaintiff's claim.  *See Marechal*, 2021 WL 4046415 at *7.

But Northwestern had a reasonable basis for denying coverage, based on the Highlands Record containing Mr. Townsend's report of cocaine usage within ten years before the MHQ. *That record states on its face that Mr. Townsend reported he used cocaine at age 43* (SMF 9).  It was reasonable for Northwestern to rely on that record.  *See Am. Gen.,* 2008 WL 2096833 at *9; *Roberts,* 61 Fed. Appx. at 591-92; *and Kimmel,* 678 F.Supp.2d at 805-06.  For Plaintiff to argue that the record says something other than what it says on its face is to engage in speculative argument of counsel, which does not suffice to counter a showing of summary judgment.  *See Coleman-Domanoski,* 456 F.Supp.3d at 1254*; Pinkerton*, 563 F.3d at 1061.

Also, any potential argument by Plaintiff that Northwestern should have done more to investigate Plaintiff's claim must fail.  The governing standard is reasonableness under the circumstances, not perfection, and insurers have wide latitude in claim investigation.  *See Pham,* 70 P.3d at 573; *Wheeler,* 835 P.2d at 578-79; and *Savio*, 706 P.2d at 1274.  Also, such arguments would be based on speculation, incapable of refuting summary judgment.  *See Coleman-Domanoski,* 456 F.Supp.3d at 1254.  In addition, Plaintiff would need to demonstrate that any potential further efforts would have changed the outcome.  *See Am. Gen*., 2008 WL 2096833 at *9; *Sims,* 469 F.3d at 891-93.

Here, Plaintiff cannot show that further investigation beyond the face of the Highlands Record would have changed the claim outcome.  The authors of the Highlands and Sky Ridge Records have testified that they wrote down what Mr. Townsend told them – that is, about his cocaine use at age 43 – and that they would not have spoken to someone without legal authorization (*i.e.*, a Northwestern claim adjuster) (SMF 17, 18).  The release authorizations provided to Northwestern allowed for production of records, but not oral interviews of medical providers.  (*See* SMF 8; Doc. 40-8.)  Indeed, the Policies contain no mechanism for compelling cooperation with requests for information, from medical providers or anyone else, outside of litigation discovery.  (*See* Ex. A, B.)

Nor could Plaintiff have a cognizable allegation of fault against Northwestern for failing to obtain Sky Ridge records, when those records corroborated the cocaine use recorded in the Highlands Record and thereby buttressed Northwestern's claim determination (*see* SMF 16).  Plaintiff also cannot fault Northwestern for not having obtained records from Ms. Tupa, or more information from Mr. Townsend's employers, given Northwestern's attempts to do just that in this litigation, utilizing discovery mechanisms not available pre-litigation – and when such production has been opposed by Plaintiff.  (*See* SMF 19-20.)  Again, there is no evidence that the Tupa or employment records would have revealed any relevant information about Mr. Townsend's cocaine use.

The same lack of outcome-changing investigation is true regarding interviewing Plaintiff about Mr. Townsend's cocaine use.  Northwestern asked Plaintiff about Mr. Townsend's drug use pre-litigation but she failed to report his cocaine use (SMF 11, 15); did not provide further information about cocaine use after receiving Northwestern's letter denying the claim and

rescinding the Policies (SMF 15); and admitted in her deposition that Mr. Townsend told her he had used cocaine (SMF 21). The same is true regarding any further attempts by Northwestern to contact Mr. Townsend's other medical providers, without any evidence that such contacts would have mattered to the claim. (*See* SMF 22; Ex O, 79:22-82:10; 83:1-84:17.) Moreover, the paramedical examiner who completed Mr. Townsend's MHQ has attested under oath that based on her routine practice, she asked Mr. Townsend the drug use question, and recorded what he answered, word for word, and Mr. Townsend reviewed and signed the MHQ (SMF 23). Plaintiff cannot show that further investigatory tasks would have produced a different claim determination.

In short, Plaintiff cannot demonstrate that Northwestern acted without a reasonable basis on Plaintiff's claim for benefits – let alone that Northwestern acted with knowing or reckless disregard. Under the admissible undisputed and indisputable facts here, as a matter of law, Plaintiff cannot prove her bad faith claim. *See Polland,* 2019 WL 10258801 at *7. Also, because there is no coverage for Plaintiff's claim under the Policies as a matter of law, no bad faith claim can lie. *See Coleman-Domanoski*, 456 F.Supp.3d at 1262-63. Summary judgment should be granted on Plaintiff's bad faith claim.

**D.    Plaintiff's Declaratory Judgment Claim Should be Dismissed**

Plaintiff seeks a declaration that coverage under the joint policy should be reinstated (Compl., ¶ 38). But Plaintiff cannot as a matter of law prevail on her breach of contract claim as to either of the Policies. Her declaratory judgment claim should also be dismissed.

## V.    CONCLUSION

Northwestern respectfully requests summary judgment in its favor.

20

Respectfully submitted,

s/ Marilyn S. Chappell
Jon F. Sands
Marilyn S. Chappell
Sweetbaum Sands Ramming PC
1125 Seventeenth Street, Suite 2100
Denver, Colorado 80202
Phone: (303) 296-3377
jsands@sweetbaumsands.com
mchappell@sweetbaumsands.com

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2021, I electronically filed the foregoing **MOTION FOR SUMMARY JUDGMENT OF DEFENDANT THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, WITH EX. A-P,** with the Clerk of the Court using the CM/ECF system which will send it to the following.

Bradley A. Levin
Kerri J. Rugh
Levin Sitcoff PC
1512 Larimer St., Suite 650
Denver, Colorado 80202
bal@levinsitcoff.com
kjr@levinsitcoff.com

s/Megan MacLennan

21