**Northwestern Mutual**

The Northwestern Mutual Life Insurance Company agrees to pay the benefits provided in this policy (the "Policy"), subject to its terms and conditions. Signed at Milwaukee, Wisconsin on the Date of Issue.

Chief Executive Officer                    Secretary

## TERM LIFE POLICY

**Participating**

Insurance payable on death of Insured before Expiry Date.

Convertible on or before the Final Conversion Date.

Premiums are payable to the Expiry Date.

The Expiry Date and Final Conversion Date are shown on page 3.

**Right To Return Policy. Please read this Policy carefully.** The Policy may be returned by the Owner for any reason within ten days after it was received. The Policy may be returned to the Northwestern Mutual agent who sold it to you or to the Company at 720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202 ("Home Office"), 414-271-1444. If returned, the Policy will be considered void from the beginning. Any premium paid will be refunded.

ICC12.TT.TERM.L20.(0513)

This policy provides no coverage; it is terminated and no longer inforce. This replica was prepared on

 **SEP 1 5 2020**

REPLICA POLICY:
MAY NOT BE AN EXACT DUPLICATE OF THE ORIGINAL POLICY

| | | | |
|---|---|---|---|
| **Insured** | Darren Townsend | **Age and Sex** | 44 Male |
| **Policy Date** | September 20, 2017 | **Policy Number** | 22 219 582 |
| **Plan** | 20 Year Level Term | **Amount** | $1,000,000 |

ICC12.TT.TERM.L20.(0513)

NORTHWESTERN1520
EXHIBIT A

**This Policy is a legal contract between the Owner and
The Northwestern Mutual Life Insurance Company.
Read your Policy carefully.**

# TABLE OF CONTENTS

**POLICY SCHEDULE PAGES**

**SECTION 1. THE CONTRACT**
- Section 1.1 Life Insurance Benefit
- Section 1.2 Expiry of Policy
- Section 1.3 Entire Contract; Changes
- Section 1.4 Incontestability
- Section 1.5 Suicide
- Section 1.6 Dates
- Section 1.7 Misstatement
- Section 1.8 Payments by the Company
- Section 1.9 Conformity with Interstate Insurance Product Regulation Commission Standards

**SECTION 2. OWNERSHIP**
- Section 2.1 The Owner
- Section 2.2 Transfer of Ownership
- Section 2.3 Naming and Changing a Successor Owner
- Section 2.4 Collateral Assignment

**SECTION 3. PREMIUMS**
- Section 3.1 Amount of Premium
- Section 3.2 Premium Payment
- Section 3.3 Frequency
- Section 3.4 Grace Period
- Section 3.5 Premium Refund at Death

**SECTION 4. REINSTATEMENT**

**SECTION 5. DIVIDENDS**
- Section 5.1 Annual Dividends
- Section 5.2 Use of Dividends
- Section 5.3 Automatic Use of Dividend Accumulations For Premium Payment
- Section 5.4 Payment of Dividend Accumulations
- Section 5.5 Dividend at Death

**SECTION 6. CONVERSION TO PERMANENT INSURANCE**
- Section 6.1 Attained Age Conversion
- Section 6.2 Effective Date
- Section 6.3 Conversion of Waiver of Premium Benefit

**SECTION 7. BENEFICIARIES**
- Section 7.1 Definition of Beneficiaries
- Section 7.2 Naming and Changing of Beneficiaries of the Life Insurance Benefit
- Section 7.3 Succession in Interest of Beneficiaries of the Life Insurance Benefit
- Section 7.4 Trustee as Beneficiary
- Section 7.5 General

**SECTION 8. PAYMENT OF POLICY BENEFITS**
- Section 8.1 Payment of Proceeds
- Section 8.2 Income Plan Elections
- Section 8.3 Income Plan Offerings
- Section 8.4 Naming and Changing of Beneficiaries under Income Plans
- Section 8.5 Succession in Interest of Beneficiaries under Income Plans
- Section 8.6 Income Plan Rates

**ADDITIONAL BENEFITS (if any)**

**APPLICATION**

ICC12.TT.TERM.L20.(0513)

NORTHWESTERN1521
EXHIBIT A

## POLICY SCHEDULE PAGES
### Date of Issue - September 20, 2017

This policy was issued in the State of Colorado.
The Colorado Division of Insurance phone number is: (303) 894-7499.

| Plan and Additional Benefits | Amount | Annual Premiums | Payable For |
|---|---|---|---|
| 20 Year Level Term | $1,000,000 | See Table | 20 Years |

An annual premium is payable September 20, 2017 and every September 20 after that.

The first annual premium is $▉▉▉▉

Final Conversion Date: September 20, 2027   Expiry Date: September 20, 2037

This Policy is issued in a Premier (Non-Tobacco) premium classification.

This policy is participating. Dividends are not guaranteed. It is not expected that any dividends will be payable on this policy.

Following the Table of Annual Premiums is information on how to determine the amount of the premium when paid more often than annually.

### TABLE OF ANNUAL PREMIUMS

| For Policy Year Beginning September 20, | $1,000,000 20 Year Level Term Premium |
|---|---|
| 2017 | $ ▉ |
| 2018 | ▉ |
| 2019 | ▉ |
| 2020 | ▉ |
| 2021 | ▉ |
| 2022 | ▉ |
| 2023 | ▉ |
| 2024 | ▉ |
| 2025 | ▉ |
| 2026 | ▉ |
| 2027 | ▉ |
| 2028 | ▉ |
| 2029 | ▉ |
| 2030 | ▉ |
| 2031 | ▉ |
| 2032 | ▉ |
| 2033 | ▉ |
| 2034 | ▉ |
| 2035 | ▉ |
| 2036 | ▉ |

| | |
|---|---|
| **Direct Beneficiary** | Karen Townsend, spouse of the Insured |
| **Owner** | Darren Townsend, the Insured |
| **Insured** | Darren Townsend |
| **Policy Date** | September 20, 2017 |
| **Plan** | 20 Year Level Term |

| | |
|---|---|
| **Age and Sex** | 44 Male |
| **Policy Number** | 22 219 582 |
| **Amount** | $1,000,000 |

ICC12.TT.TERM.L20.(0513)   3   (REV0116)

NORTHWESTERN1522
EXHIBIT A

Policy Number: 22 219 582

The premium for the conversion benefit, which is a required component of all of the Company's term policies, is 7.2% of the premium above.

The total amount of premiums due per year when paid on frequencies other than annual is greater than the annual premium shown in the table above. Premiums paid on a basis other than annual are increased to reflect the time value of money and to cover the administrative costs of processing the additional premium payments. If premiums are paid more often than annually (See Section 3.3), the premium amount will be determined as follows:

| Premium Frequency | Multiply Annual Premium by: *** |
|---|---|
| Every 6 months | .5096 |
| Every 3 months | .2573 |
| Monthly | .0863 |

*** Depending upon the frequency premiums are paid and the premium payment method used, the Company may also charge an administrative fee, not to exceed $5 per payment, to cover the additional costs associated with the payment method.

ICC12.TT.TERM.L20.(0513)                    3-1                    (REV0116)

NORTHWESTERN1523
EXHIBIT A

Amendment Date: September 14, 2020                    Policy Number: 22 219 582

(This page is intentionally blank.)

ICC12.TT.TERM.L20.(0513)                    4                    (REV0116)

NORTHWESTERN1524
EXHIBIT A

# SECTION 1. THE CONTRACT

### 1.1 LIFE INSURANCE BENEFIT

The Northwestern Mutual Life Insurance Company ("Company") will pay the Life Insurance Benefit on the death of the Insured while this Policy is in force. Subject to the terms and conditions of the Policy, the payment of the Life Insurance Benefit will be:

- made after proof of the death of the Insured is received at the Home Office; and

- made to the Beneficiary or other payee under Section 7.

This payment of the Life Insurance Benefit will be made within 60 days after proof of death is received.

When all premiums due have been paid, the amount of the Life Insurance Benefit will be:

- the plan Amount shown on page 3; plus

- the amount of dividend accumulations, if any (Section 5.2); plus

- the amount of any premium refund (Section 3.5) and dividend, if any, at death (Section 5.5).

These amounts will be determined as of the Insured's date of death.

When the Insured dies during the grace period following the due date of any unpaid premium, the amount of the Life Insurance Benefit will be:

- the amount determined above assuming the overdue premium has been paid; less

- the amount of the unpaid premium.

### 1.2 EXPIRY OF POLICY

Unless terminated earlier (because a premium was not paid, conversion, or otherwise), this Policy will terminate on the Expiry Date shown on page 3.

### 1.3 ENTIRE CONTRACT; CHANGES

This Policy, together with the attached application and any application supplements, and any attached amendments, endorsements, riders and additional benefits are the entire contract. Statements in the application are representations and not warranties. This Policy may be changed by the Company to maintain compliance with applicable state and federal law or to assure continued qualification of the Policy under federal tax laws. The Owner may add any available benefits or riders to the Policy, or remove existing benefits or riders, subject to conditions and underwriting requirements set by the Company at the time of the request. A change in the terms of, or a waiver of the Company's rights under, the Policy is valid only if it is approved in writing by an officer of the Company. The Company may require that the Policy be sent to it for endorsement to show a change or waiver. No agent has the authority to change the Policy or waive the Company's rights thereunder.

### 1.4 INCONTESTABILITY

Except as stated below for a fraudulent misstatement, the Company will not contest this Policy after the Policy has been in force, during the lifetime of the Insured, for two years from the Date of Issue or for two years from the effective date of a reinstatement (Section 4). Except as stated below for a fraudulent misstatement, a change (including an increase in the amount of insurance) to the terms of the Policy after the Date of Issue, which occurred at the request of the Owner and was subject to the Company's insurability requirements, will be incontestable after the change has been in force, during the lifetime of the Insured, for two years from the effective date of the change. In issuing the insurance, the Company has relied on the application(s). While the insurance is contestable, the Company, on the basis of a material misstatement in the application(s), may rescind the insurance or deny a claim. After the applicable contestability period set forth above, the Company may rescind the insurance for a fraudulent misstatement to the extent allowed by the law of the state in which this Policy is delivered or issued for delivery.

### 1.5 SUICIDE

If the Insured dies by suicide within one year from the Date of Issue, the amount payable by the Company will be limited to the premiums paid.

NORTHWESTERN1525
EXHIBIT A

**1.6 DATES**

The contestable and suicide periods begin with the Date of Issue. Policy months, years, and anniversaries are computed from the Policy Date. Both dates applicable to the Policy as originally issued are shown on page 3. The Date of Issue will be later for any increase in the amount of insurance coverage placed into effect after the Policy is originally issued.

**1.7 MISSTATEMENT**

If the age or sex of the Insured has been misstated, the amount payable will be the amount which the premiums paid would have purchased at the correct age and sex.

**1.8 PAYMENTS BY THE COMPANY**

All payments by the Company under this Policy are payable in United States dollars at the Home Office.

**1.9 CONFORMITY WITH INTERSTATE INSURANCE PRODUCT REGULATION COMMISSION STANDARDS**

This Policy was approved under the authority of the Interstate Insurance Product Regulation Commission and issued under the Commission standards. Any provision of this Policy which, on the Date of Issue, is in conflict with the Commission standards for an Individual Term Life Insurance Policy, as in effect on the Date of Issue, is hereby amended to conform to those standards as of the Date of Issue.

# SECTION 2. OWNERSHIP

**2.1 THE OWNER**

The Owner is named on page 3. All Policy rights may be exercised by the Owner, the Owner's successor, or the Owner's transferee without the consent of any Beneficiary. If the Policy has more than one Owner, Policy rights must be exercised only by authorization of all Owners. After the death of the Insured, Policy rights may be exercised only as provided in Section 7.

**2.2 TRANSFER OF OWNERSHIP**

The Owner may transfer the ownership of this Policy by providing the Company with written proof of the transfer and supplying the information in a form that is acceptable to the Company, including supplying any required information about the new Owner. The Company will not be responsible to a subsequent Owner for any payment or other action taken by the Company until the above information, in a form acceptable to the Company, is received at the Home Office. The transfer will then take effect as of the date it was signed unless otherwise specified by the Owner. The Company may require that the Policy be sent to it for endorsement to show the transfer.

**2.3 NAMING AND CHANGING A SUCCESSOR OWNER**

If the Owner is not the Insured, the Owner may name or change a successor owner who will

become the new owner upon the Owner's death. Naming or changing a successor owner will be effective upon receipt at the Home Office of a written request that is acceptable to the Company, including supplying any required information about the successor owner. A successor owner succeeds to the interests of the Owner only if the Owner is not the Insured at the time of the Owner's death.

**2.4 COLLATERAL ASSIGNMENT**

The Owner may assign this Policy as collateral security. The Company is not responsible for the validity or effect of a collateral assignment. The Company will not be responsible to an assignee for any payment or other action taken by the Company before receipt of the assignment in writing at the Home Office. Unless otherwise specified by the Owner, the assignment will take effect on the date the assignment is signed by the Owner, subject to any payments made or actions taken prior to receipt of the assignment.

The interest of any Beneficiary will be subject to any collateral assignment made either before or after the Beneficiary is named.

A collateral assignee is not an Owner. A collateral assignment is not a transfer of ownership. Ownership can be transferred only by complying with Section 2.2 or Section 2.3.

ICC12.TT.TERM.L20.(0513)                                 6

NORTHWESTERN1526
EXHIBIT A

## SECTION 3. PREMIUMS

### 3.1 AMOUNT OF PREMIUM

The annual premiums due for the plan Amount and the annual premiums due for any additional benefits are shown on page 3.

### 3.2 PREMIUM PAYMENT

All premiums after the first are payable at the Home Office or to a payment center designated by the Company. All payments must be made in United States dollars payable through a United States financial institution. A receipt signed by an officer of the Company will be furnished on request. A premium must be paid on or before its due date. The date when each premium is due and the number of years for which premiums are payable are described on page 3.

### 3.3 FREQUENCY

Premiums may be paid every 3, 6 or 12 months. The Company may offer other payment programs that permit the payment of premiums on other frequencies or provide additional features such as electronic funds transfer.

On request, the Company will provide:

- the amount of the premium due on any available frequency for any Policy year;
- the annual total of premiums due (including the amount of the administrative fee, if any) if paid on frequencies other than annual; and
- the amount by which that total differs from the annual premium. The total amount of premiums due per year when paid on frequencies other than annual is greater than the annual premium (see page 3). The Company also will provide an annual percentage rate calculation upon request.

A change in premium frequency will take effect when the Company accepts a premium on a new frequency.

### 3.4 GRACE PERIOD

A grace period of 31 days will be allowed to pay a premium that is not paid on its due date. The Policy will be in full force during this period. If the Insured dies during the grace period, any overdue premium will be paid from the Life Insurance Benefit of the Policy.

If the premium is not paid within the grace period, the Policy will terminate as of the due date.

### 3.5 PREMIUM REFUND AT DEATH

The Company will refund a portion of a premium paid for the period beyond the date of the Insured's death. The refund will be paid as part of the Life Insurance Benefit.

ICC12.TT.TERM.L20.(0513)                    7

NORTHWESTERN1527
EXHIBIT A

# SECTION 4. REINSTATEMENT

If this Policy terminates as provided in Section 3.4, it may be reinstated within three years after the due date of the overdue premium. All unpaid premiums (and interest as required in this section) must be received by the Company while the Insured is alive and before the Expiry Date.

In addition, for the Policy to be reinstated more than 31 days after the end of the grace period:

- evidence of insurability must be given that is acceptable to the Company; and
- all unpaid premiums must be paid with interest from the due date of each premium. Interest is at an annual effective rate of 6%.

# SECTION 5. DIVIDENDS

## 5.1 ANNUAL DIVIDENDS

This Policy is eligible to share in the divisible surplus, if any, of the Company. This divisible surplus is determined each year. This Policy's share, if any, will be credited as a dividend on the Policy anniversary. Decisions concerning the amount and appropriate allocation of divisible surplus are within the sole discretion of the Company's Board of Trustees. There is no guaranteed method or formula for the determination or allocation of divisible surplus. The Company's approach is subject to change. There is no guarantee of a divisible surplus. Even if there is a divisible surplus, the payment of a dividend on this Policy is not guaranteed.

It is not expected that any dividends will be payable on this Policy.

## 5.2 USE OF DIVIDENDS

Annual dividends, if any, may be paid under one of the following options:
- **Cash.**
- **Dividend Accumulations.** Dividends will accumulate at interest. Interest is credited at an annual effective rate of 0.5%. The Company may set a higher rate.
- **Premium Payment.** Dividends will be used to reduce premiums. If the balance of a premium is not paid, the dividend will be credited to dividend accumulations.

If no direction is given for the use of dividends, they will be used to reduce premiums.

## 5.3 AUTOMATIC USE OF DIVIDEND ACCUMULATIONS FOR PREMIUM PAYMENT

Dividend accumulations, if any, will be used to pay an overdue premium on this Policy. If dividend accumulations are not large enough to pay the overdue premium, a premium will be paid for any other frequency permitted by this Policy for which dividend accumulations are large enough.

If dividend accumulations are not large enough to pay any premium and if the premium is unpaid at the end of the grace period, the Policy will terminate.

The Owner may revoke or reinstate this Automatic Use of Dividend Accumulations For Premium Payment provision upon receipt at the Home Office of a written request acceptable to the Company.

## 5.4 PAYMENT OF DIVIDEND ACCUMULATIONS

Dividend accumulations, if any, are part of the Life Insurance Benefit payable on the death of the Insured. While the Insured is living, dividend accumulations may be withdrawn by the Owner at any time. If the Policy terminates, any dividend accumulations will be paid to the Owner.

## 5.5 DIVIDEND AT DEATH

If a dividend is payable under Section 5.1, a dividend for the period from the beginning of the Policy year to the date of the Insured's death will be payable as part of the Life Insurance Benefit.

NORTHWESTERN1528
EXHIBIT A

# SECTION 6. CONVERSION TO PERMANENT INSURANCE

## 6.1 ATTAINED AGE CONVERSION

The Owner may convert this entire Policy to a new policy that will be issued at the attained age of the Insured. This may be done on or before the Final Conversion Date shown on page 3. No new evidence of insurability will be required for conversions involving the same or lesser underwriting amount as the term insurance coverage converted. The underwriting amount, which may exceed the amount of term insurance coverage converted, is determined by the Company and represents the mortality risk of the new policy.

A portion of this Policy may be converted, subject to conditions set by the Company at the time of the conversion.

**Plan.** The new policy will be on a permanent single life insurance plan that the Company makes available for this purpose and which is being issued by the Company on the date of the conversion. If this Policy has an additional benefit, the additional benefit that is made a part of the new policy will contain the provisions of that benefit as it is being issued by the Company on the date of conversion.

**Amount.** The amount of the new policy will be the amount of term insurance coverage converted. The converted plan must meet minimum size requirements as of the date of the conversion.

**Premiums.** The premium for the new policy, including any additional benefits, will be determined as of the date of conversion based on:

- the Company's premium rates then in effect;
- the plan and amount of the new policy and any additional benefits;
- the Insured's age on the Insured's birthday nearest the policy date of the new policy; and
- the underwriting classification of this Policy. However, if the underwriting classification of this Policy has been modified or eliminated for policies being issued at the time of conversion, the premium will be based on an appropriate underwriting classification, as determined by the Company.

If the new policy allows the payment of additional premiums that have the effect of increasing cash value, the Company may limit the amount of such premiums.

**Cost of Conversion.** The cost of conversion will be the first premium on the new policy less any dividend and premium credit on the amount converted.

**Provisions.** The new policy will contain any exclusion provision which is a part of this Policy. The new policy shall provide that the incontestability and suicide periods applicable to the coverage converted will begin from the Date of Issue of this Policy. If the new policy includes additional coverage, the incontestability and suicide periods for that additional coverage will begin on the new policy's Date of Issue.

## 6.2 EFFECTIVE DATE

The new policy will take effect on receipt at the Home Office of:

- a written request acceptable to the Company; and
- payment of the cost of conversion.

The amount of term insurance coverage converted from this Policy will be surrendered when the new policy takes effect. The Company may require that this Policy be sent to it for endorsement to show the conversion.

## 6.3 CONVERSION OF WAIVER OF PREMIUM BENEFIT

If the Waiver of Premium Benefit is a part of this Policy at the time of conversion, the new policy may be issued with the Waiver of Premium Benefit only if the annual premium on the new policy is not greater than the annual premium for the same amount of coverage on the Company's Whole Life Paid Up at 90 plan (or, if that plan has been discontinued, the successor plan then being issued by the Company).

The Waiver of Premium Benefit on the new policy will apply to a disability that started while the converted term insurance coverage was in force.

**Exception.** The new policy may be issued with the Waiver of Premium Benefit only if it is available on the new policy (as determined in Section 6.1) at the time of conversion.

ICC12.TT.TERM.L20.(0513)    9

NORTHWESTERN1529
EXHIBIT A

# SECTION 7. BENEFICIARIES

## 7.1 DEFINITION OF BENEFICIARIES

The term "Beneficiaries" means direct beneficiaries, contingent beneficiaries, and further payees of the Life Insurance Benefit.

## 7.2 NAMING AND CHANGING OF BENEFICIARIES OF THE LIFE INSURANCE BENEFIT

**By Owner.** The Owner may name and change the Beneficiaries of the Life Insurance Benefit:

- while the Insured is living; or
- during the first 60 days after the death of the Insured, if the Insured at the time of his or her death was not the Owner. A change made during the 60 days cannot be revoked.

**Effective Date.** Naming or changing of Beneficiaries will be made on receipt at the Home Office of a written request in good order that is acceptable to the Company. The request will then take effect as of the date that it was signed unless otherwise specified by the Owner. The Company is not responsible for any payment or other action that is taken by it before the receipt of the request. The Company may require that the Policy be sent to it to be endorsed.

## 7.3 SUCCESSION IN INTEREST OF BENEFICIARIES OF THE LIFE INSURANCE BENEFIT

**At Least One Beneficiary Survives And Receives Payment.** If at least one of the Beneficiaries survives the Insured and receives payment of his or her share of the Life Insurance Benefit, then the Life Insurance Benefit will be paid as follows:

**Direct Beneficiaries.** The Life Insurance Benefit of this Policy will be paid in equal shares, unless otherwise designated by the Owner, to the direct beneficiaries who survive and receive payment. If a direct beneficiary dies before receiving all or part of the direct beneficiary's full share, then the unpaid portion will be paid in equal shares to the other direct beneficiaries who survive and receive payment.

**Contingent Beneficiaries.** If the direct beneficiaries do not survive and receive payment of the entire Life Insurance Benefit, then the unpaid portion will be paid in equal shares, unless otherwise designated by the Owner, to the contingent beneficiaries who survive and receive payment. If a contingent beneficiary dies

before receiving all or part of the contingent beneficiary's full share, then the unpaid portion will be paid in equal shares to the other contingent beneficiaries who survive and receive payment.

**Further Payees.** If the direct and contingent beneficiaries do not survive and receive payment of the entire Life Insurance Benefit, then the unpaid portion will be paid in one sum:

- in equal shares, unless otherwise designated by the Owner, to the further payees who survive and receive payment; or
- if no further payees survive and receive payment of the Life Insurance Benefit, then to the estate of the last to die of all of the Beneficiaries.

**No Beneficiaries Survive And Receive Payment.** If no Beneficiaries survive the Insured and receive payment of any portion of the Life Insurance Benefit, then the Life Insurance Benefit will be paid to the Owner or to the Owner's estate.

## 7.4 TRUSTEE AS BENEFICIARY

If a trustee is named as a beneficiary and no qualified trustee makes claim to the Life Insurance Benefit within one year after payment becomes due to the trustee, or if acceptable evidence is furnished to the Company within that year showing that no trustee can qualify to receive payment, payment will be made as though the trustee had not been named.

The Company will be fully discharged of liability for any action taken by the trustee and for all amounts paid to, or at the direction of, the trustee and will have no obligation as to the use of the amounts. In all dealings with the trustee, the Company will be fully protected against the claims of every other person. The Company will not be charged with notice of a change of trustee unless written evidence of the change is received at the Home Office.

## 7.5 GENERAL

**Transfer Of Ownership.** A transfer of ownership, in and of itself, will not change the interest of the Beneficiaries.

**Claims Of Creditors.** So far as allowed by law, no amount payable under this Policy will be subject to the claims of creditors of the Beneficiaries.

ICC12.TT.TERM.L20.(0513)                    10

NORTHWESTERN1530
EXHIBIT A

# SECTION 8. PAYMENT OF POLICY BENEFITS

## 8.1 PAYMENT OF PROCEEDS

The Life Insurance Benefit will be paid, as designated, in cash or into an income plan as follows:

- in a manner designated by the Owner and accepted by the Company; or
- if the Owner has not designated an acceptable manner of payment, then in cash or in a manner designated by a direct or contingent beneficiary and accepted by the Company.

The Company will pay interest on the Life Insurance Benefit from the date of death of the Insured until the Life Insurance Benefit is paid in cash or into an income plan. Interest will be paid at an annual effective rate determined by the Company but the rate shall not be less than the rate applicable to this Policy for funds left on deposit, as of the date of death of the Insured. Additional interest will be paid at a rate of 10% annually beginning with the date that is 31 calendar days from the latest of items (a), (b) and (c) to the date the claim is paid, where:

(a) is the date that due proof of death is received by the Company;

(b) is the date the Company receives sufficient information to determine its liability, the extent of the liability, and the appropriate payee legally entitled to the proceeds; and

(c) is the date that legal impediments to payment of proceeds that depend on the action of parties other than the Company are resolved and sufficient evidence of the same is provided to the Company. Legal impediments to payment include, but are not limited to:

- the establishment of guardianships and conservatorships;
- the appointment and qualification of trustees, executors and administrators; and
- the submission of information required to satisfy a state and federal reporting requirements.

## 8.2 INCOME PLAN ELECTONS

**For Income Plans Elected By Owner.** The Owner may elect an income plan for each Beneficiary's share of the Life Insurance Benefit:

- while the Insured is living; or
- during the first 60 days after the death of the Insured, if the Insured at the time of his or her death was not the Owner. An elec-

tion made during the 60 days cannot be revoked.

**For Income Plans Elected By Beneficiary.** Subject to the Owner's rights during the first 60 days after the death of the Insured, if no income plan has been selected by the Owner upon the death of the Insured, the Beneficiary may elect an income plan for the Life Insurance Benefit.

**Effective Date.** An income plan that is elected by the Owner will take effect on the date of the death of the Insured if the election is received at the Home Office while the Insured is living. In all other situations, an income plan that is elected will take effect on the date the election is received at the Home Office or on a later date, if requested.

**Payment Date.** The first payment is due as of the effective date of the plan. If applicable, proof of the date of birth, acceptable to the Company, must be furnished for each individual on whose life the payments are based.

**Minimum Payment.** The Company may limit the election of an income plan to one that results in payments of at least $50. If payments under an income plan are or become less than $50, the Company may change the frequency of payments. If the payments are being made once every 12 months and are less than $50, the Company may pay the present value or the balance of the income plan.

## 8.3 INCOME PLAN OFFERINGS

The Company will make available the following Life Income Plans:

- **Single Life Income.** The Company will make monthly payments for the selected certain period, if any, and thereafter during the remaining lifetime of the individual upon whose life income payments are based. The choices for the certain period are:

  (a) zero years;

  (b) 10 years; or

  (c) 20 years.

- **Joint And Survivor Life Income.** The Company will make monthly payments for a 10-year certain period and thereafter during the joint lifetime of the two individuals upon whose lives income payments are based and continuing during the remaining lifetime of the survivor.

ICC12.TT.TERM.L20.(0513)    11

NORTHWESTERN1531

EXHIBIT A

**Limitations.** A Beneficiary who is a natural person may be paid under a Life Income Plan only if the payments depend on his or her life. A Beneficiary who is a non-natural person may be paid under a Life Income Plan only if the payments depend on the life of the Insured's spouse or the Insured's dependent.

**Payment Frequency.** On request, payments will be made once every 3, 6 or 12 months instead of each month.

**Other Selections.** The Company may offer additional income plans.

### 8.4 NAMING AND CHANGING OF BENEFICIARIES UNDER INCOME PLANS

**For Income Plans Elected By Owner.** The Owner of the Policy may name the direct beneficiaries, contingent beneficiaries, and further payees of an income plan elected for the Life Insurance Benefit. If the Owner of the Policy elected an income plan, a Beneficiary may name and change any contingent beneficiaries and further payees of the Beneficiary's share of the benefits only if:

- the Beneficiary was the Owner of the Policy; or

- no contingent beneficiary or further payee of that share is living.

**For Income Plans Elected By Beneficiary.** If a Beneficiary elected the income plan, the Beneficiary may name and change any contingent beneficiaries and further payees of the Beneficiary's share of the benefits.

### 8.5 SUCCESSION IN INTEREST OF BENEFICIARIES UNDER INCOME PLANS

**Direct Beneficiary.** Amounts payable under an income plan will be payable to the direct beneficiary.

**Contingent Beneficiaries.** At the death of the direct beneficiary, amounts payable under an income plan will be payable in equal shares to the contingent beneficiaries who survive and receive payment. Unless otherwise requested by the Owner, the contingent beneficiaries can elect to:

- continue to receive the remaining period certain payments at the selected frequency;

- receive the present value of the remaining period certain payments in one sum; or

- apply the present value of the remaining period certain payments to a new Life Income Plan.

**Further Payees.** At the death of all direct and contingent beneficiaries, the present value of any unpaid payments under an income plan will be paid in one sum:

- in equal shares to the further payees who survive and receive payment; or

- if no further payees survive and receive payment, to the estate of the last to die of all the direct beneficiaries, contingent beneficiaries and further payees.

Present value will be based on the rate of interest used to determine the amount of the payments.

### 8.6 INCOME PLAN RATES

**Minimum Payment Rates.** Life Income Plan payments will be based on rates declared by the Company. These rates will provide at least as much income as would the Company's rates, on the date that the income plan takes effect, for a single premium immediate annuity contract. Payments under these rates will not be less than the Minimum Payment Rate Tables.

The Life Income Plan payment rates in those tables depend on the sex and the adjusted age of each person on whose life the payments are based. The adjusted age is:

- the age on the birthday that is nearest to the date on which the income plan takes effect; plus

- the age adjustment shown below for the number of Policy years that have elapsed from the Policy Date to the date that the income plan takes effect. A part of a Policy year is counted as a full year.

| POLICY YEARS ELAPSED | AGE ADJUST-MENT- | POLICY YEARS ELAPSED | AGE ADJUST-MENT |
|---|---|---|---|
| 1 to 12 | 0 | 37 to 48 | -3 |
| 13 to 24 | -1 | 49 to 60 | -4 |
| 25 to 36 | -2 | 61 or more | -5 |

NORTHWESTERN1532
EXHIBIT A

## MINIMUM PAYMENT RATE TABLES
### Minimum Monthly Income Payments per $1,000 of Proceeds

**SINGLE LIFE INCOME PLAN**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **SINGLE LIFE MONTHLY PAYMENTS** | | | | | | | |
| MALE ADJUSTED AGE* | CHOSEN PERIOD (YEARS) | | | FEMALE ADJUSTED AGE* | CHOSEN PERIOD (YEARS) | | |
| | ZERO | 10 | 20 | | ZERO | 10 | 20 |
| 55 | $ 2.78 | $ 2.76 | $ 2.70 | 55 | $ 2.67 | $ 2.66 | $ 2.61 |
| 56 | 2.85 | 2.83 | 2.76 | 56 | 2.73 | 2.72 | 2.67 |
| 57 | 2.92 | 2.90 | 2.82 | 57 | 2.80 | 2.79 | 2.73 |
| 58 | 3.00 | 2.98 | 2.89 | 58 | 2.88 | 2.86 | 2.80 |
| 59 | 3.09 | 3.06 | 2.96 | 59 | 2.96 | 2.94 | 2.86 |
| 60 | 3.18 | 3.15 | 3.03 | 60 | 3.04 | 3.02 | 2.93 |
| 61 | 3.28 | 3.24 | 3.10 | 61 | 3.13 | 3.10 | 3.00 |
| 62 | 3.38 | 3.33 | 3.18 | 62 | 3.22 | 3.19 | 3.07 |
| 63 | 3.48 | 3.43 | 3.26 | 63 | 3.32 | 3.28 | 3.15 |
| 64 | 3.60 | 3.54 | 3.34 | 64 | 3.42 | 3.38 | 3.23 |
| 65 | 3.72 | 3.65 | 3.42 | 65 | 3.53 | 3.49 | 3.31 |
| 66 | 3.85 | 3.77 | 3.50 | 66 | 3.65 | 3.60 | 3.39 |
| 67 | 3.99 | 3.90 | 3.58 | 67 | 3.78 | 3.71 | 3.47 |
| 68 | 4.14 | 4.04 | 3.66 | 68 | 3.91 | 3.84 | 3.55 |
| 69 | 4.31 | 4.18 | 3.74 | 69 | 4.06 | 3.97 | 3.63 |
| 70 | 4.48 | 4.34 | 3.82 | 70 | 4.22 | 4.11 | 3.71 |
| 71 | 4.68 | 4.50 | 3.90 | 71 | 4.39 | 4.26 | 3.79 |
| 72 | 4.88 | 4.67 | 3.97 | 72 | 4.57 | 4.42 | 3.86 |
| 73 | 5.11 | 4.85 | 4.03 | 73 | 4.77 | 4.59 | 3.93 |
| 74 | 5.35 | 5.04 | 4.09 | 74 | 4.98 | 4.77 | 4.00 |
| 75 | 5.62 | 5.24 | 4.15 | 75 | 5.22 | 4.96 | 4.06 |
| 76 | 5.91 | 5.45 | 4.19 | 76 | 5.48 | 5.16 | 4.11 |
| 77 | 6.23 | 5.67 | 4.23 | 77 | 5.76 | 5.36 | 4.16 |
| 78 | 6.58 | 5.89 | 4.26 | 78 | 6.07 | 5.57 | 4.21 |
| 79 | 6.95 | 6.11 | 4.29 | 79 | 6.41 | 5.78 | 4.24 |
| 80 | 7.37 | 6.33 | 4.31 | 80 | 6.78 | 6.00 | 4.27 |
| 81 | 7.83 | 6.56 | 4.33 | 81 | 7.20 | 6.22 | 4.30 |
| 82 | 8.32 | 6.77 | 4.34 | 82 | 7.65 | 6.43 | 4.32 |
| 83 | 8.87 | 6.98 | 4.35 | 83 | 8.15 | 6.64 | 4.33 |
| 84 | 9.47 | 7.17 | 4.35 | 84 | 8.69 | 6.85 | 4.34 |
| 85 and over | 10.13 | 7.36 | 4.36 | 85 and over | 9.29 | 7.04 | 4.35 |

**JOINT AND SURVIVOR LIFE INCOME PLAN**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **JOINT AND SURVIVOR MONTHLY PAYMENTS (with 10 years certain)** | | | | | | | |
| MALE ADJUSTED AGE* | FEMALE ADJUSTED AGE* | | | | | | |
| | 55 | 60 | 65 | 70 | 75 | 80 | 85 and over |
| 55 | $ 2.37 | $ 2.50 | $ 2.59 | $ 2.66 | $ 2.70 | $ 2.73 | $ 2.75 |
| 60 | 2.48 | 2.66 | 2.82 | 2.95 | 3.04 | 3.09 | 3.13 |
| 65 | 2.55 | 2.79 | 3.04 | 3.26 | 3.43 | 3.55 | 3.61 |
| 70 | 2.59 | 2.89 | 3.22 | 3.56 | 3.87 | 4.10 | 4.24 |
| 75 | 2.62 | 2.95 | 3.35 | 3.81 | 4.29 | 4.72 | 5.02 |
| 80 | 2.64 | 2.99 | 3.42 | 3.97 | 4.63 | 5.30 | 5.85 |
| 85 and over | 2.65 | 3.01 | 3.46 | 4.06 | 4.84 | 5.71 | 6.52 |

*See Section 8.6

The amount of the payment for any other combination of ages will be furnished by the Company on request.

Monthly payment rates are based on 1.00% interest and the 2012 Individual Annuity Mortality Period Table with 125% of Projection Scale G2 and a 5.00% load. Mortality improvements are projected for 4 years plus the remaining life of the Annuitant.

ICC12.TT.TERM.L20.(0513)    13

NORTHWESTERN1533
EXHIBIT A

**THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY**
720 EAST WISCONSIN AVENUE, MILWAUKEE, WI 53202

**INDIVIDUAL LIFE INSURANCE APPLICATION**

| POLICY NUMBER | ☐ Companion Policy | | PLAN GROUP NUMBER *(if applicable)* |
|---|---|---|---|

Has an application or informal inquiry ever been made to Northwestern Mutual for annuity, life, long-term care or disability insurance on the life of the Insured?............ ☒ Yes  ☐ No  If "Yes," the last policy number is: **22155043**

## 1. INSURED

**A.** LEGAL NAME *(First, M.I., Last) (Include maiden name in parentheses.)*  ☒ Mr.  ☐ Mrs.  ☐ Ms.  ☐ Dr.
**Darren  Townsend**

| B. ☒ Male  ☐ Female | C. BIRTHDATE *(MM/DD/YYYY)* 06/07 1973 | D. STATE OF BIRTH *(or Foreign Country)* Colorado | E. TAXPAYER ID NUMBER ▮▮▮▮▮ |
|---|---|---|---|

| F. ADDRESS OF PRIMARY RESIDENCE  12380 Jasper Pointe Way | CITY Castle Pines | STATE CO | ZIP CODE 80108 |
|---|---|---|---|

**G.** TELEPHONE NUMBER ☒ Home/Cell  ☐ Business  **720·884·7615**  |  **H.** E-MAIL ADDRESS

## 2. APPLICANT

Select ONLY ONE:  ☒ Insured at Insured's Address  OR  ☐ Other *(Complete A-J)*

**A.** LEGAL NAME *(First, M.I., Last)*  ☐ Mr.  ☐ Mrs.  ☐ Ms.  ☐ Dr.  OR  BUSINESS NAME/TRUST NAME

**B.** TYPE OF BUSINESS/TRUST *(If applicable)*
☐ Corporation  ☐ Partnership  ☐ Other type of Business _____  ☐ Revocable Trust  ☐ Irrevocable Trust

| C. TRUST DATE *(MM/DD/YYYY) (If applicable)* | D. NAME OF TRUSTEE(S) *(If applicable)* | |
|---|---|---|
| E. RELATIONSHIP TO INSURED | F. BIRTHDATE *(MM/DD/YYYY) (If applicable)* | G. TAXPAYER ID NUMBER |

| H. MAILING ADDRESS ☒ Insured's Address | CITY | STATE | ZIP CODE |
|---|---|---|---|

**I.** TELEPHONE NUMBER ☐ Home/Cell  ☐ Business  |  **J.** E-MAIL ADDRESS

## 3. OWNER - Caution: A minor Owner cannot exercise policy rights until reaching legal age.

Select ONLY ONE:  ☒ Insured *(Complete H)*  ☐ Applicant *(Complete H)*  ☐ Other *(Complete A-H)*  OR  ☐ See attached Owner form/letter

| A. LEGAL NAME *(First, M.I., Last)* ☐ Mr. ☐ Mrs. ☐ Ms. ☐ Dr. OR BUSINESS NAME | B. E-MAIL ADDRESS |
|---|---|

**C.** TYPE OF BUSINESS *(If applicable)*
☐ Corporation  ☐ Partnership  ☐ Other type of Business _____

| D. RELATIONSHIP TO INSURED | E. BIRTHDATE *(MM/DD/YYYY) (If applicable)* | F. TAXPAYER ID NUMBER | G. TELEPHONE NUMBER ☐ Home/Cell ☐ Business |
|---|---|---|---|

| H. MAILING ADDRESS ☒ Insured's Address  ☐ Applicant's Address  OR | CITY | STATE | ZIP CODE |
|---|---|---|---|

## 4. SUCCESSOR OWNER - Complete this section when the Owner named above is an individual who is not the Insured.
### Caution: A minor Owner cannot exercise policy rights until reaching legal age.

Note: If a Successor Owner is not named, the ownership of the insurance will transfer to the Owner's estate if the Owner dies before the Insured.

**A.** ☐ If the Owner dies before the Insured, the Successor Owner will be the Insured

**B.** ☐ If the Owner dies before the Insured, the Successor Owner will be *(NAME)* _____ ,

*(RELATIONSHIP TO INSURED)* _____ . If both the Owner and Successor Owner die before the Insured, the Owner will be the Insured.

**C.** ☐ The Insured will become the Owner upon attaining the age of _____ years. If the Owner dies before the Insured attains such age the Successor Owner will be *(NAME)* _____ , *(RELATIONSHIP TO INSURED)* _____ .
Upon the Insured attaining such age or, if both the Owner and Successor Owner die before the Insured, the Owner will be the Insured.

COLORADO
NAICREPL
90-0001-80
(Page 1 of 6) eF
NB-600-1

Thu 08/17/2017 11:40:18
ICC13.90-1.1 (0313)

NORTHWESTERN1534
EXHIBIT A

## 5. BENEFICIARY

### A. DIRECT BENEFICIARY(IES)

Check this box ☐ if the **Direct Beneficiary should be the same as the Owner OR** complete Personal or Business/Trust information below.

**PERSONAL**

| NAME | FIRST *Karen* | M.I. | *Townsend* LAST | | |
|---|---|---|---|---|---|
| RELATIONSHIP TO INSURED *Spouse* | BIRTHDATE (MM/DD/YYYY) *02/12/1974* | TAXPAYER ID NUMBER ▓▓▓▓▓ | | TELEPHONE NUMBER *720·971·6836* | |
| ADDRESS or ☑ SAME ADDRESS AS INSURED | | | CITY | STATE | ZIP CODE |

| NAME | FIRST | M.I. | LAST | | |
|---|---|---|---|---|---|
| RELATIONSHIP TO INSURED | BIRTHDATE (MM/DD/YYYY) | TAXPAYER ID NUMBER | | TELEPHONE NUMBER | |
| ADDRESS or ☐ SAME ADDRESS AS INSURED | | | CITY | STATE | ZIP CODE |

*Check box to include all children of the Insured as direct beneficiaries without naming them or to add to the direct beneficiaries named above.*
☐ *And all (other) children of the Insured. (The word "children" includes 'any and all biological or legally adopted children'.)*

**BUSINESS/TRUST**

OR

| BUSINESS NAME | TYPE OF BUSINESS ☐ Corporation ☐ Partnership ☐ Other |
|---|---|
| TRUST NAME | TYPE OF TRUST ☐ Revocable ☐ Irrevocable |
| TRUSTEE NAME(S) | DATE OF TRUST (MM/DD/YYYY) |

AND

| BUSINESS/TRUST RELATIONSHIP TO INSURED | TAXPAYER ID NUMBER | TELEPHONE NUMBER | | |
|---|---|---|---|---|
| ADDRESS | | CITY | STATE | ZIP CODE |

### B. CONTINGENT BENEFICIARY(IES)

| NAME (First, M.I, Last) OR TRUST NAME, NAME OF TRUSTEE(S), DATE OF TRUST *Peyton    Townsend* | | | | |
|---|---|---|---|---|
| RELATIONSHIP TO INSURED *Daughter* | BIRTHDATE (MM/DD/YYYY) | TAXPAYER ID NUMBER *731·24·9045* | TELEPHONE NUMBER | |
| ADDRESS or ☑ SAME ADDRESS AS INSURED | | CITY | STATE | ZIP CODE |

*Check box 1 to include all children of the Insured as contingent beneficiaries without naming them or to add to the contingent beneficiaries named above.*
☐ 1. *And all (other) children of the Insured. (The word "children" includes 'any and all biological or legally adopted children'.)*

*Check box 2 to include all of the brothers and sisters without naming them or to add to the contingent beneficiaries named above.*
☐ 2. *And all (other) brothers and sisters of the Insured born of the marriage of or legally adopted by* _____
and _____ *before the Insured's death.*

**TRUST AS BENEFICIARY** If a trustee is named as a beneficiary and no qualified trustee makes claim to the proceeds, or to the present value of any unpaid payments under an income plan, within one year after payment becomes due to the trustee, or if satisfactory evidence is furnished to the Company within that year showing that no trustee can qualify to receive payment, payment will be as provided in the contract as though the trustee had not been named. The Company will be fully discharged of liability for any action taken by the trustee and for all amounts paid to, or at the direction of, the trustee and will have no obligation as to the use of the amounts. In all dealings with the trustee the Company will be fully protected against the claims of every other person. The Company will not be charged with notice of a change of trustee unless written evidence of the change is received at the Home Office.

**REQUEST TO PREPARE A SUPPLEMENT TO THE APPLICATION**

☐ **TRUST FOR MINOR BENEFICIARY(IES)** - Check this box if the Owner wishes to establish a trust for any minor beneficiaries named in Section A and/or B above. This selection requires the completion of form 90-1197-01. The Trust for Minor Beneficiary(ies) creates a legally valid trust in which one or more trustees are appointed by the Owner to act on behalf of the minor(s). The appointed trustee(s) must also sign the form in order to create a valid trust. The specific terms of the trust are found on the designation form 90-1197-01.

☐ **SEE ATTACHED BENEFICIARY FORM/LETTER** (To be used when none of the choices above are suitable for the intended designation.)

NORTHWESTERN1535
EXHIBIT A

## 6. PREMIUM PAYER

Select ONLY ONE: ☒ Insured *(Complete C)*  ☐ Applicant *(Complete C)*  ☐ Owner *(Complete C)*  OR  ☐ Other *(Complete A-C)*

**A.** LEGAL NAME *(First, M.I., Last)*  ☐ Mr.  ☐ Mrs.  ☐ Ms.  ☐ Dr.  OR  BUSINESS NAME | **B.** TAXPAYER ID NUMBER

**C.** MAILING ADDRESS ☐ Insured's Address  ☐ Applicant's Address  ☐ Owner's Address  OR  CITY | STATE | ZIP CODE

## 7. PREMIUM - Complete this section for Prepaid and Non Prepaid.

**A.** Premium Payment - Initial Premium Paid: $ _____  OR  ☒ Non Prepaid

**B.** Paid on ISA  ☐ Yes  ☒ No

**C.** Frequency of Premium Payment -  ☒ Monthly *(Only available for ISA)*  ☐ Quarterly  ☐ Semiannually  ☐ Annually  ☐ Single

## 8. CONDITIONAL LIFE INSURANCE AGREEMENT

Has the premium for the policy(ies) applied for been given to the agent in exchange for the Conditional Insurance Agreement?............................................................................................................................... ☐ Yes  ☒ No

Note: A Conditional Life Insurance Agreement should not be provided when the Applicant is only exercising an Additional Purchase Benefit with no underwritten increase.

## 9. PRODUCT INFORMATION - Submit one Application Supplement for each policy applied for.

**POLICY 1 -** ☒ APPLICATION SUPPLEMENT submitted - The Automatic Premium Loan provision, if available, shall become operative according to its terms, unless otherwise indicated here: ☐ Do not activate the Automatic Premium Loan provision. Policy will default to paid-up insurance. *(Not applicable for Universal Life.)*

**POLICY 2 -** ☐ APPLICATION SUPPLEMENT submitted - The Automatic Premium Loan provision, if available, shall become operative according to its terms, unless otherwise indicated here: ☐ Do not activate the Automatic Premium Loan provision. Policy will default to paid-up insurance. *(Not applicable for Universal Life.)*

Note: Submit a complete NAIC Basic Illustration (all pages, signed and dated) OR, if no illustration conforming to the policy applied for was shown to the Applicant, check the Illustration Certification box (page 6). *(Not applicable for Variable Life.)*

## 10. ADDITIONAL PURCHASE BENEFIT (APB) - Complete this section if exercising an APB option. Note: Tobacco Questionnaire may be required.

**A.** List the policy number(s) and amount(s) for each option being exercised.

Policy 1: _____  ☐ Regular  $ _____  ☐ Advanced  $ _____

Policy 2: _____  ☐ Regular  $ _____  ☐ Advanced  $ _____

**B.** If Advanced Purchase, the event is:  ☐ Marriage  ☐ Birth of Child  OR  ☐ Adoption of Child
Date of marriage, birth or final decree of adoption: _____ *(MM/DD/YYYY)*

**C.** Is the amount applied for more than the additional purchase benefit available? ....................................... ☐ Yes  ☐ No
If "Yes," what is the excess amount to be underwritten $ _____

**D.** APB OPTION WITH UNDERWRITTEN INCREASE IN AMOUNT - If the increase cannot be issued in the same underwriting classifications as the original policy and the increased amount meets policy minimums, should two policies be issued with one policy exercising the APB option and a separate policy in the underwriting classification for which the Insured qualifies? If "No," the policy will be issued for the amount of the Additional Purchase Benefit option only..................... ☐ Yes  ☐ No

## 11. REQUESTED POLICY DATE - Complete this section if a special date is being requested.

| Select ONE for each policy *(if applicable)*: | POLICY 1 | POLICY 2 |
|---|---|---|
| **Prepaid** | | |
| • Short Term *(ISA monthly only)* Policy Date will coincide with ISA payment billing day *(not month)* (Short Term premiums will apply.) ..... | ☐ | ☐ |
| • Short Term to _____ (Short Term premiums will apply.) ..................... | ☐ | ☐ |
| • Date to Save Age (Premiums due and any other applicable charges are based on policy date.) .......... | ☐ | ☐ |
| • Backdate to _____ (Premiums due and any other applicable charges are based on policy date.)... | ☐ | ☐ |
| **Nonprepaid** | | |
| • Specified future date _____ ..................... | ☐ | ☐ |
| • Date to Save Age (Premiums due and any other applicable charges are based on policy date.) ............ | ☐ | ☐ |
| • Backdate to _____ (Premiums due and any other applicable charges are based on policy date.)... | ☐ | ☐ |

ICC13 90-1 LI (0313)
Thu 08/17/2017 11:40:18

(Page 3 of 6) eF
NB-600-3

NORTHWESTERN1536
EXHIBIT A

## 12. INSURANCE HISTORY

**A.** Has the Insured ever had life, disability, health, or long-term care insurance declined, rated, modified, issued with an exclusion rider, cancelled, rescinded, or not renewed? If "Yes," explain in Remarks ................................................. ☒ Yes ☐ No

**B.** Does the Insured have any existing or pending life insurance (including group coverage) with companies **other than** Northwestern Mutual? If "Yes," complete the table below ................................................................................ ☒ Yes ☐ No

| INSURANCE COMPANY (EXCLUDING NORTHWESTERN MUTUAL) | AMOUNT OF INSURANCE | PENDING (P) OR IN FORCE (I) | PERSONAL (P) OR BUSINESS (B) COVERAGE |
|---|---|---|---|
| Midland | $ 1,000,000 | I | P |
| | $ | | |
| | $ | | |

**REMARKS:** Rated at Protective for depression

## 13. REPLACEMENT

- **For NAIC Replacement states:** If question A below is answered "No," proceed to Section 14. If question A is answered "Yes," complete, sign, and date the **Important Notice** and leave a copy with the Applicant. The **Applicant** must also answer question B below. If one or both of the questions on the **Important Notice** or question B is answered "Yes," this constitutes a replacement and the **Agent** must submit the **Important Notice** to the Home Office and provide copies of all required sales materials to both the Applicant and the Home Office; the **Applicant** must also answer question C below.
- **For NON-NAIC Replacement states:** Complete the **Definition of Replacement Supplement** and answer questions A and B below. If the answer to question B is "Yes," submit the **Definition of Replacement Supplement,** sales materials (if required) and state required replacement disclosure notices signed and dated by the Applicant; the **Applicant** must also answer question C below.

**A.** Does the Applicant own any existing life insurance or annuity products with Northwestern Mutual or any other company? ................................................................................................................................ ☒ Yes ☐ No

**B.** As a result of this purchase will the values or benefits of any other life insurance policy or annuity contract, on any life, be affected in any way? ........................................................................................................................... ☒ Yes ☐ No

**C.** Will this insurance:
  1. Replace Northwestern Mutual insurance or annuity? ................................................................. ☐ Yes ☒ No
  2. Replace insurance or annuity of other companies? ................................................................. ☒ Yes ☐ No
  3. Result in a 1035 exchange? ........................................................................................................ ☐ Yes ☒ No

## 14. INSURED HISTORY INFORMATION

**A.** What is your marital status? ☐ Single, Widowed or Divorced ☒ Married

**B.** Are you a U.S. citizen or do you have a permanent resident visa (i.e., green card)? If "No," complete 1, 2 & 3 ................ ☒ Yes ☐ No
  1. What is your country of citizenship? _____
  2. What type of visa do you have (B-1, H-1B, J-1, etc.)? _____ Visa Number _____
  3. How long have you resided in the U.S.? _____

**C.** Have you traveled outside the U.S. during the past 12 months, or do you have plans to leave the U.S. for travel or residence in the next 2 years? If "Yes," provide details below ................................................ ☒ Yes ☐ No

| CITY AND COUNTRY | DATE OF TRAVEL/RESIDENCE | DURATION OF TRAVEL/RESIDENCE | PURPOSE OF TRIP |
|---|---|---|---|
| Cancun, Mexico | 05/2016 | 8 days | Vacation |
| | | | |

*(Continued on next page)*

JCC13-99-14 (0313)

Thu 08/17/2017 11:40:18

(Page 4 of 6) eF
NB-600-4

NORTHWESTERN1537
EXHIBIT A

QUESTIONS <u>D</u> THROUGH <u>M</u> ARE NOT REQUIRED IF THE INSURED IS UNDER AGE 16.

**D.** What is your occupation? Athletics - Equipment Manager

**E.** 1. Who is your employer? Colorado School of Mines

2. How long with this employer? 13 yrs

**F.** 1. What is your annual earned income as most recently reported to the IRS?
Salary (or IRS Schedule C net profit or loss, if a sole proprietor) $ 48K      Bonus $ _____
Other $ _____      Explain: _____

2. What is your net worth, if it is >$1,000,000? $ _____

*Financial Supplement forms 90-8C and 90-8D may be required for in-force plus applied for amounts of personal insurance greater than $2,000,000 and business insurance greater than $500,000. See instructions on Supplements.*

**G.** In the past 5 years, have you filed bankruptcy? If "Yes," provide details below .......................................... ☐ Yes ☒ No

| TYPE OF BANKRUPTCY (CHAPTER) | DATE FILED | DATE DISCHARGED |
|---|---|---|
| | | |
| | | |

**H.** Are you a member of, or have you entered into a written agreement to become a member of any branch of the Armed Forces or reserve military unit? If "Yes," complete Military Supplement, 90-5........................................ ☐ Yes ☒ No

**I.** Other than as a passenger on a regularly scheduled commercial flight, have you flown within the past 2 years or do you have plans to fly in the next 2 years? If "Yes," complete Aviation Supplement, 90-5................................ ☐ Yes ☒ No

**J.** In the past 2 years, have you participated in or do you have plans to participate in the next 2 years in any of the following: racing (automobile, motorcycle, boat, go-cart or snowmobile); scuba diving; skydiving; hang gliding or paragliding; bungee or BASE jumping; mountain, rock, or ice climbing; rodeos; boxing, wrestling, or mixed martial arts? If "Yes," complete Avocation Supplement 90-6............................................................................................ ☐ Yes ☒ No

**K.** What is your driver's license number and state issued?
Driver's License Number: 94-158-0007      State Issued: CO

**L.** In the past 5 years, have you pled guilty, pled no contest, or been convicted of reckless driving, driving while impaired or intoxicated, or any other moving violation; had your license suspended or revoked; or been involved in any accident in which you were found to be at fault? If "Yes," provide details below..................... ☒ Yes ☐ No

| DATE | TYPE OF VIOLATION AND/OR DETAILS OF ACCIDENT (SPEEDING, RECKLESS DRIVING, DRIVING WHILE INTOXICATED, ETC.) |
|---|---|
| 2016 | Speeding - citation (no accident) |
| | |
| | |

**M.** Have you ever pled guilty, pled no contest, or been convicted of any felony or misdemeanor, or do you have any charges pending? If "Yes," provide details below................................................................... ☐ Yes ☒ No

| DATE | CITY/COUNTY/STATE | OFFENSE (PLEASE ALSO NOTE IF FELONY OR MISDEMEANOR) | TIME SERVED | DATE OF PAROLE OR PROBATION TERMINATION |
|---|---|---|---|---|
| | | | | |
| | | | | |

## CONSENT AND DECLARATION

The Insured consents to this application, and each signer has read the application and all statements and answers that pertain to them, and declares that the statements and answers are correctly recorded, complete and true to the best of their knowledge and belief. Answers and statements brought to the attention of the agent, medical examiner, or paramedical examiner are not considered information brought to the attention of the Company unless stated in the application. Statements and answers in this application are representations and not warranties.

It is agreed that:

(1) If the premium is not paid when the application is signed, no insurance will be in effect. The insurance will take effect at the time the policy is delivered and the premium is paid, if: the Insured is living at the time; and the answers and statements in the application are then true to the best of the Insured's knowledge and belief.

(2) If the premium is paid when the application is taken, no insurance will be in effect except as provided in the Conditional Life Insurance Agreement or by the automatic term insurance provided when exercising the Additional Purchase Benefit.

(3) If the policy is issued in an extra premium class, acceptance of the policy will amend it so that extended term insurance can be in force only if (a) the Company gives its consent or (b) the loan value is not large enough to grant a premium loan. If a premium is not paid within the grace period and, due to operation of the foregoing amendment of the policy, extended term insurance cannot be in force, paid-up insurance will be selected.

(4) No agent is authorized to make or alter contracts or to waive any of the Company's rights or requirements.

ICC13 90-1 LI (0313)
Thu 08/17/2017 11:40:18

NORTHWESTERN1538
EXHIBIT A

## AUTHORIZATION

I authorize The Northwestern Mutual Life Insurance Company, its agents, employees, reinsurers, insurance support organizations and their representatives to obtain information about me to evaluate this application and to verify information in this application. This information will include: (a) age; (b) medical history, condition and care; (c) physical and mental health; (d) occupation; (e) income and financial history; (f) foreign travel; (g) avocations; (h) driving record; (i) other personal characteristics; and (j) other insurance. This authorization extends to information on the use of alcohol, drugs and tobacco; the diagnosis or treatment of HIV (AIDS virus) infection and sexually transmitted diseases; and the diagnosis and treatment of mental illness. During the time this authorization is valid it extends to information required to determine eligibility for benefits under any policy issued as a result of this application.

I authorize any person, including any physician, health care professional, hospital, clinic, medical facility, government agency including the Veterans and Social Security Administrations, the MIB, Inc., employer, business associates, consumer reporting agency, banker, accountant, tax preparer, or other insurance company, to release information about me to The Northwestern Mutual Life Insurance Company or its representatives on receipt of this authorization. The Northwestern Mutual Life Insurance Company or its representatives may release this information about me to translators, to reinsurers, to the MIB, Inc., or to another insurance company to whom I have applied or to who a claim has been made. No other release may be made except as allowed by law or as I further authorize.

I have received a copy of the MIB, Inc. and Fair Credit Reporting Act notices. I authorize The Northwestern Mutual Life Insurance Company to obtain an investigative consumer report on me.

☐ I request to be interviewed if an investigative consumer report is done.

This authorization is valid for 24 months from the date it is signed. A copy of this authorization is as valid as the original and will be provided on request.

## ILLUSTRATION CERTIFICATION

☒ I, the Applicant, acknowledge that no illustration conforming to the policy applied for was available for me to review and sign. I understand that an illustration conforming to the policy exactly as issued will be provided to the Policyowner, by the Company or Agent, no later than at the time the policy is delivered.

## TAXPAYER IDENTIFICATION NUMBER (TIN) CERTIFICATION

Under penalties of perjury, the Owner of the policy applied for herein certifies: (1) The taxpayer identification number given for the Owner on this application is the Owner's correct TIN (or the Owner is waiting for a TIN to be issued); and (2) The Owner is not subject to backup withholding because (a) the Owner is exempt from backup withholding, or (b) the Owner has not been notified by the Internal Revenue Service (IRS) that the Owner is subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified the Owner that the Owner is no longer subject to backup withholding; and (3) The Owner is a U.S. person, which includes: a U.S. citizen; U.S. resident alien; partnership, corporation, company, or association created or organized in the United States or under the laws of the United States; an estate (other than a foreign estate); or a domestic trust (as defined in 26 CFR § 301.7701-7).

Item (2) above must be crossed off if the Owner has been notified by the IRS that the Owner is subject to backup withholding as a result of a failure to report all interest or dividends.

The Internal Revenue service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

## SIGNATURE(S)

**Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.**

**The signatures below apply to the application, Consent and Declaration, Authorization, Illustration Certification (if checked), and the Taxpayer Identification Number Certification.**

Signature of APPLICANT

DATE signed by APPLICANT (MM/DD/YYYY)  8/16/17

Signed by APPLICANT at CITY, COUNTY, STATE  Denver, CO

Signature of INSURED
(If other than Applicant; or PARENT OR GUARDIAN, if under age 15.)

Signature of OWNER
(If other than Insured/Applicant)

Signature of LICENSED AGENT   SCOTT G VAN SICKLE

NORTHWESTERN1539
EXHIBIT A

PAGE 01/03

## THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY
720 EAST WISCONSIN AVENUE, MILWAUKEE, WI 53202

### MEDICAL HISTORY QUESTIONNAIRE

INSURED NAME (Print the name in this format: First Name, M.I., Last Name): Darlen Townsend

Each question must be individually asked and answered. For questions 3 – 32, use the DETAILS section to explain all "Yes" responses. Specify the question number and provide relevant details.

1. Do you have a regular or personal physician, doctor, or healthcare provider? If "Yes," complete the information below. ☑ Yes ☐ No
(If you have been receiving care from your provider for less than 2 years, please note your former providers information in DETAILS section.)

| NAME | Dr Wilner Larry | TELEPHONE NUMBER | 303-814-0505 |
|---|---|---|---|
| ADDRESS | 7280 Lagae Rd | CITY Castle Rock | STATE CO | ZIP CODE 80108 |
| DATE LAST SEEN 3/2017 | REASON routine checkup | | |

**DETAILS**

(1) Signs, symptoms, and diagnosis;
(2) Dates and results of any evaluations, tests, or treatments;
(3) Date of diagnosis, dates/frequency of symptoms or timesince recovery;
(4) Names, complete addresses, and telephone numbers of all healthcare providers seen for the disease/condition.

2. In the last 5 years, have you used tobacco, any other type of product containing nicotine, or a smoking cessation medication? If "Yes," complete the chart below (include smoking cessation medication in "Other"):   YES ☐ NO ☐

| Type of Product | Date Last Used (mm/yyyy) | Frequency Used | Qty. Year |
|---|---|---|---|
| ☐ Cigarettes | | | |
| ☐ Nicotine patch or gum | | | |
| ☐ Chew or snuff | | | |
| ☐ Cigars or pipe | | | |
| ☐ Other | | | |

3. In the last 10 years, have you been told you had, been diagnosed with, or treated for any of the following by a medical professional:   YES NO

a) High blood pressure or high cholesterol levels? ☐ ☑
b) Temporomandibular joint (TMJ) syndrome or any other disease or disorder of the eyes, ears, nose, sinuses, mouth, throat, or speech? ☐ ☑
c) Dizziness, vertigo, imbalance, seizure, epilepsy, loss of consciousness, muscle weakness or paralysis, neuropathy, difficulty walking, memory loss or impairment, tremor, headaches, concussion or any other disease or disorder of the brain or nervous system? ☐ ☑
d) Anxiety, depression, stress, bipolar disorder, attention deficit hyperactivity disorder (ADHD) post-traumatic stress disorder (PTSD), eating disorders or any other psychiatric or mental health disease or disorder? ☑ ☐
e) Asthma, emphysema, chronic obstructive pulmonary disease (COPD), wheezing, sleep apnea, sleep disorders, chronic cough, trouble breathing or any other disease or disorder of the lungs or respiratory system? ☐ ☑
f) Ulcer, blood in the stool, colitis (including Crohn's disease or ulcerative colitis), irritable bowel, hepatitis, recurrent heartburn, difficulty swallowing, pancreatitis, loss of appetite, recurrent or persistent diarrhea or vomiting, or any other disease or disorder of the esophagus, stomach, intestines, liver, gallbladder, or pancreas? ☐ ☑
g) Chest pain/tightness/discomfort, angina, coronary artery disease (CAD), heart attack, heart murmur, heart valve disease, heart failure, irregular heartbeat, stroke, transient ischemic attack (TIA), aneurysm or any other disease or disorder of the heart, blood vessels, or circulatory system? ☐ ☑
h) Sugar, blood or protein in the urine, chronic kidney disease (CKD), kidney stones or infection, sexually transmitted disease or any other disease or disorder of the kidney(s), urinary tract, bladder, prostate, reproductive organs, or breasts? ☐ ☑
i) Diabetes or elevated blood sugar, thyroid, pituitary, or adrenal disease or any other disease or disorder of the endocrine (glandular) system? ☐ ☑
j) Cancer, tumors, masses, cysts, nodules, or polyps? ☐ ☑
k) Anemia, bleeding or clotting disorder, recurrent infection, abnormal lymph node(s), allergies, or any disease or disorder of the immune system (except as related to the human immunodeficiency virus or HIV), blood, blood cells, or bone marrow? ☐ ☑
l) Arthritis, lupus, fibromyalgia, carpal tunnel syndrome, amputation, or any pain, disease, or disorder of the muscles, bones, joints (including but not linked to the knees and hips), spine, back, neck or extremities? ☐ ☑
m) Chronic fatigue syndrome, chronic pain, chronic or unexplained fatigue, malaise or fever of unknown cause? ☐ ☑
n) Psoriasis, eczema, moals, or contact dermatitis or any other disease or disorder of the skin? ☐ ☑

#3d
mild depression
under control
with meds

[Page 1 of 2] NL-0581

IC-73 92-4 (0310) REV

Thu 08/17/2017 11:40:18

NORTHWESTERN1540
EXHIBIT A

**MEDICAL HISTORY QUESTIONNAIRE**

4. A) Have you ever sought, received, or been advised to seek treatment, counseling, or participation in a support group for the use of alcohol or drugs?

b) Have you ever been advised to reduce or discontinue the use of alcohol? If "Yes," explain in DETAILS section and indicate the average number of drinks (if any) you currently consume per week

c) In the last 10 years, have you used marijuana, cocaine, heroin, methamphetamine, hallucinogens, or any other illegal drug or substance?

d) In the last 10 years, have you used tranquilizers, sedatives, amphetamines, narcotics, or any other controlled substance other than as prescribed by a physician or in excess of dosages prescribed by a physician?

5. Are you pregnant? If "Yes," what is the due date?

6. Other than as previously stated on the application, in the last 5 years, have you:
a) Consulted any other healthcare providers (medical doctors, psychiatrists, psychologists, counselors/therapists, chiropractors, naturopaths, occupational/physical/speech therapists or other providers)?

b) Been a patient in a hospital, clinic, rehabilitation center, or medical facility?

c) Had any diagnostic or screening tests (EKGs, x-rays, blood tests, CT scans, MRI scans, heart scans, biopsies, or other tests except for human immunodeficiency virus or HIV)?

d) Had surgery?

e) Been advised to have any test, consultation, hospitalization, or surgery that was not completed (except as related to the human immunodeficiency virus or HIV)?

7. a) During the last 6 months, have you worked in your regular occupation less than your usual number of hours per week because of any sickness or injury?

b) In the last 5 years, have you requested or received payments, benefits, or a pension because of any injury, accident, sickness, disability, or impairing condition?

8. Complete 8a and 8b.
a) Do you have any immediate family members (including any living or deceased parents and siblings) who were ever diagnosed or treated by any member of the medical profession for heart disease, stroke, diabetes, kidney disease, cancer (e.g., melanoma, breast cancer, or other cancers), or any hereditary disease(s) or condition(s)? If "Yes," list any tests you may have had to evaluate inherited risk in DETAILS section.

b) Provide the following information about your immediate family members including any conditions listed in 8a:

| FAMILY MEMBER | CURRENT AGE (IF LIVING) | MEDICAL CONDITION(S) | AGE AT DIAGNOSIS | AGE AT DEATH | CAUSE OF DEATH |
|---|---|---|---|---|---|
| Father | 75 | CC | | | |
| Mother | 71, 49 | OU CC | | | |
| Sister(s) | 51, 49 | OC | | | |
| Brother(s) | | | | | |

9. Complete 9a and 9b. Examiners - do not complete 9a.
a) Height:        Weight:

b) Have you lost more than 10 pounds in the last 6 months? If "Yes," indicate the number of pounds lost _____ and explain the reason in DETAILS section.

10. Have you ever tested positive for human immunodeficiency virus (HIV), or been diagnosed by a member of the medical profession with acquired immune deficiency syndrome (AIDS)?

11. Other than as previously stated on this application, are you taking any medications or drugs (legal or illegal, prescription or non-prescription/over-the-counter, supplements, or medical marijuana) for any reason? If "Yes," list the medication(s)/drug(s) and the reason(s) for use in DETAILS section.

12. If the insured is 5 years of age or under:
A) What was the insured's birth weight? _____ lbs. _____ oz.
b) Was the insured born prematurely (gestational age < 37 weeks)? If "Yes," what was the insured's gestational age (in weeks) at birth _____
c) Has the insured been evaluated, tested, or treated for or diagnosed with developmental delay or disorders, any growth concerns (length/height/weight), or failure to thrive (FTT)?
d) Has the insured received or been advised to receive early education services or occupational, physical, speech, or language therapy?

**Handwritten notes (right margin):**

#11. omeprazole for acid reflux. Sertraline HCL for depression. on either.

# 6 a, b, c, d.
12/2016
L knee acc.
Panorama medical center
Golden, Co 80401
x-ray, blood work

4/2017
R foot.
bonian removed.

5/2017.
L foot bonian. Removed.

Panorama medical center Golden Co 80401.
x-ray blood work

**SIGNATURE(S)**

I have reviewed my answers and statements in this application and declare that they are correct, recorded, complete, and true to the best of my knowledge and belief. Statements in this application are representations and not warranties.

Signature of INSURED (or Parent/Guardian)

Signed by INSURED in CITY and STATE: Denver, Co

Signature of: ☐ LICENSED AGENT (include agent #) — non-exam ☐ PARAMEDICAL EXAMINER — paramedical exam ☐ MEDICAL EXAMINER — medical exam

DATE (MM/DD/YYYY): 6/6/17

NORTHWESTERN1541
EXHIBIT A

**THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY**
**MILWAUKEE, WISCONSIN (the "Company")**
**PERSONAL HEALTH AND STATUS DECLARATION**

INSURED (FIRST, MI, LAST)
Darren Townsend

**This form is submitted for: (Select one)**

(1) ☒ Delivery of Policy: Policy Number(s)    (1) 22219582    (2) _____    (3) _____
  *(See Conditions for Delivery of Policy below)*

(2) ☐ New Application for Insurance *(Complete one copy and submit with new application)*

(3) ☐ Change of Policy: Policy Number _____    *(Complete one copy and submit with change request)*

(4) ☐ To add the _____ benefit to policy number _____    *(Complete one copy and submit with request)*

(5) ☐ Other _____

This declaration supplements and updates the answers provided in my most recent application for insurance sent to the Company. I understand that my most recent application may include more than one form, and always includes a medical underwriting form or questionnaire. If this declaration is submitted for (1) or (2) above, I understand that my most recent application to the company will be attached to the policy, including a copy of this declaration. I declare that my answers provided in my most recent application sent to the Company are still, to the best of my knowledge and belief, complete, true, and correct today. I declare that I am in good health and, specifically, that since providing the answers I have not:

1. experienced any signs or symptoms of, or been diagnosed or treated for, any disorders, illnesses, diseases, accidents or had any surgery;

2. had any diagnostic studies or medical tests (including blood tests, x-rays, EKGs, or other);

3. been a patient, had surgery, or been treated at a hospital, clinic, or other health care facility;

4. seen or consulted with any physicians or other health care providers (including psychiatrists, psychologists, chiropractors, counselors, therapists, or other);

5. taken any medication or drugs (prescription or nonprescription, legal or illegal);

6. had a change in the hours or duties in employment or occupation or begun to work in a new occupation;

7. had a financial loss, bankruptcy, or reduction in income;

8. been in a motor vehicle accident, been charged with a moving violation of any motor vehicle law or had a driver's license restricted or revoked;

9. applied for or contemplated applying for life, disability, health or long-term care insurance or had any life, disability, health, or long-term care insurance application on my life declined, rated, modified, cancelled, rescinded, or not renewed;

10. made a claim for benefits due to injury, accident, sickness, or disability.

**If there are any exceptions to any of the above statements, explain in full, including all names and addresses of health care providers and related dates in the space below (attach additional paper, if necessary).**

**I understand and agree that any exceptions to my statements must be referenced in the space above. If this declaration is submitted for delivery of policy, I understand that my agent is not authorized to deliver any policy or collect premium until any exceptions are submitted to the Company for review, and the company has authorized delivery of the policy.**
I declare that the answers and statements contained in this declaration are correctly recorded, complete and true to the best of my knowledge and belief. Statements in this declaration are representations and not warranties.

Signed at _Golden, CO_    Date _9/20/2017_ (MM/DD/YYYY)    Signature _____ INSURED OR INFORMANT
  CITY, STATE

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**CONDITIONS FOR DELIVERY OF POLICY**

Prior to delivery the agent **must** insert the Insured's copy in each policy and complete the statement below attesting to the fact that this insertion has been made.

1. If no exceptions are entered in the space provided, delivery of the policy may be made. The completed copy of this page, so attested, is to be sent to the **New Business or Disability Income Department** at the Home Office.

2. If any exception is noted, the policy is not to be delivered or the premium collected until the attested copy of this page has been sent to the Home Office and delivery of the policy has been authorized.

I attest that a true copy of this declaration has been attached to the policy.

Date (MM/DD/YYYY) _09/20/2017_    Signature of Agent _____

**HOME OFFICE COPY**

NB-30-1

90-0600 (0601)

COLORADO 90-0600-80
(Page 1 of 2) FE

09/29/2017 09:38:21

NORTHWESTERN1542
EXHIBIT A

 **Northwestern Mutual®**

**It is recommended that you ...**

read your Policy.

notify your Northwestern Mutual agent or the Company at 720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202, of an address change.

call your Northwestern Mutual agent for information--particularly on a suggestion to terminate or exchange this Policy for another policy or plan.

**Important Notice Concerning Statements in the Application for Your Insurance**

Please read the copy of the application attached in this Policy. Omissions or misstatements in the application could cause an otherwise valid claim to be denied. Carefully check the application and write to the Company at 720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202, within ten days of delivery, if any information shown on it is not correct and complete, or if any past medical history or other information has been left out of the application. The application is part of the Policy and the Policy was issued on the basis that the answers to all questions and the information shown on the application are correct and complete.

**Election of Trustees**

The members of The Northwestern Mutual Life Insurance Company are its policyholders of insurance policies and deferred annuity contracts. The members exercise control through a Board of Trustees. Elections to the Board are held each year at the annual meeting of members. Members are entitled to vote in person or by proxy.

**TERM LIFE POLICY**

**Participating**

Insurance payable on death of Insured before Expiry Date.

Convertible on or before the Final Conversion Date.

Premiums are payable to the Expiry Date.

The Expiry Date and Final Conversion Date are shown on page 3.

ICC12.TT.TERM.L20.(0513)

MAY NOT BE AN EXACT DUPLICATE OF THE ORIGINAL POLICY: REPLICA POLICY:

NORTHWESTERN1543
EXHIBIT A