Northwestern Mutual®

The Northwestern Mutual Life Insurance Company agrees to pay the benefits provided in this policy (the "Policy"), subject to its terms and conditions.
Signed at Milwaukee, Wisconsin on the Date of Issue.

Chief Executive Officer          Secretary

## SURVIVORSHIP WHOLE LIFE POLICY
## WITH ADDITIONAL PROTECTION
## INSURANCE PAYABLE ON SECOND DEATH

### Participating

Life Insurance Benefit payable on second death.

Premiums payable for period shown on page 3.

**Right To Return Policy. Please read this Policy carefully.** The Policy may be returned by the Owner for any reason within ten days after it was received. The Policy may be returned to the Northwestern Mutual agent who sold it to you or to the Company at 720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202 ("Home Office"), 414-271-1444. If returned, the Policy will be considered void from the beginning. Any premium paid will be refunded.

ICC12.TT.SCL.(0513)

This policy provides no coverage; it is terminated and no longer inforce. This replica was prepared on

REPLICA POLICY:
MAY NOT BE AN EXACT DUPLICATE OF THE ORIGINAL POLICY

 SEP 1 5 2020

| | | | |
|---|---|---|---|
| **Insured** | Karen Townsend<br>Darren Townsend | **Age and Sex** | 44 Female<br>44 Male |
| **Policy Date** | October 20, 2017 | **Policy Number** | 22 247 352 |
| **Plan** | Survivorship Whole Life With Additional Protection | **Initial Total Insurance Amount** | $300,000 |

ICC12.TT.SCL.(0513)

1755
NORTHWESTERN1544
EXHIBIT B

This Policy is a legal contract between the Owner and
The Northwestern Mutual Life Insurance Company.

Read your Policy carefully.

# TABLE OF CONTENTS

**POLICY SCHEDULE PAGES**

**SECTION 1. THE CONTRACT**
- Section 1.1 Life Insurance Benefit
- Section 1.2 Notice and Proof of Death
- Section 1.3 Entire Contract; Changes
- Section 1.4 Incontestability
- Section 1.5 Suicide
- Section 1.6 Policy Date and Date of Issue
- Section 1.7 Misstatement
- Section 1.8 Payments by the Company
- Section 1.9 Insurability Requirements
- Section 1.10 Conformity with Interstate Insurance Product Regulation Commission Standards

**SECTION 2. OWNERSHIP**
- Section 2.1 The Owner
- Section 2.2 Transfer of Ownership
- Section 2.3 Naming and Changing a Successor Owner
- Section 2.4 Collateral Assignment

**SECTION 3. ADDITIONAL PROTECTION**
- Section 3.1 Additional Protection
- Section 3.2 Reduction by Company; Owner's Right to Continue Existing Protection
- Section 3.3 Other Reductions of Additional Protection

**SECTION 4. PREMIUMS AND REINSTATEMENT**
- Section 4.1 Premiums
- Section 4.2 Amount of Premium; Adjustments
- Section 4.3 Unscheduled Additional Premium Option
- Section 4.4 Reinstatement

**SECTION 5. DIVIDENDS**
- Section 5.1 Annual Dividends
- Section 5.2 Use of Dividends
- Section 5.3 Dividend at Death

**SECTION 6. PAID-UP ADDITIONS**
- Section 6.1 Purchase of Additions; Charges
- Section 6.2 Additions to Reduce Term Insurance
- Section 6.3 Additions to Increase Coverage
- Section 6.4 Allocation of Additional Premiums and Dividends

**SECTION 7. CASH VALUE AND PAID-UP INSURANCE**
- Section 7.1 Cash Value
- Section 7.2 Paid-up Insurance
- Section 7.3 Cash Surrender
- Section 7.4 Table of Guaranteed Values; Basis of Values

ICC12.TT.SCL.(0513)

NORTHWESTERN1545
EXHIBIT B

## SECTION 8. LOANS

- Section 8.1 Policy and Premium Loans
- Section 8.2 Loan Value
- Section 8.3 Policy Debt
- Section 8.4 Loan Interest
- Section 8.5 Specified Rate Loan Interest Option
- Section 8.6 Variable Rate Loan Interest Option
- Section 8.7 Repayment of Loans

## SECTION 9. CHANGE OF POLICY

- Section 9.1 Reduction of Policy Amount
- Section 9.2 Change of Plan

## SECTION 10. BENEFICIARIES

- Section 10.1 Definition of Beneficiaries
- Section 10.2 Naming and Changing of Beneficiaries of the Life Insurance Benefit
- Section 10.3 Succession in Interest of Beneficiaries of the Life Insurance Benefit
- Section 10.4 Trustee as Beneficiary
- Section 10.5 General

## SECTION 11. PAYMENT OF POLICY BENEFITS

- Section 11.1 Payment of Proceeds
- Section 11.2 Income Plan Elections
- Section 11.3 Income Plan Offerings
- Section 11.4 Naming and Changing of Beneficiaries under Income Plans
- Section 11.5 Succession in Interest of Beneficiaries under Income Plans
- Section 11.6 Income Plan Rates

## ADDITIONAL BENEFITS (if any)

## APPLICATION

ICC12.TT.SCL.(0513)

NORTHWESTERN1546
EXHIBIT B

**POLICY SCHEDULE PAGES**
Date of Issue - October 20, 2017

This policy was issued in the State of Colorado.
The Colorado Division of Insurance phone number is: (303) 894-7499.

| Plan and Additional Benefits | Initial Amount | Annual Premiums | Payable For |
|---|---|---|---|
| Survivorship Whole Life With Additional Protection | | | |
| Base Amount | $157,100 | $■■■■ | 77 Years |
| Additional Protection | $142,900 * | | |
| One Year Term Insurance | | $■■■ + | 77 Years |
| Initial Totals | $300,000 | $■■■■ | |

\*    To continue the Additional Protection after the first Policy year, an increased premium may be required under Section 3.2. The Company, at any time, may reduce the Additional Protection if the Owner surrenders additions that are part of the Additional Protection, or directs that dividends are used other than to purchase Paid-up Additions.

\+    The annual premium for Additional Protection is $■■■ The Company will determine the portion of this premium that is needed to pay for the amount of one year term insurance in force. If this premium is not sufficient to pay for the amount of one year term insurance in force, an increased premium will be required to maintain coverage. See Sections 3.1 and 3.2.

An annual premium is payable on October 20, 2017 and every October 20 after that.

The first premium is $■■■■.

To determine the premium when paid more often than annually, see page 7.

The Owner may elect the Specified Rate or the Variable Rate loan interest option. See Sections 8.4 through 8.6 of the Policy. The Specified Rate loan interest option was elected on the Application.

This Policy is issued in a Premier (Non-Tobacco) premium classification on Karen Townsend and in a Premier (Non-Tobacco) premium classification on Darren Townsend.

This policy is participating. Dividends are not guaranteed.

| | | | |
|---|---|---|---|
| **Direct Beneficiary** | Peyton R Townsend, child of the Insured(s) | | |
| **Owner** | Karen Townsend | | |
| **Insured** | Karen Townsend<br>Darren Townsend | **Age and Sex** | 44 Female<br>44 Male |
| **Policy Date** | October 20, 2017 | **Policy Number** | 22 247 352 |
| **Plan** | Survivorship Whole Life With Additional Protection | **Initial Total Insurance Amount** | $300,000 |

ICC12.TT.SCL.(0513)                3

NORTHWESTERN1547

EXHIBIT B

Policy Number: 22 247 352

**TABLE OF GUARANTEED VALUES**
for $157,100 Base Amount

| End of Policy Year | October 20, | Cash Value ($) | Paid-up Insurance ($) |
|---|---|---|---|
| 1 | 2018 | 0 | 0 |
| 2 | 2019 | 1,555 | 7,533 |
| 3 | 2020 | 3,170 | 14,765 |
| 4 | 2021 | 4,848 | 21,714 |
| 5 | 2022 | 6,591 | 28,394 |
| 6 | 2023 | 8,401 | 34,805 |
| 7 | 2024 | 10,279 | 40,956 |
| 8 | 2025 | 12,230 | 46,873 |
| 9 | 2026 | 14,252 | 52,544 |
| 10 | 2027 | 16,349 | 57,989 |
| 11 | 2028 | 18,522 | 63,210 |
| 12 | 2029 | 20,771 | 68,216 |
| 13 | 2030 | 23,099 | 73,014 |
| 14 | 2031 | 25,506 | 77,609 |
| 15 | 2032 | 27,993 | 82,009 |
| 16 | 2033 | 30,563 | 86,228 |
| 17 | 2034 | 33,214 | 90,261 |
| 18 | 2035 | 35,944 | 94,117 |
| 19 | 2036 | 38,755 | 97,805 |
| 20 | 2037 | 41,642 | 101,325 |
| Age 65 | 2038 | 44,606 | 104,687 |
| Age 70 | 2043 | 60,486 | 119,277 |

Values are increased by Paid-up Additions and dividend accumulations and decreased by Policy Debt. Values shown at end of the Policy year do not reflect any premium due on that Policy anniversary.

The guaranteed values shown above are based on the 2001 Commissioners Standard Ordinary Mortality Table Non-Smoker Ultimate Age Nearest Birthday for Karen Townsend and the 2001 Commissioners Standard Ordinary Mortality Table Non-Smoker Ultimate Age Nearest Birthday for Darren Townsend.

ICC12.TT.SCL.(0513)                                          4

NORTHWESTERN1548

EXHIBIT B

Policy Number: 22 247 352

## TABLE OF CASH VALUES
For $1.00 of Paid-up Additions

| End of Policy Year | October 20, | Cash Value | End of Policy Year | October 20, | Cash Value |
|---|---|---|---|---|---|
| 0 | 2017 | .19090 | 40 | 2057 | .74936 |
| 1 | 2018 | .19853 | 41 | 2058 | .76438 |
| 2 | 2019 | .20646 | 42 | 2059 | .77872 |
| 3 | 2020 | .21470 | 43 | 2060 | .79248 |
| 4 | 2021 | .22326 | 44 | 2061 | .80531 |
| 5 | 2022 | .23216 | 45 | 2062 | .81721 |
| 6 | 2023 | .24139 | 46 | 2063 | .82815 |
| 7 | 2024 | .25097 | 47 | 2064 | .83835 |
| 8 | 2025 | .26092 | 48 | 2065 | .84869 |
| 9 | 2026 | .27124 | 49 | 2066 | .85884 |
| 10 | 2027 | .28194 | 50 | 2067 | .86847 |
| 11 | 2028 | .29302 | 51 | 2068 | .87727 |
| 12 | 2029 | .30450 | 52 | 2069 | .88479 |
| 13 | 2030 | .31638 | 53 | 2070 | .89120 |
| 14 | 2031 | .32865 | 54 | 2071 | .89630 |
| 15 | 2032 | .34135 | 55 | 2072 | .90224 |
| 16 | 2033 | .35445 | 56 | 2073 | .90845 |
| 17 | 2034 | .36797 | 57 | 2074 | .91438 |
| 18 | 2035 | .38191 | 58 | 2075 | .92019 |
| 19 | 2036 | .39625 | 59 | 2076 | .92581 |
| 20 | 2037 | .41098 | 60 | 2077 | .93121 |
| 21 | 2038 | .42610 | 61 | 2078 | .93629 |
| 22 | 2039 | .44159 | 62 | 2079 | .94099 |
| 23 | 2040 | .45745 | 63 | 2080 | .94531 |
| 24 | 2041 | .47367 | 64 | 2081 | .94928 |
| 25 | 2042 | .49023 | 65 | 2082 | .95296 |
| 26 | 2043 | .50711 | 66 | 2083 | .95633 |
| 27 | 2044 | .52428 | 67 | 2084 | .95932 |
| 28 | 2045 | .54170 | 68 | 2085 | .96203 |
| 29 | 2046 | .55930 | 69 | 2086 | .96453 |
| 30 | 2047 | .57703 | 70 | 2087 | .96733 |
| 31 | 2048 | .59487 | 71 | 2088 | .96979 |
| 32 | 2049 | .61276 | 72 | 2089 | .97212 |
| 33 | 2050 | .63066 | 73 | 2090 | .97439 |
| 34 | 2051 | .64849 | 74 | 2091 | .97636 |
| 35 | 2052 | .66618 | 75 | 2092 | .97826 |
| 36 | 2053 | .68365 | 76 | 2093 | .98064 |
| 37 | 2054 | .70085 | 77 | 2094 | 1.00000 |
| 38 | 2055 | .71756 | | | |
| 39 | 2056 | .73372 | | | |

Values during a Policy year will reflect any portion of the year's premium paid and the time elapsed in that year.

ICC12.TT.SCL.(0513)                                    5

NORTHWESTERN1549
EXHIBIT B

Policy Number: 22 247 352

## TABLE OF MAXIMUM ANNUAL PREMIUMS PER $1,000 OF TERM INSURANCE
Used for calculation of Additional Protection premiums (Section 3.2)

| Beginning of Policy Year | October 20, | Premium ($) | Beginning of Policy Year | October 20, | Premium ($) |
|---|---|---|---|---|---|
| 1 | 2017 | | 41 | 2057 | 117.26 |
| 2 | 2018 | | 42 | 2058 | 127.24 |
| 3 | 2019 | | 43 | 2059 | 138.02 |
| 4 | 2020 | | 44 | 2060 | 149.78 |
| 5 | 2021 | | 45 | 2061 | 162.23 |
| 6 | 2022 | | 46 | 2062 | 175.34 |
| 7 | 2023 | | 47 | 2063 | 189.01 |
| 8 | 2024 | | 48 | 2064 | 203.41 |
| 9 | 2025 | | 49 | 2065 | 219.98 |
| 10 | 2026 | | 50 | 2066 | 238.63 |
| 11 | 2027 | | 51 | 2067 | 258.97 |
| 12 | 2028 | | 52 | 2068 | 280.34 |
| 13 | 2029 | | 53 | 2069 | 301.20 |
| 14 | 2030 | | 54 | 2070 | 321.25 |
| 15 | 2031 | | 55 | 2071 | 338.99 |
| 16 | 2032 | | 56 | 2072 | 361.97 |
| 17 | 2033 | | 57 | 2073 | 389.18 |
| 18 | 2034 | | 58 | 2074 | 418.87 |
| 19 | 2035 | | 59 | 2075 | 452.21 |
| 20 | 2036 | | 60 | 2076 | 489.43 |
| 21 | 2037 | | 61 | 2077 | 530.90 |
| 22 | 2038 | | 62 | 2078 | 576.43 |
| 23 | 2039 | | 63 | 2079 | 625.38 |
| 24 | 2040 | | 64 | 2080 | 677.90 |
| 25 | 2041 | | 65 | 2081 | 734.01 |
| 26 | 2042 | | 66 | 2082 | 794.60 |
| 27 | 2043 | | 67 | 2083 | 858.88 |
| 28 | 2044 | | 68 | 2084 | 924.96 |
| 29 | 2045 | | 69 | 2085 | 993.62 |
| 30 | 2046 | | 70 | 2086 | 1,000.00 |
| 31 | 2047 | | 71 | 2087 | 1,000.00 |
| 32 | 2048 | | 72 | 2088 | 1,000.00 |
| 33 | 2049 | | 73 | 2089 | 1,000.00 |
| 34 | 2050 | | 74 | 2090 | 1,000.00 |
| 35 | 2051 | | 75 | 2091 | 1,000.00 |
| 36 | 2052 | | 76 | 2092 | 1,000.00 |
| 37 | 2053 | | 77 | 2093 | 1,000.00 |
| 38 | 2054 | | | | |
| 39 | 2055 | | | | |
| 40 | 2056 | | | | |

ICC12.TT.SCL.(0513)

6

NORTHWESTERN1550
EXHIBIT B

Policy Number: 22 247 352

## PREMIUM PAYMENT FREQUENCIES OTHER THAN ANNUAL

The total amount of premiums due per year when paid on frequencies other than annual is greater than the annual premium shown on page 3. Premiums paid on a basis other than annual are increased to reflect the time value of money and to cover the administrative costs of processing the additional premium payments. If premiums are paid more often than annually (see Section 4.1), the premium amount will be determined as follows:

| Premium Frequency | Multiply Annual Premium by: |
|---|---|
| Every 6 months | 0.5096 |
| Every 3 months | 0.2573 |
| Monthly | 0.0863 |

Depending upon the frequency premiums are paid and the premium payment method used, the Company may also charge an administrative fee, not to exceed $5 per payment, to cover the additional costs associated with the payment method.

ICC12.TT.SCL.(0513)                                        7

NORTHWESTERN1551
EXHIBIT B

Amendment Date: September 14, 2020                        Policy Number: 22 247 352

(This page is intentionally blank.)

ICC12.TT.SCL.(0513)                                8

NORTHWESTERN1552
EXHIBIT B

# SECTION 1. THE CONTRACT

## 1.1 LIFE INSURANCE BENEFIT

The Northwestern Mutual Life Insurance Company ("Company") will pay the Life Insurance Benefit on the death of the second of the Insureds to die (the "second death") while this Policy is in force.  No benefit is payable on the death of the first of the Insureds to die.  Subject to the terms and conditions of the Policy, the payment of the Life Insurance Benefit will be:

- made after proof of the deaths of both Insureds is received at the Home Office; and
- made to the Beneficiaries under Section 10.

The amount of the Life Insurance Benefit will be the sum of the following:

- the Base Amount shown on page 3; plus
- the amount of Additional Protection then in force under Section 3; plus
- the amount of any Paid-up Additions in force under Section 6.3; plus
- the amount of any dividend accumulations (Section 5.2); plus
- the amount of any premium refund (Section 4.1) and any dividend at death (Section 5.3);

minus the sum of the following:

- the amount of any Policy Debt (Section 8.3); plus
- the amount of any Adjustment to Life Insurance Benefit During Grace Period as described in Section 4.1; plus
- the amount of any unpaid additional premium used to purchase Paid-up Additions (Section 6.3).

These amounts will be determined as of the date of the second death.  Even though the Owner does not have the right to take any Policy loans after the date of the second death, any Policy loans that are taken after the date of the second death will be deducted from the Life Insurance Benefit.

The amount of the Life Insurance Benefit when the second death occurs while the Policy is in force as Paid-up Insurance will be determined under Section 7.2.

## 1.2 NOTICE AND PROOF OF DEATH

Written notice and proof of the death of each Insured must be given to the Company as soon as reasonably possible after each death.

## 1.3 ENTIRE CONTRACT; CHANGES

This Policy, together with the attached application and any application supplements (together referred to in this Policy as "Application"), and any attached amendments, endorsements, riders and additional benefits, are the entire contract.  Statements in the Application, are representations and not warranties.  This Policy may be changed by the Company to maintain compliance with applicable state and federal law or to assure continued qualification of the Policy under federal tax laws.  The Owner may add any available benefits or riders to the Policy, or remove existing benefits or riders, subject to conditions and underwriting requirements set by the Company at the time of the request. A change in the terms of, or a waiver of the Company's rights under, the Policy is valid only if it is approved in writing by an officer of the Company.  The Company may require that the Policy be sent to it for endorsement to show a change or waiver.  No agent has the authority to change the Policy or to waive the Company's rights thereunder.

ICC12.TT.SCL.(0513)

NORTHWESTERN1553
EXHIBIT B

### 1.4 INCONTESTABILITY

Except as stated below for a fraudulent misstatement, the Company will not contest this Policy after the Policy has been in force, during the lifetime of at least one Insured, for two years from the Date of Issue or for two years from the effective date of a reinstatement (Section 4.4). Except as stated below for a fraudulent misstatement, a change (including an increase in the amount of insurance) to the terms of the Policy after the Date of Issue, which occurred upon the request of the Owner and was subject to the Company's insurability requirements, will be incontestable after the change has been in force, during the lifetime of at least one Insured, for two years from the effective date of the change. In issuing the insurance, the Company has relied on the application(s). While the insurance is contestable, the Company, on the basis of a material misstatement in the application(s), may rescind the insurance or deny a claim. After the applicable contestability period set forth above, the Company may rescind the insurance for a fraudulent misstatement to the extent allowed by the law of the state in which this Policy is delivered or issued for delivery.

### 1.5 SUICIDE

If either Insured dies by suicide within one year from the Date of Issue, the Policy will terminate. The amount payable by the Company will be limited to the premiums paid, less the sum of any Policy Debt and the Cash Value of any Paid-up Additions surrendered. If either Insured dies by suicide within one year from the date of a change to the terms of the Policy, which occurred upon the request of the Owner and was subject to the Company's insurability requirements, the amount payable with respect to such change will be limited to the premiums paid, less the sum of any Policy Debt and the Cash Value of any Paid-up Additions surrendered.

### 1.6 POLICY DATE AND DATE OF ISSUE

Policy months, years, and anniversaries are computed from the Policy Date. The contestable and suicide periods begin with the Date of Issue.

These dates are shown on page 3. The Date of Issue for any insurance issued under Additional Premiums Scheduled After Issue (Section 4.2) or Unscheduled Additional Premium Option (Section 4.3) will be shown on an amendment to the Policy Schedule Pages.

### 1.7 MISSTATEMENT

If the age or sex of either Insured has been misstated and has not been corrected through a Policy change, the amount payable will be the amount which the premiums paid would have purchased at the correct age and sex.

### 1.8 PAYMENTS BY THE COMPANY

All payments by the Company under this Policy are payable in United States dollars at the Home Office.

### 1.9 INSURABILITY REQUIREMENTS

To make some changes under this Policy, both Insureds must meet the Company's insurability requirements. These requirements are as follows:

- both the Insureds are alive;
- evidence of insurability must be given that is satisfactory to the Company; and
- under the Company's underwriting standards as then in effect, both Insureds are in an underwriting classification that is the same as, or better than, the one for this Policy.

### 1.10 CONFORMITY WITH INTERSTATE INSURANCE PRODUCT REGULATION COMMISSION STANDARDS

This Policy was approved under the authority of the Interstate Insurance Product Regulation Commission and issued under the Commission standards. Any provision of this Policy which, on the Date of Issue, is in conflict with the Commission standards for an Individual Whole Life Insurance Policy, as in effect on the Date of Issue, is hereby amended to conform to those standards as of the Date of Issue.

ICC12.TT.SCL.(0513)

NORTHWESTERN1554
EXHIBIT B

# SECTION 2. OWNERSHIP

### 2.1 THE OWNER

The Owner is named on page 3. All Policy rights may be exercised without the consent of any Beneficiaries by the Owner, the Owner's successor or the Owner's transferee. If the Policy has more than one Owner, Policy rights must be exercised only by authorization of all Owners. After the second death, Policy rights may be exercised only as provided in Sections 10 and 11.

### 2.2 TRANSFER OF OWNERSHIP

The Owner may transfer the ownership of this Policy by providing the Company with written proof of the transfer and supplying the information in a form that is acceptable to the Company, including supplying any required information about the new Owner. The Company will not be responsible to a subsequent Owner for any payment or other action taken by the Company until the above information is received at the Home Office in a form acceptable to the Company. The transfer will then take effect as of the date the transfer form was signed unless otherwise specified by the Owner. The Company may require that the Policy be sent to it for endorsement to show the transfer.

### 2.3 NAMING AND CHANGING A SUCCESSOR OWNER

If the Owner is not the surviving Insured, the Owner may name or change a successor owner who will become the new owner upon the Owner's death. Naming or changing a successor owner will be effective upon receipt at the Home Office of a written request that is acceptable to the Company, including any required information about the successor owner.

### 2.4 COLLATERAL ASSIGNMENT

The Owner may assign this Policy as collateral security. The Company is not responsible for the validity or effect of the collateral assignment. The Company will not be responsible to an assignee for any payment or other action taken by the Company before receipt of the assignment in writing at the Home Office. Unless otherwise specified by the Owner, the assignment will take effect on the date the assignment is signed by the Owner, subject to any payments made or actions taken prior to receipt of the assignment.

The interest of the Beneficiaries will be subject to any collateral assignment made either before or after the Beneficiaries are named.

A collateral assignee is not an Owner. A collateral assignment is not a transfer of ownership. Ownership can be transferred only by complying with Section 2.2 or Section 2.3.

ICC12.TT.SCL.(0513)                                        11

NORTHWESTERN1555
EXHIBIT B

# SECTION 3. ADDITIONAL PROTECTION

## 3.1 ADDITIONAL PROTECTION

**Description.**    Additional Protection consists of one year term insurance payable on the second death and Paid-up Additions payable on the second death.  The amount of one year term insurance will be reduced by the amount of Paid-up Additions purchased under Section 6.2 by dividends or by the payment of additional premiums.

If the Company determines that the premium for Additional Protection is greater than the amount of premium needed for the one year term insurance portion of Additional Protection, the amount by which the premium for Additional Protection exceeds the premium for one year term insurance (as shown on page 3) will be treated as an additional premium and will be used to purchase Paid-up Additions under Section 6.2.  As provided in Section 4.2, the Owner may reduce the premium so that Paid-up Additions are not purchased.

**Amount.**  The amount of Additional Protection for each Policy year will be the amount shown on page 3 so long as premiums are paid when due unless:

- the amount of Additional Protection is reduced by the Company under Section 3.2; or
- the amount of Additional Protection is reduced by the Owner under Section 3.3.

## 3.2 REDUCTION BY COMPANY; OWNER'S RIGHT TO CONTINUE EXISTING PROTECTION

If, on any Policy anniversary, any part of Additional Protection is one year term insurance, the Company may reduce the one year term insurance.  The Company will determine annually, based on the mortality, investment earnings and expense factors then being used to determine dividends payable on the Policy, whether the Base Amount and Additional Protection will generate sufficient values to pay the cost of one year term insurance.  If the cost of one year term insurance is greater than these values, and the Owner declines to pay an increased premium as provided in the next paragraph, the one year term insurance will be reduced so that its cost equals these values.  The reduction of one year term insurance will cause a like reduction in the amount of Additional Protection, so that the amount of Additional Protection will be less than the amount shown on page 3.  The Company will send written notice of the reduction.

The Owner may prevent a reduction that would otherwise occur by paying an increased premium for the portion of Additional Protection that is one year term insurance.  The amount of the premium for one year term insurance that is part of Additional Protection will not be more than:

- (a) the amount of one year term insurance that is part of Additional Protection; multiplied by
- (b) the maximum level annual term premium rates shown on page 6.

The increased premium will be payable for the remainder of the premium paying period.  The premium must be received at the Home Office within 31 days of the date the reduction would take effect.

The right of the Owner to continue the amount of Additional Protection will terminate as of the first Policy anniversary for which the Owner fails to pay an increased premium when due, or, if earlier, when the Owner reduces the Additional Protection under Section 3.3.

## 3.3 OTHER REDUCTIONS OF ADDITIONAL PROTECTION

**Reduction If Dividend Option Other than Paid-up Additions.**  If the Owner directs that dividends be used other than to purchase Paid-up Additions, any one year term insurance in force will terminate.  The amount of Additional Protection will then be the amount of Paid-up Additions in force under Section 6.2.

**Reduction If Additions Surrendered.**  If additions under Section 6.2 are surrendered, any one year term insurance in force will terminate.  The amount of Additional Protection will then be the amount of Paid-up Additions in force under Section 6.2.

ICC12.TT.SCL.(0513)                12

NORTHWESTERN1556
EXHIBIT B

# SECTION 4. PREMIUMS AND REINSTATEMENT

## 4.1 PREMIUMS

**Payment.** All premiums after the first are payable at the Home Office or to a payment center designated by the Company. All payments must be made in United States dollars payable through a United States financial institution. A receipt signed by an officer of the Company will be furnished on request. Each premium must be paid on or before its due date. The date when each premium is due and the number of years for which premiums are payable are described on page 3.

No premiums may be paid while the Policy is in force as Paid-up Insurance under Section 7.2, except as provided in Reinstatement (Section 4.4).

**Frequency.** Premiums may be paid every 3, 6 or 12 months. The Company may offer other payment programs that permit the payment of premiums on other frequencies or provide additional features such as electronic funds transfer.

On request, the Company will provide:
- the amount of the premium due on any available frequency for any Policy year;
- the annual total of premiums due (including the amount of the administrative fee, if any) if paid on frequencies other than annual; and
- the amount by which that total differs from the annual premium. The total amount of premiums due per year when paid on frequencies other than annual is greater than the annual premium (see page 7). The Company also will provide an annual percentage rate calculation upon request.

A change in premium frequency will take effect when the Company accepts a premium on a new frequency.

**Grace Period.** A grace period of 31 days will be allowed to pay a premium that is not paid on its due date. The Policy will be in full force during this period. If the premium is not paid within the grace period, the Policy will terminate as of the due date unless it continues as Paid-up Insurance under Section 7.2.

**Adjustment To Life Insurance Benefit During Grace Period.** If the second death occurs during the grace period, the amount of the unpaid premium will be deducted from the Life Insurance Benefit.

**Premium Refund At Second Death.** If the premium paid for the Policy year in which the second death occurs exceeds:
- the premium paid on an annual basis; multiplied by
- the fraction of the Policy year that has elapsed at the time of death,

then the Company will refund this excess amount. The refund will not include:
- any premium amount used to purchase a Paid-up Addition to increase coverage under Section 6.3; and
- any unscheduled additional premium paid under Section 4.3.

Any refund will be part of the Life Insurance Benefit described in Section 1.1.

## 4.2 AMOUNT OF PREMIUM; ADJUSTMENTS

**Scheduled Premiums.** The premium due on this Policy is the scheduled premium. The scheduled premium is the sum of any premium for the Base Amount, any premium for Additional Protection (including any increases in Additional Protection premium described in Section 3.2), any scheduled additional premium used to purchase Paid-up Additions under Section 6.3, and any premium that is due for any additional benefit that is a part of this Policy. The annual premium amounts are shown on page 3.

An increased premium for Additional Protection will be based on the Policy year and the amount of one year term insurance that is in force as part of Additional Protection as of the date used to determine the increased premium.

**Additional Premiums Scheduled At Issue.** If requested on the Application, this Policy may have been issued with level additional premiums. The amount of the additional premium is shown on page 3.

ICC12.TT.SCL.(0513)                    13

NORTHWESTERN1557
EXHIBIT B

**Additional Premiums Scheduled After Issue.** The Owner may pay additional premiums by requesting that the level premium payable on the Policy be increased and paying any required fees. This request may be made at any time before the Policy anniversary that is nearest to the older Insured's 85th birthday. Additional premiums may be scheduled only if, at the time the increases are applied for:

- the Insureds satisfy the insurability requirements stated in Section 1.9; and

- the insurance in force after applying the scheduled additional premiums will be within the Company's issue limits; and

- the total amount of the scheduled additional premiums and other premiums paid to the Company under any policy for purchases of paid-up life insurance on the life of each Insured is within the Company's limits for such premiums; however, the Company may not set a limit below $1,000 per calendar year.

**Owner's Right To Decrease Scheduled Additional Premiums.** The Owner may decrease the amount of the level additional premium or the amount of Additional Protection premium used to purchase Paid-up Additions through a Policy change. This may be done at any time by written request sent to the Home Office with a payment of any required fees. Later increases in the level amount of the additional premium may be made only as provided in the preceding paragraph.

**Effective Date.** A premium change will take effect on the first premium due date that follows the receipt at the Home Office of the Owner's written request for change.

**Additional Premiums Used To Purchase Paid-up Additions.** Each scheduled additional premium paid will be used, as of the due date of the premium, to purchase Paid-up Additions as described in Section 6.

### 4.3 UNSCHEDULED ADDITIONAL PREMIUM OPTION

Unscheduled additional premiums may be paid to the Company at any time before the Policy anniversary that is nearest to the older Insured's 85th birthday. An unscheduled additional premium may be paid only if, at the time the premium is paid and any required fees are paid:

- the Insureds satisfy the insurability requirements stated in Section 1.9; and

- the insurance in force after applying the unscheduled additional premium will be within the Company's issue limits; and

- the total amount of the unscheduled additional premiums and other premiums paid to the Company under any policy for purchases of paid-up life insurance on the life of each Insured is within the Company's limits for such premiums; however, the Company may not set a limit below $1,000 per calendar year.

Each unscheduled additional premium may not be less than $100. Each unscheduled additional premium will be used, as of the date the premium is paid, to purchase Paid-up Additions as described in Section 6.

### 4.4 REINSTATEMENT

The Policy may be reinstated within three years after the due date of the overdue premium. All unpaid premiums (except premiums that would purchase Paid-up Additions) and premiums for any additional benefits that are a part of this Policy (and interest as required below) must be received by the Company:

- while both Insureds are alive; or

- while one Insured is alive if only that Insured was alive on the due date of the overdue premium.

The Policy may not be reinstated if the Policy was surrendered for its Cash Surrender Value. Any Policy Debt on the due date of the overdue premium, with interest from that date at the Policy loan interest rate, must be repaid or reinstated.

In addition, for the Policy to be reinstated more than 31 days after the end of the grace period:

- evidence of insurability must be given that is satisfactory to the Company:

  (a) for both Insureds; or

  (b) for one Insured if only that Insured was alive on the due date of the overdue premium; and

- all unpaid premiums (except premiums that would purchase Paid-up Additions) and premiums for any additional benefits that are a part of this Policy must be paid with interest from the due date of each premium. Interest is at an annual effective rate of 6%.

ICC12.TT.SCL.(0513)                    14

NORTHWESTERN1558
EXHIBIT B

# SECTION 5. DIVIDENDS

## 5.1 ANNUAL DIVIDENDS

This Policy is eligible to share in the divisible surplus, if any, of the Company. This divisible surplus is determined each year. This Policy's share, if any, will be credited as a dividend on the Policy anniversary. This dividend will reflect, among other things, the mortality, expense and investment experience of the Company and will be affected by any Policy Debt during the Policy year. Decisions concerning the amount and appropriate allocation of divisible surplus are within the sole discretion of the Company's Board of Trustees. There is no guaranteed method or formula for the determination or allocation of divisible surplus. The Company's approach is subject to change. There is no guarantee of a divisible surplus. Even if there is a divisible surplus, the payment of a dividend on this Policy is not guaranteed.

## 5.2 USE OF DIVIDENDS

Annual dividends, if any, may be paid in cash or used for one of the following:

- **Paid-up Additions.** Dividends will purchase Paid-up Additions as described in Section 6.

- **Dividend Accumulations.** Dividends will accumulate at interest. Interest is credited at an annual effective rate of not less than 0.5%. The Company may set a higher rate. Dividend accumulations increase the Policy's Cash Value. They are payable as part of the Life Insurance Benefit. Accumulations may be withdrawn unless they are used for a loan or for Paid-up Insurance under Section 7.2.

- **Premium Payment.** Dividends will be applied to the payment of any premium then due. If the balance of a premium is not paid, or if this Policy is in force as Paid-up Insurance, the dividend will purchase Paid-up Additions.

Other uses of dividends may be made available by the Company.

If no direction is given for the use of dividends, they will purchase Paid-up Additions.

## 5.3 DIVIDEND AT DEATH

A dividend for the period from the beginning of the Policy year to the date of the second death will be payable as part of the Life Insurance Benefit.

# SECTION 6. PAID-UP ADDITIONS

## 6.1 PURCHASE OF ADDITIONS; CHARGES

Paid-up Additions are purchased at the beginning of the Policy year by additional premiums and by dividends. The amount of Paid-up Additions purchased by additional premiums is based on the annual additional premium minus a charge for expenses, even if the additional premium is paid other than annually. The charge will not be more than 9% for scheduled additional premiums and unscheduled additional premiums.

Paid-up Additions can be used to reduce term insurance (Section 6.2) or to increase coverage (Section 6.3). Paid-up Additions increase the Policy's Cash Value and are eligible to share in the

divisible surplus (Section 5.1). They may be surrendered, subject to the limitations of Section 3.3, unless they are used for a loan or for Paid-up Insurance.

## 6.2 ADDITIONS TO REDUCE TERM INSURANCE

This type of Paid-up Addition will be part of the Additional Protection. Each addition will reduce the amount of one year term insurance that is in force as part of Additional Protection, and the amount of Additional Protection will remain unchanged.

ICC12.TT.SCL.(0513)                    15

NORTHWESTERN1559
EXHIBIT B

### 6.3 ADDITIONS TO INCREASE COVERAGE

This type of Paid-up Addition is not included in the Additional Protection. Each addition will immediately increase the Life Insurance Benefit payable under Section 1.1.

### 6.4 ALLOCATION OF ADDITIONAL PREMIUMS AND DIVIDENDS

When there is no one year term insurance in force as part of the Additional Protection, the dividends and the additional premiums will be applied under Additions to Increase Coverage (Section 6.3). When there is one year term insurance in force, dividends and any part of the pre-mium for Additional Protection treated as an additional premium will be applied under Section 6.2. Scheduled additional premiums which are not part of the premium for Additional Protection will be applied under Section 6.3.

Subject to the preceding paragraph, the Owner may change the allocation of additional premiums between Sections 6.2 and 6.3 by written request that is sent to the Home Office if the Company's insurability requirements are satisfied as stated in Section 1.9. An increase in the amount of premium allocated to the purchase of additions under Section 6.2 will be reflected as an increase in the amount of the premium payable for Additional Protection.

# SECTION 7. CASH VALUE AND PAID-UP INSURANCE

### 7.1 CASH VALUE

The Cash Value for this Policy, when all premiums due have been paid, will be the sum of:
- the Cash Value from the Table of Guaranteed Values;
- the Cash Value of any Paid-up Additions; and
- the amount of any dividend accumulations.

If premiums are not paid on this Policy on an annual basis, the Cash Value will reflect a reduction for any premiums due later in the Policy year.

The Cash Value within three months after the due date of any unpaid premium will be the Cash Value on that due date reduced by any later surrender of Paid-up Additions and by any later withdrawal of dividend accumulations. After that, the Cash Value will be the Cash Value of the insurance then in force, including the Cash Value of any Paid-up Additions and any dividend accumulations.

The Cash Value of any Paid-up Insurance or Paid-up Additions will be the net single premium for that insurance during each Policy year.

### 7.2 PAID-UP INSURANCE

If any premium is unpaid at the end of the grace period, this Policy will be in force as Paid-up Insurance. The amount of insurance will be determined by using the Cash Value as a net single premium at the time the Policy becomes Paid-up Insurance. Any Policy Debt will continue. Paid-up Insurance will share in divisible surplus (Section 5.1).

The amount of the Life Insurance Benefit when this Policy is in force as Paid-up Insurance will be:
- the amount of Paid-up Insurance determined above; plus
- the amount of any in force Paid-up Additions purchased by dividends after the Policy has become Paid-up Insurance (Section 6); plus
- the amount of any existing dividend accumulations (Section 5.2); plus
- the amount of any dividend at death (Section 5.3); minus
- the amount of any Policy Debt (Section 8.3).

These amounts will be determined as of the date of the second death. Even though the Owner does not have the right to take any Policy loans after the date of the second death, any Policy loans that are taken after the date of the second death will be deducted from the Life Insurance Benefit.

If Paid-up Insurance is surrendered within 31 days after a Policy anniversary, the Cash Value will not be less than the Cash Value on that anniversary reduced by any later surrender of Paid-up Additions and by any later withdrawal of dividend accumulations.

ICC12.TT.SCL.(0513)                    16

NORTHWESTERN1560
EXHIBIT B

**7.3 CASH SURRENDER**

The Owner may surrender this Policy for its Cash Surrender Value. The Cash Surrender Value is the Cash Value less any Policy Debt. A written surrender of all claims, acceptable to the Company, will be required. The date of surrender will be the date of receipt at the Home Office of the written surrender. The Policy will terminate and the Cash Surrender Value will be determined as of the date of surrender. The Company may require that the Policy be sent to it.

Surrender proceeds will be the Cash Surrender Value as of the date of surrender. These proceeds will be paid in cash or under an income plan that is elected by the Owner.

Partial surrenders are permitted subject to conditions set by the Company at the time of the request.

The Company may defer paying the surrender proceeds for up to six months from the date of surrender. If payment is deferred for 30 days or more, interest will be paid on the surrender proceeds from the date of surrender to the date of payment. Interest will be at an annual effective rate determined by the Company.

**7.4 TABLE OF GUARANTEED VALUES; BASIS OF VALUES**

Cash Values and Paid-up Insurance for the Base Amount are shown on page 4 for the end of the Policy years indicated. These values assume that all premiums due have been paid for the number of years stated. They do not reflect Paid-up Additions, dividend accumulations or Policy Debt. Cash Values for Paid-up Additions are shown on page 5. Values during a Policy year will reflect any portion of the year's premium paid and the time elapsed in that year.

Values for Policy years not shown are calculated on the same basis as those shown on page 4. A list of these values will be furnished on request.

The Cash Value for each Policy year not shown on page 4 and the net single premiums are based on the 2001 Commissioners Standard Ordinary Mortality Table Ultimate Rates for the sex and smoking status of each Insured. Interest is based on an annual effective rate of 4%. Calculations assume the continuous payment of premiums and the immediate payment of claims.

A detailed statement of the method of calculation of all values has been filed with the Interstate Insurance Product Regulation Commission. The Company will furnish this statement at the request of the Owner. All values are at least as great as those required by or pursuant to the NAIC Standard Nonforfeiture Law for Life Insurance.

ICC12.TT.SCL.(0513)

17

NORTHWESTERN1561

EXHIBIT B

# SECTION 8. LOANS

## 8.1 POLICY AND PREMIUM LOANS

The Owner may obtain a loan from the Company in an amount that is not more than the Loan Value (Section 8.2). When the loan is made, the Policy is assigned to the Company as sole security for the loan.

**Policy Loan.** The loan may be obtained on written request. The Company may defer making the loan for up to six months unless the loan is to be used to pay premiums due the Company.

**Premium Loan.** If the premium loan provision is in effect on this Policy, a loan will be made to pay an overdue scheduled premium. If the Loan Value is not large enough to pay the overdue scheduled premium, a scheduled premium will be paid for any other frequency permitted by this Policy for which the Loan Value is large enough. If the Loan Value is not large enough to pay the overdue scheduled premium on any frequency permitted by this Policy, the Policy will continue in force or terminate as provided in Section 4.1. The Owner may elect or revoke the premium loan provision by written request received at the Home Office.

## 8.2 LOAN VALUE

The Loan Value is the Cash Value on the next Policy anniversary after the date of the loan minus the sum of:

- any Policy Debt;
- any scheduled premium then due or billed;
- any remaining unpaid modal premiums for the current Policy year; and
- loan interest on the new loan and any outstanding loans to the next Policy anniversary.

## 8.3 POLICY DEBT

Policy Debt consists of all outstanding loans and accrued loan interest. It may be paid to the Company at any time. Policy Debt affects any dividends that may be paid under Section 5.1.

Any Policy Debt will be deducted from the Policy proceeds.

If the Policy Debt equals or exceeds the Cash Value, this Policy will terminate. Termination occurs 31 days after a notice has been mailed to the Owner and to any assignee on record, under Section 2.4, at the Home Office.

## 8.4 LOAN INTEREST

Loan interest accrues and is payable on a daily basis from the date of the loan on Policy loans and from the premium due date on premium loans. Unpaid loan interest is included in Policy Debt.

The Specified Rate loan interest option or the Variable Rate loan interest option is elected on the Application.

**Change To Variable Rate Loan Interest Option.** The Owner may request a change to the Variable Rate loan interest option at any time, with the change to take effect on the January 1st following receipt of a written request at the Company's Home Office.

**Change To Specified Rate Loan Interest Option.** The Owner may request a change to the Specified Rate loan interest option if the loan interest rate set by the Company under Section 8.6 for the year beginning on the next January 1st is less than 8%. The written request to change must be received at the Home Office between November 15th and the last business day of the calendar year; the change will take effect on the January 1st following receipt of the request at the Home Office.

## 8.5 SPECIFIED RATE LOAN INTEREST OPTION

Loan interest is payable at an annual effective rate of 8%.

ICC12.TT.SCL.(0513)                    18

NORTHWESTERN1562
EXHIBIT B

## 8.6 VARIABLE RATE LOAN INTEREST OPTION

Loan interest is payable at an annual effective rate that is set by the Company annually and applied to new or outstanding Policy Debt during the year beginning each January 1st. The highest loan interest rate that may be set by the Company is the greater of 5% or a rate based on the Moody's Corporate Bond Yield Averages-Monthly Average Corporates for the immediately preceding October. This Average is published by Moody's Investor's Service, Inc. If it is no longer published, the highest loan interest rate will be based on some other similar average established by the insurance supervisory official of the state in which this Policy is delivered.

The loan interest rate set by the Company will not exceed the maximum rate determined in accordance with the NAIC Model Policy Loan Interest Rate Bill. The loan interest rate may be increased only if the increase in the annual effective rate is at least 1/2%. The loan interest rate will be decreased if the decrease in the annual effective rate is at least 1/2%.

The Company will give notice:
● of the initial loan interest rate in effect at the time a Policy or premium loan is made.
● of an increase in loan interest rate on outstanding Policy Debt no later than 30 days before the January 1st on which the increase takes effect.

This Policy will not terminate during a Policy year as the sole result of an increase in the loan interest rate during that Policy year.

## 8.7 REPAYMENT OF LOANS

A loan may be paid in full or in part at any time while this Policy is in force and at least one of the Insureds is alive. When a loan repayment is made, the amount of Policy Debt is reduced by the amount of the payment.

# SECTION 9. CHANGE OF POLICY

## 9.1 REDUCTION OF POLICY AMOUNT

The Owner may reduce the amount of this Policy or divide this Policy into two or more policies by:
● paying the required costs; and
● meeting any other conditions set by the Company including the minimum policy amount rules.

## 9.2 CHANGE OF PLAN

The Owner may change this Policy to any permanent life insurance plan agreed to by the Owner and the Company by:
● paying the required costs; and
● meeting any other conditions set by the Company.

# SECTION 10. BENEFICIARIES

## 10.1 DEFINITION OF BENEFICIARIES

The term "Beneficiaries" means direct beneficiaries, contingent beneficiaries and further payees of the Life Insurance Benefit.

## 10.2 NAMING AND CHANGING OF BENEFICIARIES OF THE LIFE INSURANCE BENEFIT

**By Owner.** The Owner may name and change the Beneficiaries of the Life Insurance Benefit:
● before the second death; or

● during the first 60 days after the second death, if the second Insured to die was not the Owner at the time of his or her death. A change made during the 60 days cannot be revoked.

**Effective Date.** A naming or changing of Beneficiaries will be made on receipt at the Home Office of a written request in good order that is acceptable to the Company. The request will then take effect as of the date that it was signed unless otherwise specified by the Owner. The Company is not responsible for any payment or other action that is taken by it before the receipt of the request. The Company may require that the Policy be sent to it to be endorsed.

ICC12.TT.SCL.(0513)                    19

NORTHWESTERN1563
EXHIBIT B

### 10.3 SUCCESSION IN INTEREST OF BENEFICIARIES OF THE LIFE INSURANCE BENEFIT

**At Least One Beneficiary Survives And Receives Payment.** If at least one of the Beneficiaries survives the second Insured to die and receives payment of his or her share of the Life Insurance Benefit, then the Life Insurance Benefit will be paid as follows:

**Direct Beneficiaries.** The Life Insurance Benefit of this Policy will be paid in equal shares, unless otherwise designated by the Owner, to the direct beneficiaries who survive and receive payment. If a direct beneficiary dies before receiving all or part of the direct beneficiary's full share, then the unpaid portion will be paid in equal shares to the other direct beneficiaries who survive and receive payment.

**Contingent Beneficiaries.** If the direct beneficiaries do not survive and receive payment of the entire Life Insurance Benefit, then the unpaid portion will be paid in equal shares, unless otherwise designated by the Owner, to the contingent beneficiaries who survive and receive payment. If a contingent beneficiary dies before receiving all or part of the contingent beneficiary's full share, then the unpaid portion will be paid in equal shares to the other contingent beneficiaries who survive and receive payment.

**Further Payees.** If the direct and contingent beneficiaries do not survive and receive payment of the entire Life Insurance Benefit, then the unpaid portion will be paid in one sum:

- in equal shares, unless otherwise designated by the Owner, to the further payees who survive and receive payment; or

- if no further payees survive and receive payment of the Life Insurance Benefit, then to the estate of the last to die of all of the Beneficiaries.

**No Beneficiaries Survive And Receive Payment.** If no Beneficiaries survive the second Insured to die and receive payment of any portion of the Life Insurance Benefit, then the Life Insurance Benefit will be paid to the Owner or to the Owner's estate.

### 10.4 TRUSTEE AS BENEFICIARY

If a trustee is named as a Beneficiary and no qualified trustee makes claim to the Life Insurance Benefit within one year after payment becomes due to the trustee, or if acceptable evidence is furnished to the Company within that year showing that no trustee can qualify to receive payment, payment will be made as though the trustee had not been named.

The Company will be fully discharged of liability for any action taken by the trustee and for all amounts paid to, or at the direction of, the trustee and will have no obligation as to the use of the amounts. In all dealings with the trustee, the Company will be fully protected against the claims of every other person. The Company will not be charged with notice of a change of trustee unless written evidence of the change is received at the Home Office.

### 10.5 GENERAL

**Transfer Of Ownership.** A transfer of ownership, in and of itself, will not change the interest of the Beneficiaries.

**Claims Of Creditors.** So far as allowed by law, no amount payable under this Policy will be subject to the claims of creditors of the Beneficiaries.

ICC12.TT.SCL.(0513)                    20

NORTHWESTERN1564
EXHIBIT B

# SECTION 11. PAYMENT OF POLICY BENEFITS

## 11.1 PAYMENT OF PROCEEDS

The Life Insurance Benefit will be paid, as designated, in cash or into an income plan as follows:

- in a manner designated by the Owner and accepted by the Company; or
- if the Owner has not designated an acceptable manner of payment, then in cash or in a manner designated by a direct or contingent beneficiary and accepted by the Company.

The Company will pay interest on the Life Insurance Benefit from the date of the second death until the proceeds are paid in cash or into an income plan. Interest will be paid at an annual effective rate determined by the Company, but the rate shall not be less than the rate applicable to this Policy for funds left on deposit, as of the date of death of the Insured. Additional interest will be paid at a rate of 10% annually beginning with the date that is 31 calendar days from the latest of items (a), (b) and (c) to the date the claim is paid, where:

(a) is the date that due proof of death is received by the Company;

(b) is the date the Company receives sufficient information to determine its liability, the extent of the liability, and the appropriate payee legally entitled to the proceeds; and

(c) is the date that legal impediments to payment of proceeds that depend on the action of parties other than the Company are resolved and sufficient evidence of the same is provided to the Company. Legal impediments to payment include, but are not limited to:

- the establishment of guardianships and conservatorships;
- the appointment and qualification of trustees, executors and administrators; and
- the submission of information required to satisfy a state and federal reporting requirements.

## 11.2 INCOME PLAN ELECTIONS

**For Income Plans Elected By Owner For Life Insurance Benefit.** The Owner may elect an income plan for each Beneficiary's share of the Life Insurance Benefit:

- before the second death; or
- during the first 60 days after the second death, if the second Insured to die was not the Owner at the time of his or her death. An election made during the 60 days cannot be revoked.

**For Income Plans Elected By Owner For Surrender Proceeds.** The Owner may elect an income plan for surrender proceeds. The Owner will be the direct beneficiary.

**For Income Plans Elected By Beneficiary.** Subject to the Owner's rights during the first 60 days after the death of the Insured, if no income plan has been selected by the Owner upon the death of the Insured, the Beneficiary may elect an income plan for the Life Insurance Benefit.

**Effective Date.** An income plan that is elected by the Owner will take effect on the date of the second death if the election is received at the Home Office prior to the second death. In all other situations, an income plan that is elected will take effect on the date the election is received at the Home Office or on a later date, if requested.

**Payment Date.** The first payment is due as of the effective date of the plan. If applicable, proof of the date of birth and other required information, acceptable to the Company, must be furnished for each individual on whose life the payments are based.

**Minimum Payment.** The Company may limit the election of an income plan to one that results in payments of at least $50. If payments under an income plan are or become less than $50, the Company may change the frequency of payments. If the payments are being made once every 12 months and are less than $50, the Company may pay the present value or the balance of the income plan.

ICC12.TT.SCL.(0513)                                        21

NORTHWESTERN1565
EXHIBIT B

## 11.3 INCOME PLAN OFFERINGS

The Company will make available the following Life Income Plans:

- **Single Life Income.**  The Company will make monthly payments for the selected certain period, if any, and thereafter during the remaining lifetime of the individual upon whose life income payments are based.  The choices for the certain period are:

  (a) zero years;

  (b) 10 years; or

  (c) 20 years.

- **Joint And Survivor Life Income.**  The Company will make monthly payments for a 10-year certain period, and after that as long as one or both individuals, upon whose lives income payments are based, is alive.

**Limitations.**  A Beneficiary who is a natural person may be paid under a Life Income Plan only if the payments depend on his or her life.  A Beneficiary who is a non-natural person may be paid under a Life Income Plan only if the payments depend on the life of the Insured's spouse or the Insured's dependent.

**Payment Frequency.**  On request, payments will be made once every 3, 6 or 12 months instead of each month.

**Other Selections.**  The Company may offer additional income plans.

## 11.4 NAMING AND CHANGING OF BENEFICIARIES UNDER INCOME PLANS

**For Income Plans Elected By Owner.**  The Owner of the Policy may name and change the contingent beneficiaries and further payees of an income plan elected for surrender amounts.  The Owner of the Policy may name the direct beneficiaries, contingent beneficiaries, and further payees of an income plan elected for the Life Insurance Benefit.  If the Owner of the Policy elected an income plan, a Beneficiary may name and change any contingent beneficiaries and further payees of the Beneficiary's share of the benefits only if:

- the Beneficiary was the Owner of the Policy; or
- no contingent beneficiary or further payee of that share is living.

**For Income Plans Elected By Beneficiary.**  If a Beneficiary elected the income plan, the Beneficiary may name and change any contingent beneficiaries and further payees of the Beneficiary's share of the benefits.

ICC12.TT.SCL.(0513)                                22

NORTHWESTERN1566
EXHIBIT B

## 11.5  SUCCESSION IN INTEREST OF BENEFICIARIES UNDER INCOME PLANS

**Direct Beneficiary.**  Amounts payable under an income plan will be payable to the direct beneficiary.

**Contingent Beneficiaries.**  At the death of the direct beneficiary, amounts payable under an income plan will be payable in equal shares to the contingent beneficiaries who survive and receive payment.  Unless otherwise requested by the Owner, the contingent beneficiaries can elect to:

- continue to receive the remaining period certain payments at the selected frequency;
- receive the present value of the remaining period certain payments in one sum; or
- apply the present value of the remaining period certain payments to a new Life Income Plan.

**Further Payees.**  At the death of all direct and contingent beneficiaries, the present value of any unpaid payments under an income plan will be paid in one sum:

- in equal shares to the further payees who survive and receive payment; or
- if no further payees survive and receive payment, to the estate of the last to die of all the direct beneficiaries, contingent beneficiaries and further payees.

Present value will be based on the rate of interest used to determine the amount of the payments.

## 11.6  INCOME PLAN RATES

**Minimum Payment Rates.**  Life Income Plan payments will be based on rates declared by the Company.  These rates will provide at least as much income as would the Company's rates, on the date that the income plan takes effect, for a single premium immediate annuity contract.  Payments under these rates will not be less than the Minimum Payment Rate Tables.

The Life Income Plan payment rates in those tables depend on the sex and the adjusted age of each person on whose life the payments are based.  The adjusted age is:

- the age on the birthday that is nearest to the date on which the income plan takes effect; plus
- the age adjustment shown below for the number of Policy years that have elapsed from the Policy Date to the date that the income plan takes effect.  A part of a Policy year is counted as a full year.

| POLICY YEARS ELAPSED | AGE ADJUST-MENT- | POLICY YEARS ELAPSED | AGE ADJUST-MENT |
|---|---|---|---|
| 1 to 12 | 0 | 37 to 48 | -3 |
| 13 to 24 | -1 | 49 to 60 | -4 |
| 25 to 36 | -2 | 61 or more | -5 |

NORTHWESTERN1567
EXHIBIT B

## MINIMUM PAYMENT RATE TABLES
### Minimum Monthly Income Payments per $1,000 of Proceeds

**SINGLE LIFE INCOME PLAN**

| | SINGLE LIFE MONTHLY PAYMENTS | | | | | | |
|---|---|---|---|---|---|---|---|
| MALE ADJUSTED AGE* | CHOSEN PERIOD (YEARS) | | | FEMALE ADJUSTED AGE* | CHOSEN PERIOD (YEARS) | | |
| | ZERO | 10 | 20 | | ZERO | 10 | 20 |
| 55 | $ 2.78 | $ 2.76 | $ 2.70 | 55 | $ 2.67 | $ 2.66 | $ 2.61 |
| 56 | 2.85 | 2.83 | 2.76 | 56 | 2.73 | 2.72 | 2.67 |
| 57 | 2.92 | 2.90 | 2.82 | 57 | 2.80 | 2.79 | 2.73 |
| 58 | 3.00 | 2.98 | 2.89 | 58 | 2.88 | 2.86 | 2.80 |
| 59 | 3.09 | 3.06 | 2.96 | 59 | 2.96 | 2.94 | 2.86 |
| 60 | 3.18 | 3.15 | 3.03 | 60 | 3.04 | 3.02 | 2.93 |
| 61 | 3.28 | 3.24 | 3.10 | 61 | 3.13 | 3.10 | 3.00 |
| 62 | 3.38 | 3.33 | 3.18 | 62 | 3.22 | 3.19 | 3.07 |
| 63 | 3.48 | 3.43 | 3.26 | 63 | 3.32 | 3.28 | 3.15 |
| 64 | 3.60 | 3.54 | 3.34 | 64 | 3.42 | 3.38 | 3.23 |
| 65 | 3.72 | 3.65 | 3.42 | 65 | 3.53 | 3.49 | 3.31 |
| 66 | 3.85 | 3.77 | 3.50 | 66 | 3.65 | 3.60 | 3.39 |
| 67 | 3.99 | 3.90 | 3.58 | 67 | 3.78 | 3.71 | 3.47 |
| 68 | 4.14 | 4.04 | 3.66 | 68 | 3.91 | 3.84 | 3.55 |
| 69 | 4.31 | 4.18 | 3.74 | 69 | 4.06 | 3.97 | 3.63 |
| 70 | 4.48 | 4.34 | 3.82 | 70 | 4.22 | 4.11 | 3.71 |
| 71 | 4.68 | 4.50 | 3.90 | 71 | 4.39 | 4.26 | 3.79 |
| 72 | 4.88 | 4.67 | 3.97 | 72 | 4.57 | 4.42 | 3.86 |
| 73 | 5.11 | 4.85 | 4.03 | 73 | 4.77 | 4.59 | 3.93 |
| 74 | 5.35 | 5.04 | 4.09 | 74 | 4.98 | 4.77 | 4.00 |
| 75 | 5.62 | 5.24 | 4.15 | 75 | 5.22 | 4.96 | 4.06 |
| 76 | 5.91 | 5.45 | 4.19 | 76 | 5.48 | 5.16 | 4.11 |
| 77 | 6.23 | 5.67 | 4.23 | 77 | 5.76 | 5.36 | 4.16 |
| 78 | 6.58 | 5.89 | 4.26 | 78 | 6.07 | 5.57 | 4.21 |
| 79 | 6.95 | 6.11 | 4.29 | 79 | 6.41 | 5.78 | 4.24 |
| 80 | 7.37 | 6.33 | 4.31 | 80 | 6.78 | 6.00 | 4.27 |
| 81 | 7.83 | 6.56 | 4.33 | 81 | 7.20 | 6.22 | 4.30 |
| 82 | 8.32 | 6.77 | 4.34 | 82 | 7.65 | 6.43 | 4.32 |
| 83 | 8.87 | 6.98 | 4.35 | 83 | 8.15 | 6.64 | 4.33 |
| 84 | 9.47 | 7.17 | 4.35 | 84 | 8.69 | 6.85 | 4.34 |
| 85 and over | 10.13 | 7.36 | 4.36 | 85 and over | 9.29 | 7.04 | 4.35 |

**JOINT AND SURVIVOR LIFE INCOME PLAN**

| | JOINT AND SURVIVOR MONTHLY PAYMENTS (with 10 years certain) | | | | | | |
|---|---|---|---|---|---|---|---|
| MALE ADJUSTED AGE* | FEMALE ADJUSTED AGE* | | | | | | |
| | 55 | 60 | 65 | 70 | 75 | 80 | 85 and over |
| 55 | $ 2.37 | $ 2.50 | $ 2.59 | $ 2.66 | $ 2.70 | $ 2.73 | $ 2.75 |
| 60 | 2.48 | 2.66 | 2.82 | 2.95 | 3.04 | 3.09 | 3.13 |
| 65 | 2.55 | 2.79 | 3.04 | 3.26 | 3.43 | 3.55 | 3.61 |
| 70 | 2.59 | 2.89 | 3.22 | 3.56 | 3.87 | 4.10 | 4.24 |
| 75 | 2.62 | 2.95 | 3.35 | 3.81 | 4.29 | 4.72 | 5.02 |
| 80 | 2.64 | 2.99 | 3.42 | 3.97 | 4.63 | 5.30 | 5.85 |
| 85 and over | 2.65 | 3.01 | 3.46 | 4.06 | 4.84 | 5.71 | 6.52 |

*See Section 11.6

The amount of the payment for any other combination of ages will be furnished by the Company on request.

Monthly payment rates are based on 1.00% interest and the 2012 Individual Annuity Mortality Period Table with 125% of Projection Scale G2 and a 5.00% load. Mortality improvements are projected for 4 years plus the remaining life of the Annuitant.

ICC12.TT.SCL.(0513)                24

NORTHWESTERN1568
EXHIBIT B

# POLICY SPLIT PROVISION

**Policy Split Right.** While both Insureds are alive, the Owner may exchange this Policy for two policies (the "new policies"), one on the life of each Insured, if there is a change in federal estate tax law which results in either the permanent elimination of a marital deduction or the permanent repeal of the estate tax. This exchange may be made without evidence of insurability.

**Conditions.** The exchange may be made by meeting any conditions set by the Company, including the following:

a. the Company must receive a written request from the Owner no more than 180 days after the earlier of the date that the permanent elimination of a marital deduction takes effect or the date that the permanent repeal of the estate tax takes effect; and

b. any required costs are paid. These costs include the first premiums on the new policies and any difference in cash values between this Policy and the new policies.

**Terms of the New Policies.** The new policies will be issued on any life insurance plan agreed to by the Owner and the Company. The new policies will have the same Date of Issue and Policy Date as this Policy. The new policies will take effect on the date the written request to exchange this Policy for the new policies is received at the Home Office. This Policy will terminate when the new policies take effect.

The amount of each new policy will be one-half of the sum of the following:

● the Base Amount of this Policy; plus

● the amount of Additional Protection of this Policy then in force; plus

● the amount of any Paid-up Additions in force minus the amount of any unpaid additional premium used to purchase Paid-up Additions under Section 6.3 of this Policy.

The Cash Value of this Policy will be allocated to each new policy as determined appropriate by the Company. Any Policy Debt will be divided between the new policies in proportion to their Cash Values. Any assignment will continue on the new policies.

If the sum of the Cash Values of the new policies is less than the Cash Value of this Policy, the excess Cash Value will be used to purchase Paid-up Additions on the new policies.

The premium and charges for each new policy will be based on the Company's premium rates and charges in effect on the Policy Date of this Policy, the plan and the amount of the new policy and any additional benefits, the Insured's sex, the Insured's age and the Policy Date of this Policy, and the Insured's underwriting classification for this Policy.

If the Insured under the new policy is a Covered Insured under the Disability Waiver of Premium Benefit on this Policy at the time this Policy terminates pursuant to this provision:

● A new policy on a plan with flexible premiums payable to age 90 or later may be issued with a Waiver Benefit. If premiums are being waived on this Policy at the time the new policy takes effect, the new policy will be issued with the Payment of Selected Monthly Premium Upon Total Disability (or, if that benefit has been discontinued, the successor benefit then being issued by the Company), the Selected Monthly Premium amount will equal the premium payable on a Whole Life Paid Up at 90 plan (or, if that plan has been discontinued, the successor plan then being issued by the Company), and the Waiver Benefit for the new policy will be paid for as long as premiums would have been waived under this Policy.

● A new policy on a whole life plan with a level death benefit on which premiums are payable to age 90 or later may be issued with a Waiver of Premium Benefit. If premiums are being waived on this Policy at the time the new policy takes effect, the premium for the new policy must not exceed the premium payable on a Whole Life Paid Up at 90 plan (or, if that plan has been discontinued, the successor plan then being issued by the Company), and the premiums for the new policy will be waived for as long as premiums would have been waived under this Policy.

● A new policy on a whole life plan with fixed premiums and a non-level death benefit or a whole life plan on which all premiums are payable before age 90 may be issued with a Waiver of Premium Benefit only if the premiums are not being waived on this Policy at the time the new policy takes effect. If a Waiver of Premium Benefit is part of the new policy, it will apply only to a total disability that starts after the new policy takes effect.

Secretary
THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY

TT SCL PS (0608)

NORTHWESTERN1569
EXHIBIT B

# THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY
720 E. WISCONSIN AVENUE, MILWAUKEE, WISCONSIN 53202

**SURVIVORSHIP LIFE APPLICATION**
Page 1

## JOINT LIFE PROTECTION INSURANCE APPLICATION

☐ Companion policies  ☐ Life & Disability Application
☐ LTC Application
☐ Exam (NM, PME, MD) in Home Office

| POLICY NUMBER | Plan Group Number |
|---|---|
| | |

### FIRST INSURED (Younger) ON PAGES 1, 2, 3 AND 4, "INSURED" REFERS TO THE FIRST INSURED.

Has an application or informal inquiry ever been made to Northwestern Mutual Life for annuity, life, long-term care, or disability insurance on the life of the insured? ☒ Yes ☐ No  If yes, the last policy number is 22090039

1.  A. ☐ Mr. ☒ Mrs. ☐ Ms. ☐ Dr. ☐ Other_____

B. ☐ MALE  ☒ FEMALE

NAME: Karen Townsend
(FIRST, MIDDLE INITIAL, LAST)

| C. BIRTHDATE: (MONTH, DAY, YEAR) | D. STATE OF BIRTH (or Foreign Country): | E. TAXPAYER IDENTIFICATION NUMBER: |
|---|---|---|
| 02/12/1974 | Utah | 522490146 |

F. PRIMARY RESIDENCE:    STREET OR PO BOX: 12380 Jasper Pointe Way
CITY, STATE, ZIP (Country if other than U.S.A.): Castle Pines, CO 80108
E-MAIL ADDRESS: townsend.karen7@gmail.com

## APPLICANT

2.  Select ONLY ONE ☒ First Insured @ First Insured's address ☐ Other (Complete A, B and C)

A. ☐ Mr. ☒ Mrs. ☐ Ms. ☐ Dr. ☐ Other_____

PERSONAL NAME: *Karen Townsend*
(FIRST, MIDDLE INITIAL, LAST)

☒ FEMALE  ☐ MALE

RELATIONSHIP TO INSURED: self    BIRTHDATE: 2/12/74
(MONTH/DAY/YEAR)

OR  BUSINESS/TRUST NAME: _____

TYPE OF ORGANIZATION ☐ Trust ☐ Corporation ☐ Partnership ☐ Other type of Business_____

AUTHORIZED COMPANY REP/TRUSTEE NAME: _____

B. TAXPAYER IDENTIFICATION NUMBER: ███████

C. ADDRESS:    STREET OR PO BOX: 12380 Jasper Pointe Way
CITY, STATE, ZIP (Country if other than U.S.A.): Castle Pines, CO 80108
E-MAIL ADDRESS: to townsend.Karen7@gmail.com

## PREMIUM PAYER

3.  Select ONLY ONE ☐ ISA (Omit A through D below)  OR  ☒ First Insured (Complete D only)  ☐ Owner (Complete D only)
☐ Applicant (Complete D only)  ☐ Other (Complete A, B, C and D)

A. ☐ Mr. ☐ Mrs. ☐ Ms. ☐ Dr. ☐ Other_____

PERSONAL NAME: _____
(FIRST, MIDDLE INITIAL, LAST)

☐ MALE  ☐ FEMALE

BIRTHDATE: _____ (MONTH/DAY/YEAR)

OR  BUSINESS/TRUST NAME: _____

| B. TAXPAYER IDENTIFICATION NUMBER: | C. DAYTIME TELEPHONE NUMBER: |
|---|---|
| | Area Code ( ) |

Send premium and other notices regarding this policy to:
D. ADDRESS ☒ First Insured's Address ☐ Applicant's Address  OR ☐
STREET OR PO BOX: 12380 Jasper Pointe Way
CITY, STATE, ZIP (Country if other than U.S.A.): Castle Pines, CO 80108
E-MAIL ADDRESS: townsend.Karen7@gmail.com

90-1 JCL (0198) COLORADO    90-1934-80 (0313) NAICREPL

NB-506-1

06/21/2017 14:29:19

NORTHWESTERN1570
EXHIBIT B

SURVIVORSHIP LIFE APPLICATION
Page 2

**OWNER**  CAUTION: A MINOR OWNER CANNOT EXERCISE POLICY RIGHTS.

4. Select ONLY ONE: ■First Insured (Complete C only) ☐Applicant (Complete C only)
   ☐Other (Complete A, B and C)   ☐See attached supplement form

A. ☐Mr. ☐Mrs. ☐Ms. ☐Dr. ☐Other_____

PERSONAL
NAME: _____   ☐MALE
(FIRST MIDDLE INITIAL LAST)                ☐FEMALE

RELATIONSHIP TO INSURED:_____   BIRTHDATE: _____
OR  BUSINESS/TRUST                                    MONTH/DAY/YEAR
NAME: _____
RELATIONSHIP TO INSURED:_____

B. TAXPAYER IDENTIFICATION NUMBER: _____

C. ADDRESS: ■First Insured's Address ☐Applicant's Address ☐Premium Payer's Address  OR ☐
   STREET OR PO BOX: *12380 Jasper Pointe Way*
   CITY, STATE, ZIP (Country if other than U.S.A.): *Castle Pines, CO 80108*
   E-MAIL ADDRESS: *Karen, Townsend, Karen7@gmail.com*

5.-7. (Reserved)

**SPECIAL DATE (Complete this section only if a special policy date is being requested)**

8. A. Prepaid:    ☐ Short Term – Policy Date will coincide with ISA Payment Date (For monthly ISA only)

   ☐ Short Term to: _____    ☐ Backdate to _____
                    MONTH/DAY/YEAR                     MONTH/DAY/YEAR

   B. Nonprepaid: ☐ Specified future date: _____   ☐ Backdate to _____
                                      MONTH/DAY/YEAR                      MONTH/DAY/YEAR

**POLICY APPLIED FOR**

9. Joint Life Protection (See attached Policy Application Supplement)
10. If an additional benefit cannot be approved, should the company issue a policy without the benefit?   ☐Yes ☐No
11. Shall the PREMIUM LOAN provision, if available, become operative according to its terms?   ☐Yes ☐No
12.-13. (Reserved)
14. PREMIUM FREQUENCY: ☐Annually ☐Semiannually ☐Quarterly

**BENEFICIARY**

15. A. DIRECT BENEFICIARY          First, Middle Initial, Last          Relationship to Insured
    (1) _____*Payton R. Townsend*_____    *Daughter*
    (2) _____    _____
    (3) _____    _____
    Business organization or trust _____    _____

   B. CONTINGENT BENEFICIARY          First, Middle Initial, Last          Relationship to Insured
    (1) _____    _____
    (2) _____    _____
    (3) _____    _____

    Box (1) or (2) may be selected to include all of the children or brothers and sisters without naming them, or to add to the contingent beneficiaries named. Box (3) may be selected to provide for the children of a deceased contingent beneficiary; use only if contingent beneficiaries are named and/or Box (1) or (2) is checked. NOTE: The word "children" includes child and any legally adopted child.
    ☐(1) and all (other) children of the Insured.
    ☐(2) and all (other) brothers and sisters of the Insured born of the marriage of or legally adopted by_____
    and _____ before the Insured's death.
    ☐(3) any amount that would have been paid to a deceased contingent beneficiary, if living, will be paid in one sum and in equal shares to the children of that contingent beneficiary who survive and receive payment.

   C. FURTHER PAYEES          First, Middle Initial, Last          Relationship to Insured
    (1) _____    _____
    (2) _____    _____
   D. ☐SEE ATTACHED SUPPLEMENT FORM (To be used in place of designations above.)

90-1 JCL (0198)

NB-606-2

06/21/2017 14:29:19

NORTHWESTERN1571
EXHIBIT B

<u>**SURVIVORSHIP LIFE APPLICATION**</u>
**Page 3**

16. (Reserved)

## CONDITIONAL LIFE INSURANCE AGREEMENT

17. Has the premium for the policy applied for been given to the agent in exchange for the Conditional Life Insurance
    Agreement with the same number as this application?          ☐ Yes  ☒ No

## INSURANCE HISTORY

18. Has the Insured ever had life, disability or health insurance declined, rated, modified, issued with
    an exclusion rider, cancelled, or not renewed? If yes, explain in REMARKS.          ☐ Yes  ☒ No

19. When was the Insured's last examination or application for life, disability or accidental death insurance?
    Month _April_          Year _28_          Company _Northwestern Mutual_          OR          ☐ NONE

20. Does the Insured have any other life insurance in force, pending or contemplated in other companies?          ☒ Yes  ☐ No
    If yes, indicate Company Name, Individual (Ind) or Group (Grp) and identify the amount of In Force, Pending, or Contemplated.

### Life Insurance Amounts

| Company Name | Ind/Grp | In Force Amount | Pending Amount | Contemplated Amount | Accidental Death Amount |
|---|---|---|---|---|---|
| Midland National | I | 6.2 mil | — | | |
| | | | | | |
| | | | | | |

NOTE TO AGENT:  Refer to the *Applicant's Statement of Existing Coverage (90-2048)*. This form must be completed and signed
for every application.

21. As a result of this purchase will the values or benefits of any other life insurance policy or annuity contract,
    on any life, be affected in any way?          ☐ Yes  ☒ No

   NOTE TO AGENT:  If either question 21 above, or the question on the *Applicant's Statement of Existing Coverage*, is answered
   "yes," then the *Important Notice* must be completed and signed.

   If either question 21 above, or questions 1 or 2 on the *Important Notice* are answered "yes," this transaction <u>is a replacement</u> and:
   - the agent must provide the completed *Important Notice* to the applicant (the "replaced policy" information on the form must be completed in all cases)
   - the agent must submit a copy of the completed *Important Notice* to the Home Office
   - the agent must provide copies of all required sales materials to both the applicant and the Home Office
   - questions 21A, B, and C below must be answered

   Will this Insurance:
   A. replace Northwestern Mutual Life?          ☐ Yes  ☒ No
   B. replace other Companies?          ☒ Yes  ☐ No
   C. result in 1035 exchange?          ☐ Yes  ☒ No

22. (Reserved)

## REMARKS

90-1 JCL (0198)          NAICREPL


NB-606-3

06/21/2017 14:29:19

NORTHWESTERN1572
EXHIBIT B

| FIRST INSURED (First, Middle Initial, Last) | SURVIVORSHIP LIFE APPLICATION |
|---|---|
| Karen Townsend | Page 4 |

## PERSONAL HISTORY QUESTIONNAIRE — FIRST INSURED

23. Insured's Marital Status: ☐ Single, Widowed or Divorced ☒ Married

24. a. Insured is a citizen of: ☒ U.S.A. ☐ Other
   If other: Type of Visa: _____ Visa Number: _____
   b. How many years has the Insured resided in the U.S.A. immediately prior to completing this application? _____ years

25. Does the Insured regularly travel outside the U.S.A. or have plans to leave the U.S.A. for travel or residence?........................ ☒ Yes ☐ No
   If yes, explain in the chart below.

| Destination (List all Cities and Countries) | Number of Trips Last 12 Months | Number of Trips Next 12 Months | Duration of Each Trip (No. of Days) | Departure Date (Month/Year) | Purpose of Trip |
|---|---|---|---|---|---|
| Cancun, Mexico | 1 | | 8 days | 05/2016 | Vacation |
| | | | | | |
| | | | | | |

26. a. What is the Insured's occupation(s)? Program Manager _____
   What are the Insured's duties? _____
   b. Employer's Name: SWBC _____
      Address: 600 Grant Street Suite 300 _____
      City, State, Zip Code: Denver, CO 80203 _____
   c. How long has the Insured been employed? 3 _____ years (if less than 2 years, explain in REMARKS)

*Questions 27 through 30 are not required if the Insured is under age 16.*

27. Is the Insured a member of, or does the Insured plan on joining any branch of, the Armed Forces or reserve military unit? If yes, complete the Military Section. ............................ ☐ Yes ☒ No

28. Except as a passenger on a regularly scheduled flight, has the Insured flown within the past 2 years, or does the Insured have plans to fly in the future? If yes, complete the Aviation Section. ............................ ☐ Yes ☒ No

29. In the past 2 years, has the Insured participated in or does the Insured have plans to participate in: racing (automobile, snowmobile, motorcycle, boat or go-cart), underwater or sky diving, hang gliding, bungee jumping, mountain or rock climbing, or rodeos? If yes, complete the Avocation Section. ............................ ☐ Yes ☒ No

30. a. What is the Insured's automobile driver's license number? # 95-048-2546 _____ State CO _____
   or, ☐ the Insured does not have a driver's license.

   b. In the past 5 years, has the Insured been in a motor vehicle accident, has the Insured been charged with a moving violation of any motor vehicle law, or has the Insured's driver's license been restricted, suspended or revoked? If yes, complete the chart below ............................ ☐ Yes ☒ No

| Date | Type and Details (Speeding, Reckless Driving, Driving While Intoxicated, Etc.) | Action (Citation, Fine, Etc.) | Accident (Yes or No) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

## REMARKS

90-1 JCL (0198)

NB-606-4

06/21/2017 14:29:19

NORTHWESTERN1573
EXHIBIT B

Each insured consents to this application and attached supplements and declares that the answers and statements made on this application and attached supplements are correctly recorded, complete and true to the best of each insured's knowledge and belief. Answers and statements brought to the attention of the agent, medical examiner, or paramedical examiner are not considered information brought to the attention of the Company unless stated in the application. Statements in this application are representations and not warranties.

It is agreed that:

(1) If the premium is not paid when the application is signed, no insurance will be in effect. The insurance will take effect at the time the policy is delivered and the premium is paid, if: both insureds are living at that time; and the answers and statements in the application are then true to the best of each insured's knowledge and belief.

(2) If the premium is paid when the application is taken, no insurance will be in effect except as provided in the Conditional Life Insurance Agreement with the same number as this application.

(3) No agent is authorized to make or alter contracts or to waive any of the Company's rights or requirements.

The Owner of the policy applied for herein certifies, under penalties of perjury, (1) that the Taxpayer Identification Number given for the Owner on the second page of this application is the Owner's correct Taxpayer Identification Number (or the Owner is waiting for a number to be issued) and (2) the Owner is not subject to backup withholding either because the Owner has not been notified by the Internal Revenue Service (IRS) that the Owner is subject to backup withholding as a result of a failure to report all interest or dividends, or the IRS has notified the Owner that the Owner is no longer subject to backup withholding, and (3) that the Owner is a U.S. person (includes U.S. citizen, resident alien, and others as defined by the IRS). (See Taxpayer Identification Number Instructions.)

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

The signatures below apply to the application, the Policy Application Supplement and the certification of Taxpayer Identification Number.

| Signature of FIRST INSURED | Signature of SECOND INSURED |
| --- | --- |
| Signature of APPLICANT | Signature of OWNER (if other than Applicant, First or Second Insured) |
| Denver, CO<br>Signed by APPLICANT at CITY, COUNTY, STATE | 06/14/2017<br>Date signed by APPLICANT (MM/DD/YYYY) |
| Signature of LICENSED AGENT | |

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

90-1 JCL (0188) COLORADO

NB-606-7

06/21/2017 14:29:19

NORTHWESTERN1574
EXHIBIT B

1/2016 15:04    9706694747    DEE    LDM-

**THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY**
720 EAST WISCONSIN AVENUE, MILWAUKEE, WI 53202

**MEDICAL HISTORY QUESTIONNAIRE**

INSURED NAME (Print the name in this format: First Name, MI., Last Name)

*Karen    Townsend*

Each question must be individually asked and answered. For questions 3 – 12, use the DETAILS section to explain all "Yes" responses. Specify the question number and provide relevant details.

1. Do you have a regular or personal physician, doctor, or healthcare provider? If "Yes," complete the information below.......... ☑ Yes ☐ No
(If you have been receiving care from your provider for less than 2 years, please note your former provider's information in DETAILS section.)

| NAME | *Dr. Wilner, Larry* | TELEPHONE NUMBER *303 – 814 – 0505* | | |
|------|------|------|------|------|
| ADDRESS | *7280 Lagae Rd #J* | CITY *Castle Rock* | STATE *CO* | ZIP CODE *80108* |
| DATE LAST SEEN *6/2015* | REASON | *routine checkup* | | |

2. In the last 5 years, have you used tobacco, any other type of product containing nicotine, or a smoking cessation medication? If "Yes," complete the chart below (include smoking cessation medication in "Other"). **YES ☐ NO ☑**

| Type of Product | Date Last Used (mm/yyyy) | Frequency Used Per Year |
|---|---|---|
| ☐ Cigarettes | | |
| ☐ Nicotine patch or gum | | |
| ☐ Chew or snuff | | |
| ☐ Cigars or pipe | | |
| ☐ Other | | |

DETAILS
(1) Signs, symptoms, and diagnosis;
(2) Dates and results of any evaluations, tests, or treatments;
(3) Date of diagnosis, dates/frequency of service/care, and time since last symptoms or time since recovery;
(4) Names, complete addresses, and telephone numbers of all healthcare providers seen for the disease/condition.

3. In the last 10 years, have you been told you had, been diagnosed with, or treated for any of the following by a medical professional: **YES / NO**

a) High blood pressure or high cholesterol levels? ☐ ☑

b) Temporomandibular joint (TMJ) syndrome or any other disease or disorder of the eyes, ears, nose, sinuses, mouth, throat, or speech? ☐ ☑

c) Dizziness, vertigo, imbalance, seizure, epilepsy, loss of consciousness, muscle weakness or paralysis, neuropathy, difficulty walking, memory loss or impairment, tremor, headaches, concussion or any other disease or disorder of the brain or nervous system? ☐ ☑

d) Anxiety, depression, stress, bipolar disorder, attention deficit hyperactivity disorder (ADHD), post-traumatic stress disorder (PTSD), eating disorders or any other psychiatric or mental health disease or disorder? ☐ ☑

e) Asthma, emphysema, chronic obstructive pulmonary disease (COPD), wheezing, sleep apnea, sleep disorders, chronic cough, trouble breathing or any other disease or disorder of the lungs or respiratory system? ☐ ☑

f) Ulcer, blood in the stool, colitis (including Crohn's disease or ulcerative colitis), irritable bowel, hepatitis, recurrent heartburn, difficulty swallowing, pancreatitis, loss of appetite, recurrent or persistent diarrhea or vomiting, or any other disease or disorder of the esophagus, stomach, intestines, liver, gallbladder, or pancreas? ☐ ☑

g) Chest pain/tightness/discomfort, angina, coronary artery disease (CAD), heart attack, heart murmur, heart valve disease, heart failure, irregular heartbeat, stroke, transient ischemic attack (TIA), aneurysm or any other disease or disorder of the heart, blood vessels, or circulatory system? ☐ ☑

h) Sugar, blood or protein in the urine, chronic kidney disease (CKD), kidney stone or infection, sexually transmitted disease or any other disease or disorder of the kidney(s), urinary tract, bladder, prostate, reproductive organs, or breasts? ☐ ☑

i) Diabetes or elevated blood sugar, thyroid, pituitary, or adrenal disease or any other disease or disorder of the endocrine (glandular) system? ☐ ☑

j) Cancer, tumors, masses, cysts, nodules, or polyps? ☐ ☑

k) Anemia, bleeding or clotting disorder, recurrent infection, abnormal lymph node(s), allergies, or any disease or disorder of the immune system (except as related to the human immunodeficiency virus or HIV), blood, blood cells, or bone marrow? ☐ ☑

l) Arthritis, lupus, fibromyalgia, carpal tunnel syndrome, amputation, or any pain, disease, or disorder of the muscles, bones, joints (including but not limited to the knees and hips), spine, back, neck or extremities? ☐ ☑

m) Chronic fatigue syndrome, chronic pain, chronic or unexplained fatigue, malaise or fever of unknown cause? ☐ ☑

n) Psoriasis, eczema, atopic or contact dermatitis or any other disease or disorder of the skin? ☐ ☑

(Page 1 of 2) of N9-488-1

06/21/2017 14:29:19

NORTHWESTERN1575
EXHIBIT B

07/19/2016   15:04     9706634747                        DEE                                      PAGE   02/03

**MEDICAL HISTORY QUESTIONNAIRE**

|  |  | YES | NO |
|---|---|---|---|
| 4. a) Have you ever sought, received, or been advised to seek treatment, counseling, or participation in a support group for the use of alcohol or drugs? | | ☐ | ☑ |
| b) Have you ever been advised to reduce or discontinue the use of alcohol? If "Yes," explain in DETAILS section and indicate the average number of drinks (if any) you currently consume per week. | | ☐ | ☑ |
| c) In the last 10 years, have you used marijuana, cocaine, heroin, methamphetamine, hallucinogens, or any other illegal drug or substance? | | ☐ | ☑ |
| d) In the last 10 years, have you used tranquilizers, sedatives, amphetamines, narcotics, or any other controlled substance other than as prescribed by a physician or in excess of dosages prescribed by a physician? | | ☐ | ☑ |
| 5. Are you pregnant? If "Yes," what is the due date? _____ | | ☐ | ☑ |

6. Other than as previously stated on the application, in the last 5 years, have you:

|  | YES | NO |
|---|---|---|
| a) Consulted any other healthcare providers (medical doctors, psychiatrists, psychologists, counselors/therapists, chiropractors, naturopaths, occupational/physical/speech therapists or other providers)? | ☐ | ☑ |
| b) Been a patient in a hospital, clinic, rehabilitation center, or medical facility? | ☐ | ☑ |
| c) Had any diagnostic or screening tests (EKGs, x-rays, blood tests, CT scans, MRI scans, heart scans, biopsies, or other tests except for human immunodeficiency virus or HIV)? | ☐ | ☑ |
| d) Had surgery? | ☐ | ☑ |
| e) Been advised to have any test, consultation, hospitalization, or surgery that was not completed (except as related to the human immunodeficiency virus or HIV)? | ☐ | ☑ |
| 7. a) During the last 6 months, have you worked in your regular occupation less than your usual number of hours per week because of any sickness or injury? | ☐ | ☑ |
| b) In the last 5 years, have you requested or received payments, benefits, or a pension because of any injury, accident, sickness, disability, or impairing condition? | ☐ | ☐ |

8. Complete 8a and 8b.
   a) Do you have any immediate family members (including any living or deceased parents and siblings) who were ever diagnosed or treated by any member of the medical profession for heart disease, stroke, diabetes, kidney disease, cancer (e.g., melanoma, breast cancer, or other cancers), or any hereditary disease(s) or condition(s)? If "Yes," list any tests you may have had to evaluate inherited risk in DETAILS section ............................... ☐ ☑

   b) Provide the following information about your immediate family members including any conditions from 8a:

| | | | | | |
|---|---|---|---|---|---|
| Father | 6 6 | | | | |
| Mother | 63 | | | | |
| Sister(s) | 42  41 | | | | |
| Brother(s) | | | | | |

|  | YES | NO |
|---|---|---|
| 9. Complete 9b and 9b. Examiners - do not complete 9a. | | |
| a) Height _____    Weight _____ | | |
| b) Have you lost more than 10 pounds in the last 6 months? If "Yes," indicate the number of pounds lost _____ and explain the reason in DETAILS section. | ☐ | ☑ |
| 10. Have you ever tested positive for human immunodeficiency virus (HIV), or been diagnosed by a member of the medical profession with acquired immune deficiency syndrome (AIDS)? | ☐ | ☑ |
| 11. Other than as previously stated on this application, are you taking any medications or drugs (legal or illegal, prescription or non-prescription/over-the-counter, supplements, or medical marijuana) for any reason? If "Yes," list the medication(s)/drug(s) and the reason(s) for use in DETAILS section | ☐ | ☑ |
| 12. If the insured is 5 years of age or under: | | |
| a) What was the insured's birth weight? _____ lbs. _____ oz. | | |
| b) Was the insured born prematurely (gestational age < 37 weeks)? If "Yes," what was the insured's gestational age (in weeks) at birth _____ | ☐ | ☑ |
| c) Has the insured been evaluated, tested, or treated for or diagnosed with developmental delay or disorders, any growth concerns (length/height/weight), or failure to thrive (FTT)? | ☐ | ☑ |
| d) Has the insured received or been advised to receive early education services or occupational, physical, speech, or language therapy? | ☐ | ☐ |

I have reviewed my answers and statements in this application and declare that they are correctly recorded, complete, and true to the best of my knowledge and belief. Statements in this application are representations and not warranties.

Signature of INSURED (or Parent/Guardian)

Denver CO
Signed by INSURED at CITY and STATE

Signature of _____

3/24/17
DATE (MM/DD/YYYY)

☐ LICENSED AGENT (include agent) – non exam
☐ PARAMEDICAL EXAMINER – paramedical exam
☐ MEDICAL EXAMINER – medical exam

ICC15 90-4 (0315) REV

(Page 2 of 2) of
NM-403-2

06/21/2017 14:29:19

NORTHWESTERN1576
EXHIBIT B

**THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY**
MILWAUKEE, WISCONSIN (the "Company")
**PERSONAL HEALTH AND STATUS DECLARATION**

INSURED (FIRST, MI, LAST)
Karen Townsend

**This form is submitted for: (Select one)**

(1) [X] Delivery of Policy: Policy Number(s)   (1) 22247352   (2) _____   (3) _____
*(See Conditions for Delivery of Policy below)*

(2) [ ] New Application for Insurance *(Complete one copy and submit with new application)*

(3) [ ] Change of Policy: Policy Number _____ *(Complete one copy and submit with change request)*

(4) [ ] To add the _____ benefit to policy number _____ *(Complete one copy and submit with request)*

(5) [ ] Other _____

This declaration supplements and updates the answers provided in my most recent application for insurance sent to the Company. I understand that my most recent application may include more than one form, and always includes a medical underwriting form or questionnaire. If this declaration is submitted for (1) or (2) above, I understand that my most recent application to the company will be attached to the policy, including a copy of this declaration. I declare that my answers provided in my most recent application sent to the Company are still, to the best of my knowledge and belief, complete, true, and correct today. I declare that I am in good health and, specifically, that since providing the answers I have not:

1. experienced any signs or symptoms of, or been diagnosed or treated for, any disorders, illnesses, diseases, accidents or had any surgery;
2. had any diagnostic studies or medical tests (including blood tests, x-rays, EKGs, or other);
3. been a patient, had surgery, or been treated at a hospital, clinic, or other health care facility;
4. seen or consulted with any physicians or other health care providers (including psychiatrists, psychologists, chiropractors, counselors, therapists, or other);
5. taken any medication or drugs (prescription or nonprescription, legal or illegal);
6. had a change in the hours or duties in employment or occupation or begun to work in a new occupation;
7. had a financial loss, bankruptcy, or reduction in income;
8. been in a motor vehicle accident, been charged with a moving violation of any motor vehicle law or had a driver's license restricted or revoked;
9. applied for or contemplated applying for life, disability, health or long-term care insurance or had any life, disability, health, or long-term care insurance application on my life declined, rated, modified, cancelled, rescinded, or not renewed;
10. made a claim for benefits due to injury, accident, sickness, or disability.

**If there are any exceptions to any of the above statements, explain in full, including all names and addresses of health care providers and related dates in the space below (attach additional paper, if necessary).**

I understand and agree that any exceptions to my statements must be referenced in the space above. If this declaration is submitted for delivery of policy, I understand that my agent is not authorized to deliver any policy or collect premium until any exceptions are submitted to the Company for review, and the company has authorized delivery of the policy.

I declare that the answers and statements contained in this declaration are correctly recorded, complete and true to the best of my knowledge and belief. Statements in this declaration are representations and not warranties.

Signed at Castle Pines, CO   Date 10/20/2017   Signature _____
CITY, STATE                        (MM/DD/YYYY)          INSURED OR INFORMANT

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**CONDITIONS FOR DELIVERY OF POLICY**

Prior to delivery the agent **must** insert the Insured's copy in each policy and complete the statement below attesting to the fact that this insertion has been made.

1. If no exceptions are entered in the space provided, delivery of the policy may be made. The completed copy of this page, so attested, is to be sent to the **New Business or Disability Income Department** at the Home Office.
2. **If any exception is noted, the policy is not to be delivered or the premium collected until the attested copy of this page has been sent to the Home Office and delivery of the policy has been authorized.**

I attest that a true copy of this declaration has been attached to the policy

Date (MM/DD/YYYY) 10/20/2017   Signature of Agent _____

**HOME OFFICE COPY**

90-0600 (0601)          NB-30-1          COLORADO 90-0600-80
(Page 1 of 2) FE

10/23/2017 10:16:11

NORTHWESTERN1577
EXHIBIT B

PAGE   01/03

## THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY
720 EAST WISCONSIN AVENUE, MILWAUKEE, WI 53202

### MEDICAL HISTORY QUESTIONNAIRE

INSURED NAME (Print the name in this format: First Name, M.I., Last Name)
**Darren Townsend**

Each question must be individually asked and answered. For questions 3 – 12, use the DETAILS section to explain all "Yes" responses. Specify the question number and provide relevant details.

1. Do you have a regular or personal physician, doctor, or healthcare provider? If "Yes," complete the information below......... ☑ Yes ☐ No
(If you have been receiving care from your provider for less than 2 years, please note your former provider's information in DETAILS section.)

| NAME | **Dr Wilner Larry** | | TELEPHONE NUMBER **303-814-0505** | | |
|---|---|---|---|---|---|
| ADDRESS | **7280 Lafat Rd** | CITY **Castle Rock** | STATE | ZIP CODE **80108** | |
| DATE LAST SEEN **3/2017** | REASON | **routine checkup** | | | |

2. In the last 5 years, have you used tobacco, any other type of product containing nicotine, or a smoking cessation medication? If "Yes," complete the chart below (include smoking cessation medication in "Other"):

YES ☐ NO ☐

| Type of Product | Date Last Used (mm/yyyy) | Frequency Used (per Year) |
|---|---|---|
| Cigarettes | | |
| Nicotine patch or gum | | |
| Chew or snuff | | |
| Cigars or pipe | | |
| Other | | |

**DETAILS**
(1) Signs, symptoms, and diagnosis;
(2) Dates with results of any evaluations, tests, or treatments;
(3) Date of diagnosis, dates/frequency of sudden/care, and time since last symptoms or time since recovery;
(4) Names, complete addresses, and telephone numbers of all healthcare providers seen for the disease/condition.

3. In the last 10 years, have you been told you had, been diagnosed with, or treated for any of the following by a medical professional:

YES  NO

a) High blood pressure or high cholesterol levels? ......................................... ☐ ☑
b) Temporomandibular joint (TMJ) syndrome or any other disease or disorder of the eyes, ears, nose, sinuses, mouth, throat, or speech? ..................... ☐ ☑
c) Dizziness, vertigo, imbalance, seizure, epilepsy, loss of consciousness, muscle weakness or paralysis, neuropathy, difficulty walking, memory loss or impairment, tremor, headaches, concussion or any other disease or disorder of the brain or nervous system?............... ☐ ☑
d) Anxiety, depression, stress, bipolar disorder, attention deficit hyperactivity disorder (ADHD) post-traumatic stress disorder (PTSD), eating disorders or any other psychiatric or mental health disease or disorder? .................................................... ☑ ☐
e) Asthma, emphysema, chronic obstructive pulmonary disease (COPD), wheezing, sleep apnea, sleep disorders, chronic cough, trouble breathing or any other disease or disorder of the lungs or respiratory system? ........................................ ☐ ☑
f) Ulcer, blood in the stool, colitis (including Crohn's disease or ulcerative colitis), irritable bowel, hepatitis, recurrent heartburn, difficulty swallowing, pancreatitis, loss of appetite, recurrent or persistent diarrhea or vomiting, or any other disease or disorder of the esophagus, stomach, intestines, liver, gallbladder, or pancreas? ................................................................. ☐ ☑
g) Chest pain/tightness/discomfort, angina, coronary artery disease (CAD), heart attack, heart murmur, heart valve disease, heart failure, irregular heartbeat, stroke, transient ischemic attack (TIA), aneurysm or any other disease or disorder of the heart, blood vessels, or circulatory system? ......................................................... ☐ ☑
h) Sugar, blood or protein in the urine, chronic kidney disease (CKD), kidney stones or infection, sexually transmitted disease or any other disease or disorder of the kidney(s), urinary tract, bladder, prostate, reproductive organs, or breasts? .................... ☐ ☑
i) Diabetes or elevated blood sugar, thyroid, pituitary, or adrenal disease or any other disease or disorder of the endocrine (glandular) system? .......................... ☐ ☑
j) Cancer, tumors, masses, cysts, nodules, or polyps? ...................................... ☐ ☑
k) Anemia, bleeding or clotting disorder, recurrent infection, abnormal lymph node(s), allergies, or any disease or disorder of the immune system (except as related to the human immunodeficiency virus or HIV), blood, blood cells, or bone marrow? ................. ☐ ☑
l) Arthritis, lupus, fibromyalgia, carpal tunnel syndrome, amputation, or any pain, disease, or disorder of the muscles, bones, joints (including but not limited to the knees and hips), spine, back, neck or extremities? .............................. ☐ ☑
m) Chronic fatigue syndrome, chronic pain, chronic or unexplained fatigue, malaise or fever of unknown cause? .................................................... ☐ ☑
n) Psoriasis, eczema, atopic or contact dermatitis or any other disease or disorder of the skin?................................................................. ☐ ☑

**#3d.**
**mild depression**
**under control**
**with meds**

[page 1 of 2] of
NLR-0558-1

ICC13 92-4 (0310) REV

Thu 08/17/2017 11:40:18

NORTHWESTERN1578
EXHIBIT B

MEDICAL HISTORY QUESTIONNAIRE

4. a) Have you ever sought, received, or been advised to seek treatment, counseling, or participation in a support group for the use of alcohol or drugs? .......... YES ☐ NO ☑

b) Have you ever been advised to reduce or discontinue the use of alcohol? .......... ☐ ☑
If "Yes," explain in DETAILS section and indicate the average number of drinks (if any) you currently consume per week ....

c) In the last 10 years, have you used marijuana, cocaine, heroin, methamphetamine, hallucinogens, or any other illegal drug or substance? .......... ☐ ☑

d) In the last 10 years, have you used tranquilizers, sedatives, amphetamines, narcotics, or any other controlled substance other than as prescribed by a physician or in excess of dosages prescribed by a physician? .......... ☐ ☑

5. Are you pregnant? If "Yes," what is the due date? .......... ☐ ☑

6. Other than as previously stated on the application, in the last 5 years, have you:
a) Consulted any other healthcare providers (medical doctors, psychiatrists, psychologists, counselors/therapists, chiropractors, naturopaths, occupational/physical/speech therapists or other providers)? .......... ☐ ☑

b) Been a patient in a hospital, clinic, rehabilitation center, or medical facility? .......... ☐ ☑

c) Had any diagnostic or screening tests (EKGs, x-rays, blood tests, CT scans, MRI scans, biopsies, or other tests except for human immunodeficiency virus or HIV)? .......... ☑ ☐

d) Had surgery? .......... ☑ ☐

e) Been advised to have any test, consultation, hospitalization, or surgery that was not completed (except as related to the human immunodeficiency virus or HIV)? .......... ☐ ☑

7. a) During the last 6 months, have you worked in your regular occupation less than your usual number of hours per week because of any sickness or injury? .......... ☐ ☑

b) In the last 5 years, have you requested or received payments, benefits, or a pension because of any injury, accident, sickness, disability, or impairing condition? .......... ☐ ☑

8. Complete 8a and 8b.
a) Do you have any immediate family members (including any living or deceased parents and siblings) who were ever diagnosed or treated by any member of the medical profession for heart disease, stroke, diabetes, kidney disease, cancer (e.g., melanoma, breast cancer, or other cancers), or any hereditary disease(s) or condition(s)? If "Yes," list any tests you may have had to evaluate inherited risk in DETAILS section. .......... ☐ ☑

b) Provide the following information about your immediate family members including any conditions from 8a:

| FAMILY MEMBER | CURRENT AGE (if living) | MEDICAL CONDITION(S) | AGE AT DIAGNOSIS | AGE AT DEATH | CAUSE OF DEATH |
|---|---|---|---|---|---|
| Father | 75 | CA | | | |
| Mother | 74 | CA | | | |
| Sister(s) | 51, 49 | CA | | | |
| Brother(s) | | | | | |

9. Complete 9a and 9b. Examiners - do not complete 9a.
a) Height: ____ Weight: ____ YES ☐ NO ☑

b) Have you lost more than 10 pounds in the last 6 months? .......... ☐ ☑
If "Yes," indicate the number of pounds lost ____ and explain the reason in DETAILS section.

10. Have you ever tested positive for human immunodeficiency virus (HIV), or been diagnosed by a member of the medical profession with acquired immune deficiency syndrome (AIDS)? .......... ☐ ☑

11. Other than as previously stated on this application, are you taking any medications or drugs (legal or illegal, prescription or non-prescription/over-the-counter, supplements, or medical marijuana) for any reason? If "Yes," list the medication(s)/drug(s) and the reason(s) for use in DETAILS section. .......... ☑ ☐

12. If the insured is 5 years of age or under:
a) What was the insured's birth weight? ____ lbs. ____ oz.
b) Was the insured born prematurely (gestational age < 37 weeks)? If "Yes," what was the insured's gestational age (in weeks) at birth ____ .......... ☐ ☐
c) Has the insured been evaluated, tested, or treated for or diagnosed with developmental delay or disorders, any growth concerns (length/height/weight), or failure to thrive (FTT)? .......... ☐ ☐
d) Has the insured received or been advised to receive early education services or occupational, physical, speech, or language therapy? .......... ☐ ☐

SIGNATURE(S)
I have reviewed my answers and statements in this application and declare that they are correctly recorded, complete, and true to the best of my knowledge and belief. Statements in this application are representations and not warranties.

Signature of INSURED (or Parent/Guardian)

Signed by INSURED in CITY and STATE    Denver, Co

Signature of:
☐ LICENSED AGENT (include agent #) — non exam
☐ PARAMEDICAL EXAMINER — paramedical exam
☐ MEDICAL EXAMINER — medical exam

DATE (MM/DD/YYYY)    6/6/17

ICC13 90-410313 REV    (Page 2 of 2) eF NL 608

Handwritten notes (right margin):
#11. om eprazole for acid reflux.
Sertralin HCL for depression.
on cylnex.

#6 a, 6, c, d
12/2016
(R) knee acc.
Panorama medical center
Golden, Co 80401
x-ray, blood wor.

4/2017
(R) foot.
bonien removed.

5/2017.
(L) foot bonien. removed.

Panorama medical center
Golden Co 80401.
xray Blood wor.

NORTHWESTERN1579
EXHIBIT B

Thu 08/17/2017 11:40:18

THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY
MILWAUKEE, WISCONSIN (the "Company")
**PERSONAL HEALTH AND STATUS DECLARATION**

INSURED (FIRST, MI, LAST)

Darren Townsend

This form is submitted for: (Select one)

(1) ☒ Delivery of Policy: Policy Number(s)    (1) 22219582    (2) _____    (3) _____
*(See Conditions for Delivery of Policy below)*

(2) ☐ New Application for Insurance *(Complete one copy and submit with new application)*

(3) ☐ Change of Policy: Policy Number _____ *(Complete one copy and submit with change request)*

(4) ☐ To add the _____ benefit to policy number _____ *(Complete one copy and submit with request)*

(5) ☐ Other _____

This declaration supplements and updates the answers provided in my most recent application for insurance sent to the Company. I understand that my most recent application may include more than one form, and always includes a medical underwriting form or questionnaire. If this declaration is submitted for (1) or (2) above, I understand that my most recent application to the company will be attached to the policy, including a copy of this declaration. I declare that my answers provided in my most recent application sent to the Company are still, to the best of my knowledge and belief, complete, true, and correct today. I declare that I am in good health and, specifically, that since providing the answers I have not:

1. experienced any signs or symptoms of, or been diagnosed or treated for, any disorders, illnesses, diseases, accidents or had any surgery;

2. had any diagnostic studies or medical tests (including blood tests, x-rays, EKGs, or other);

3. been a patient, had surgery, or been treated at a hospital, clinic, or other health care facility;

4. seen or consulted with any physicians or other health care providers (including psychiatrists, psychologists, chiropractors, counselors, therapists, or other);

5. taken any medication or drugs (prescription or nonprescription, legal or illegal);

6. had a change in the hours or duties in employment or occupation or begun to work in a new occupation;

7. had a financial loss, bankruptcy, or reduction in income;

8. been in a motor vehicle accident, been charged with a moving violation of any motor vehicle law or had a driver's license restricted or revoked;

9. applied for or contemplated applying for life, disability, health or long-term care insurance or had any life, disability, health, or long-term care insurance application on my life declined, rated, modified, cancelled, rescinded, or not renewed;

10. made a claim for benefits due to injury, accident, sickness, or disability.

**If there are any exceptions to any of the above statements, explain in full, including all names and addresses of health care providers and related dates in the space below (attach additional paper, if necessary).**

**I understand and agree that any exceptions to my statements must be referenced in the space above. If this declaration is submitted for delivery of policy, I understand that my agent is not authorized to deliver any policy or collect premium until any exceptions are submitted to the Company for review, and the company has authorized delivery of the policy.**

I declare that the answers and statements contained in this declaration are correctly recorded, complete and true to the best of my knowledge and belief. Statements in this declaration are representations and not warranties.

Signed at  Golden, CO    Date  9/20/2017    Signature _____
          CITY, STATE              (MM/DD/YYYY)              INSURED OR INFORMANT

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**CONDITIONS FOR DELIVERY OF POLICY**

Prior to delivery the agent **must** insert the insured's copy in each policy and complete the statement below attesting to the fact that this insertion has been made.

1. If no exceptions are entered in the space provided, delivery of the policy may be made. The completed copy of this page, so attested, is to be sent to the **New Business or Disability Income Department** at the Home Office.

2. If any exception is noted, the policy is not to be delivered or the premium collected until the attested copy of this page has been sent to the Home Office and delivery of the policy has been authorized.

I attest that a true copy of this declaration has been attached to the policy.

Date (MM/DD/YYYY)  09/20/2017    Signature of Agent _____

**HOME OFFICE COPY**

NB-30-1

90-0600 (0601)

COLORADO 90-0600-80
(Page 1 of 2) FE

09/29/2017 09:38:21

NORTHWESTERN1580
EXHIBIT B

 Northwestern Mutual®

**It is recommended that you ...**

read your Policy.

notify your Northwestern Mutual agent or the Company at 720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202, of an address change.

call your Northwestern Mutual agent for information--particularly on a suggestion to terminate or exchange this Policy for another policy or plan.

**Important Notice Concerning Statements in the Application for Your Insurance**

Please read the copy of the Application attached in this Policy. Omissions or misstatements in the Application could cause an otherwise valid claim to be denied. Carefully check the Application and write to the Company at 720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202, within ten days of delivery, if any information shown on it is not correct and complete, or if any past medical history or other information has been left out of the Application. The Application is part of the Policy and the Policy was issued on the basis that the answers to all questions and the information shown on the Application are correct and complete.

**Election of Trustees**

The members of The Northwestern Mutual Life Insurance Company are its policyholders of insurance policies and deferred annuity contracts. The members exercise control through a Board of Trustees. Elections to the Board are held each year at the annual meeting of members. Members are entitled to vote in person or by proxy.

**SURVIVORSHIP WHOLE LIFE POLICY**
**WITH ADDITIONAL PROTECTION**
**INSURANCE PAYABLE ON SECOND DEATH**

**Participating**
Life Insurance Benefit payable on second death.
Premiums payable for period shown on page 3.

ICC12.TT.SCL.(0513)

REPLICA POLICY:
MAY NOT BE AN EXACT DUPLICATE OF THE ORIGINAL POLICY

NORTHWESTERN1581
EXHIBIT B