**Northwestern Mutual**®

| | | | |
|---|---|---|---|
| To: | **Justine Strupp** | Report: | **Final** |
| From: | **David Thorpe** | Insured: | **Darren Townsend** |
| Date: | **May 8, 2019** | Case #: | **4016529711** |

## INVESTIGATIVE REPORT

**Karen Townsend**
**12380 Jasper Pointe Way**
**Castle Pines, CO 80108**
**Phone: 720-550-0440**
**Date of Contact: May 8, 2019**

I contacted Ms. Karen Townsend to discuss the insurance matter involving the insured, who passed away on April 18, 2019. I began our discussion by explaining our need to gather information and to conduct a contestable review of the information provided at the time of application. I noted the policy was issued on October 20, 2017, and is within the two-year contestable period, which she understood. She was agreeable to providing me with the following information.

She had received the claim kit from the Home Office and I acknowledged that we had received the claim forms and signed Authorization forms.

**Summary of Death**

I asked Ms. Townsend to provide me with a brief summary of the insureds passing.

She stated that he has taken Zoloft for many years noting the medication kept him nice and even.  They have dated since she was 16 years old and he was 17 and he never had a deep depressive episode prior to 2019.  She stated Zoloft kept him even noting he would always focus on the negative side of things.  The medication was effective in treating him and keeping him balanced for many years.

Around January 2019 he began sleeping all of the time and had difficulty focusing at work. Within a short period of time his symptoms changed where he could not sleep and he became sleep deprived, and increasingly depressed.

He scheduled to evaluate with Dr. Larry Sanders - psychiatrist 141 W Davies Ave N # 107, Littleton, CO 80120 Phone: (303) 798-5002 who he saw in February 2019.  In their discussion with Dr. Sanders they were not certain if they real firm diagnosis of depression had actually been made.  In discussing their family medical history there was a relative who suffered from bipolar disorder which Dr. Sanders wanted to treat the insured for.  He prescribed several different medications to treat bipolar disorder, but nothing was effective. To the best of her knowledge bipolar was ruled out and he was diagnosed with extreme

NORTHWESTERN0521

EXHIBIT G

depression and additional medications were prescribed.  The changes in medications had side effects where he would become restless, exhausted, and had difficulty sleeping.

She stated he had also been seeing his therapist named Jill.  She could not recall her last name or frequency of his visits.

Her husband was becoming increasingly depressed and hopeless as no medications had been effective.  He then went to seek alternative treatments at Denver Wellness Associates (To the best of her knowledge) Phone: (720) 724-3668 – Fax: (303) 265-9839 Address: 300 S. Jackson St, Ste 240 Denver, Colorado 80209.  A friend had recommended he evaluate here to try TMS treatment.  He evaluated here on April 18, 2019, his date of death.

After leaving the appointment he called his wife and was advised he needed to try yet one more medication before he could try TMS treatment.  His wife stated he sounded increasingly depressed and having to try yet one more medication.  She stated she tried to encourage him, and he stated he was heading to work after they got off the phone.  Later in the afternoon she took her daughter to an appointment she had and tried to call her husband, but he did not answer the phone.  She attempted to contact him a second time but again he did not answer his phone.  She then contacted the school however they were not able to confirm if he had arrived that afternoon.  They suggested she try to ping his phone.

She pinged his phone which was located at Daniels Park, which she noted is a beautiful and scenic area where you can hike.  She thought maybe he went to the park to relax and walk.  She found his vehicle in the parking lot which was unlocked with his keys and phone in the car.  She felt this was awfully unusual and became very concerned.  She started walking down the trailhead and came across his body lying in the scrub brush.  There was a gun and he had shot himself.  She contacted 911.  911 found a receipt from Cabela's where he had purchased the gun and ammunition that afternoon.

**Application and Medical History Review**

Ms. Townsend confirmed that she and Darren have resided at their home address since 2004. She has known the Insured since high school where they dated prior to getting married.

Our insured had worked for the Colorado School of Mines as the Athletic Equipment Manager.  He worked full-time and did not miss days at work due to sickness, illness or other.  She stated he had an excellent attendance record.

His medical health insurance was through United Health Care.

His primary care doctor was Dr. Lawrence Wilner 303-814-0505.  She stated he is a family practice doctor who also has an urgent care facility.  If he needed urgent care, he would have seen to Dr. Wilner.

Regarding his medical and medication history, she was aware he took Omeprazole for acid reflux on a regular basis.  She was aware he evaluated with Ms. Melissa J. Butler, Neurology of The Rockies 9235 Crown Crest Blvd Ste 200 Parker, CO 80138 (303) 840-

NORTHWESTERN0522

EXHIBIT G

5051, for in essential tremor he had in the past few months.  She cannot recall the exact date.  She believes he was prescribed Propranolol, which she took for a brief time.

She was also aware he saw Dr. Laura C. Anderson - Psychiatrist / Retired 950 S Cherry St Denver, CO 80246 Phone: (303) 300-0220 who prescribed medication for his depression. He also saw Dr. Larry Sanders - psychiatrist 141 W Davies Ave N # 107, Littleton, CO 80120 Phone: (303) 798-5002, who she noted would have a list of all the medications he was taking. She could not recall names of other therapists he has seen over the years who have prescribed Zoloft.

For bipolar medication she was aware he was first tried on Latuda.  She could not recall what else Dr. Sanders prescribed.

If he needed prescriptions filled, he would have them filled at Walgreens in either Castle Pine or Highlands Ranch, CO.

I explained that I will be reviewing each of the body systems to help prompt any memories about past accidents, illnesses or testing performed in the 10 years prior to the policy being issued. I reminded her that the policy was issued on October 20, 2017. She told me she understood.

She was not aware of the insured having anxiety, stress ADHD, or PTSD.  She was aware he was treating for depression for many years.

She was aware that he treated as an inpatient in October 2018 for two days at Highland Behavioral Health 8565 Poplar Way, Littleton, CO 80130 Phone: (720) 348-2800.  She stated this is when his symptoms began to increase and became significantly worse in January 2019.

She was unaware of any musculoskeletal difficulties including broken bones, muscle complaints, tendon or joint injuries, or fibromyalgia.  She stated he did have a left knee ACL repair in December 2016, as well as right and left foot bunions removed in April and May 2017 respectively.  She stated he used to be an avid runner until his ACL repair.

She was unaware of any cardiovascular difficulties including CAD, High BP, stroke, TIA, heart attacks, blood disease or bleeding.

The insured had no history of neurological difficulties including any head injuries, headaches, seizures, memory issues, weakness, or balance difficulties.

He had no history of respiratory difficulties including sleep disorders, chronic cough, asthma, COPD, bronchitis, or lung cancer.

She indicated the insured had no history of gastrointestinal difficulties including IBS, ulcers, colitis, problems swallowing or vomiting.  The only thing she is aware of was his acid reflux.

NORTHWESTERN0523

EXHIBIT G

He had no history of diabetes or elevated blood sugars, thyroid, pituitary, or adrenal disease or any other disease or disorder of the endocrine (glandular) system to include chronic fatigue or weight gain.

In addition, she did not recall any prior history of lymphatic system difficulties including anemia, bleeding or clotting disorder, recurrent infection, abnormal lymph nodes, allergies, and any disease or disorder of the immune system.

He had no history of integumentary system disorders including eczema, psoriasis, or rosacea.

She indicated the insured had no history of genitourinary difficulties with the kidney, stones, bladder, UTIs, or urinary obstruction.

She did not recall any no history of hormonal imbalance, cancers, hernias or STDs.

She was unaware of any conditions, diseases or disorders that affected any other bodily system such as cancers, tumors, or masses.

She reports that the insured had no history of any difficulties with alcohol or drug use and has not seen or been advised to seek treatment or counseling for drug or alcohol use.

In the 5-year period prior to policy issue, she is unaware of the insured consulting with any healthcare providers, counselors, chiropractors, naturopaths, or physical / occupational / speech therapists.  Again, she noted he may have seen some other therapists for depression which she could not recall the names of.

In the 2-year period prior to policy issue and after, she indicated the insured did not participate in any hazardous activities such as racing (automobile, motorcycle, boat, go-cart or snowmobile); scuba diving, skydiving; hang gliding or paragliding, bungee or BASE jumping; mountain, rock, or ice climbing; rodeos; boxing, wrestling, or mixed martial arts.

Other than as a passenger on a regularly scheduled commercial flight, he has not flown in the 2-years (prior or after) policy issue.

In the 5 years prior to policy issue, she is unaware of any license restrictions (suspended or revoked), accidents or DUI's that the insured may have had.  She stated he did have one speeding ticket.

In the 12 months prior to policy issue they traveled to Cancún, Mexico in May 2016 for vacation.

She is unaware of any civil or criminal legal actions or pending charges the insured may have had.

**Discussion**

I thanked her for speaking with me and extended our company condolences for her loss. I explained that the home office will be reviewing the information we discussed and if any

NORTHWESTERN0524

EXHIBIT G

additional information is needed, we would be in contact with her accordingly. She stated she would be glad to provide anything additional we might need to assist us with our review and evaluation.

 She had no questions for me at this time, but I told her to feel free contacting you or I should she have any questions. I thanked her for speaking with me and this completed our conversation.

NORTHWESTERN0525

EXHIBIT G