IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02809-KLM

KAREN TOWNSEND,

        Plaintiff,

v.

THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY,

        Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

        This matter is before the Court on the **Motion for Summary Judgment of Defendant The Northwestern Mutual Life Insurance Company** [#41][1] ("Defendant's Motion"), **Plaintiff's Motion for Partial Summary Judgment** [#44] ("Plaintiff's Motion") ("summary judgment motions") and **Defendant's Rule 702 Motion to Exclude Opinions of Plaintiff's Proffered Expert Laura Parker** [#37] (the "Motion to Exclude") (collectively "Motions"). The primary issue to be determined in connection with the summary judgment motions is whether Defendant Northwestern Mutual Life Insurance Company ("Northwestern") was entitled to deny coverage and rescind the life insurance policies at issue in this case based on a material misstatement by Plaintiff's deceased husband Darren Townsend about drug use. This turns on the admissibility of the medical records indicating such drug use, and a finding on this issue will both determine whether summary

_____

[1] "[#41]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

1

judgment is appropriate on Plaintiff's breach of contract claim and impact the bad faith claim.   The opinion of Laura Parker, who has been retained as an expert on Northwestern's handling of Plaintiff's claim, addresses the bad faith claim as well as other topics pertinent to the summary judgment motions.

The Court has reviewed the Motions [#37, #41, #44], the Responses [#40, #50, #49], the Replies [#45, #54, #55], the case file, and the applicable law, and is sufficiently advised in the premises.   For the reasons set forth below, Defendant's Motion [#41] is **granted**. Plaintiff's Motion [#44] is **denied**.  The Motion to Exclude [#37] is **granted in part** and **denied as moot in part**.

### I.  Material Facts Pertinent to Resolution of the Summary Judgment Motions

Unless otherwise noted, the facts set forth below are deemed to be undisputed. The Court deems a fact to be disputed only when it is denied in compliance with Section III.B of the KLM Civil Motions Practice Standards [#20].[2]  The Court has not cited to the evidence supporting undisputed facts, unless quoting the evidence or when the Court deems the evidence to be particularly instructive as to a fact.  Further, the Court has considered all the material facts, even though it has not discussed all of them in this Order. Some of the facts are discussed in Section III, *infra*, rather than in this section.

Plaintiff was married to Darren Townsend.  Mr. Townsend died by suicide on April 18, 2019.

---

[2]  For example, when a party does not simply admit or deny the facts set forth in Defendant's Statement of Facts, but admits to them on some type of limited basis or alters the facts, this is not a proper denial and those facts are deemed admitted.  Further, when there is a denial that is not supported by evidence, these facts are also deemed admitted.  Finally, responses that documents "speak for themselves" do not constitute valid denials or create genuine issues of material fact. *See Lua v. QBE Ins. Corp.*, 421 F. Supp. 3d 1082, 1085 n.5 (D. Colo. 2019).

Northwestern issued Policy No. 22219582, insuring the life of Mr. Townsend (Defendant's Motion [#41], Ex. A) ("Individual Policy"), and Policy No. 22247352, insuring the lives of Plaintiff and Mr. Townsend (*id.*, Ex. B) ("Survivorship Policy") (collectively "Policies"), both providing life insurance coverage according to their terms and conditions. Plaintiff Karen Townsend was the beneficiary on the Individual Policy.

Both Policies include the following provision, under Section 1.4, Incontestability:

> . . . [T]he Company will not contest this Policy after the Policy has been in force, during the lifetime of the Insured, for two years from the Date of Issue . . . . In issuing the insurance, the Company has relied on the application(s). While the insurance is contestable, *the Company, on the basis of a material misstatement in the application(s), may rescind the insurance or deny a claim.*

*Def.'s Mot.* [#41], Ex. A at 1525; Ex. B at 1544 (emphasis added). Northwestern issued the Policies based on information the Townsends provided in applying for the Policies.

The information provided in the applications for the Policies included a Medical History Questionnaire ("MHQ") signed on June 6, 2017, by Mr. Townsend. The MHQ stated an answer of "no" to question 4(c): "In the last ten years, have you used . . . cocaine, . . . or any other illegal drug or substance?" *Def.'s Mot.* [#41], Ex. C at 576. Irina Rountree, who completed the MHQ, stated in her affidavit that she followed her routine practice with Mr. Townsend in connection with the MHQ. *Id.*, Ex. P, ¶¶ 3-8. This included asking Mr. Townsend word-for-word the drug use question on the MHQ, recording his answer word-for-word, and having him review and sign the MHQ. *Id.*[3]

---

[3] While Plaintiff avers that it doesn't makes sense that Ms. Rountree read every question on the MHQ exactly as it appears and recorded verbatim Mr. Townsend's request, this is speculation and does not refute Ms. Rountree's affidavit.

Mr. Townsend also signed Personal Health and Status Declarations ("PHSDs") dated August 16, 2017, September 20, 2017, and October 26, 2017, stating that the information provided in the MHQ was still correct.

After Mr. Townsend's death, Plaintiff submitted a claim for benefits under the Individual Policy.  Northwestern performed what it terms a "contestable review" with respect to application representations made by Mr. Townsend as part of underwriting for the Policies.

Northwestern's review included obtaining records from Mr. Townsend's medical providers through release authorizations for such records, including Highlands Behavioral Health ("Highlands"), a mental health treatment facility.[4]   Mr. Townsend had been involuntarily admitted to Highlands on October 15, 2018, after a suicide attempt the previous afternoon.  Mr. Townsend was transferred to Highlands by ambulance, on a gurney, after initially presenting to Sky Ridge Medical Center ("Sky Ridge") for treatment of his slashed wrist.  The medical records indicate that Mr. Townsend had consumed four-five alcoholic drinks that afternoon.

---

[4]  While Plaintiff denies that all such records constitute "medical records" (Response [#50] at 2-3), Plaintiff provides no evidence or factual basis for this denial in her Response to Defendant's Motion.  To the extent that Plaintiff's expert Laura Parker opines that a mental health facility's "intake note" as to cocaine use is not a medical record, the Court grants the Motion to Exclude [#37] as to such opinion.  Ms. Parker's experience in the insurance arena does not qualify her to make such opinions, and the opinions are without reliable factual or methodological basis in insurance industry standards.  Ms. Parker's opinion on this issue appears to be pure *ipse dixit*. *See United States v. Nacchio*, 555 F.3d 1234, 1258 (10th Cir. 2009) (stating that an *ipse dixit* conclusion, or "simply 'taking the expert's word for it[,]'" is not admissible.)  Moreover, there is no evidence that Ms. Parker has any sort of medical training or expertise (as opposed to generalized claims experience) that would allow her to decide whether an "intake note" such as the Highlands Record is or is not a medical record.  Finally, Ms. Parker's opinion does not address the admissibility of such records under Rule 803(6) and (4), which is a central issue in the summary judgment motions. This issue is addressed by the Court in Section III.A.1, *infra*.

The Highlands records included an October 15, 2018, entry within a Comprehensive Assessment Tool report (hereinafter "Highlands Record") stating that Mr. Townsend answered "yes" to whether he had used any psychoactive or mood-altering substances within the past 12 months, including cocaine.[5]  The Highlands Record further stated that Mr. Townsend had used cocaine "1-2 x", with first use at age 43 and last use in March 2018.  *Def.'s Mot.* [#41], Ex. F.  As Mr. Townsend's date of birth was June 7, 1973, the period during which he was age 43 was June 7, 2016 - June 6, 2017.[6]   The Court notes, as previously discussed, that the MHQ was signed on June 6, 2017, so drug use at age 43 by Mr. Townsend would contradict his statement that he had not used cocaine within the past ten years.  By contrast, drug use at age 44 would not be relevant to the time frame addressed in the MHQ.

Also during its claim investigation, Northwestern interviewed Plaintiff.  Plaintiff reported that Mr. Townsend had no history of any difficulties with drug use and had not sought or been advised to seek treatment or counseling for drug use.

Under Northwestern's underwriting standards, a policy applicant's use of cocaine within one year before application results in an automatic decline of the application for life insurance.   Information and medical records Northwestern had obtained during underwriting for the Policies did not disclose any cocaine use by Mr. Townsend.

Northwestern denied Plaintiff's claim by letter dated September 11, 2019.  In that letter, Northwestern noted the information from the Highland Record stating that Mr.

---

[5]  The issue of admissibility of this and other references in the medical records in this case is discussed in Section III.A.1, *infra*.

[6]  Mr. Townsend would have been 44 on the date of his indicated last use in March 2018.

Townsend had used cocaine at age 43.  *Def.'s Mot.* [#41], Ex. K.  The letter stated that the Policies would not have been issued had Northwestern been aware of Mr. Townsend's cocaine use during the ten-year period before the MHQ was completed; that the Policies were rescinded and the premiums were being refunded; and that Plaintiff was invited to submit additional information for Northwestern's consideration.  *Id*.  Plaintiff did not provide Northwestern with further information regarding Mr. Townsend's cocaine use before filing the present lawsuit.

While Plaintiff states in response to facts in the previous paragraph that the letter (Defendant's Exhibit K) speaks for itself, her only specific denial relates to Northwestern's representation as to the Survivorship Policy.  Plaintiff avers as to that issue that the letter states the Survivorship Policy would have been underwritten differently with increased premiums if Mr. Townsend had used cocaine when he was 43.  In reply, Defendant asserts, and the Court agrees, that Plaintiff has no factual basis for her denial.  Exhibit K states as to this issue, "Had Northwestern Mutual been aware of [Mr. Townsend's] prior history of cocaine use at the time of application, the applications would have been underwritten in a different manner . . . *and a different Survivorship policy with increased premiums would have been issued* as he would not have been considered individually insurable" (emphasis added).  Thus, the Survivorship Policy as issued by Northwestern would not have issued had Northwestern known of Mr. Townsend's cocaine use.

With the Rule 26 disclosures in this action, Plaintiff produced medical records from Mr. Townsend's treatment in the emergency department at HealthOne/Sky Ridge ("Sky Ridge") shortly before his admission to Highlands.  The records included an October 14, 2018, entry within a Behavioral Health Assessment report for Mr. Townsend ("Sky Ridge

Record") stating as to "DRUG USE" that drugs or illegal substances were used within the last 12 months, that the drug was cocaine and was used on an "episodic" basis, that the age of onset of use of the drug was 43 years old, and that it was last used on March 28, 2018.  Def.'s Mot. [#41], Ex. L.

Jeremiah (Jero) Repinski, who authored the Highlands Record, gave deposition testimony which included the following:  (1) he is a licensed professional counselor and certified addiction counselor (Defendant's Motion [#41], Ex. M, Repinski Dep. at 10:7-15[7]); (2) Mr. Repinski wrote down what Mr. Townsend told him regarding age of first use of cocaine; "I wrote down 43, and so I'm led to believe he said 43" (*id.* 51:2-4; 57:18-23;70:12-13); (3) Mr. Repinski asked more questions and was "more precise" in recording cocaine usage, as opposed to other substances, reported by a patient because cocaine use can result in severe depressive reactions and is of particular interest to the Highlands doctors (*id.* 69:19-70:8); and (4) Mr. Repinski adheres to HIPAA privacy requirements and would refuse to speak with persons seeking information about the Highlands Record (including Northwestern) without authorization (*id.* 12:18-13:2; 13:25-14:22; 58:2-17).

---

[7]  Plaintiff admits that Mr. Repinski has a Licensed Professional Counselor designation but denies that Mr. Repinski is a certified addiction counselor.  *Pl.'s Mot.* [#44], Ex. 1 (showing that Mr. Repinski's certification has expired).  This is not relevant to the Motions, however, as it appears that Mr. Repinski was a certified addiction counselor when he treated Mr. Townsend and when his deposition was taken in this matter.  The referenced expiration occurred afterward.  *See Def.'s Reply* [#55] at 3 (explanation as to ¶ 17(a)).  To the extent that Plaintiff's expert Ms. Parker opines that Mr. Repinski is not a medical professional, again the Court finds that Ms. Parker's experience in the insurance arena without any type of medical training or expertise does not qualify her to state such opinions.  Furthermore, Ms. Parker disregards Mr. Repinski's role as a licensed professional counselor and certified addiction counselor at the time the Highland Record was issued. Accordingly, Ms. Parker's opinion on this issue is excluded.  Ultimately, however, it is not material to the summary judgment motions whether Mr. Repinski was a certified addiction counselor.

Mr. Repinski acknowledged that he "failed to check off the cocaine box on the section of the boxes[,]" stating that he "sometimes would be in a rush or hurry, and I would have maybe forgotten to do it on that occasion." *Def.'s Mot.* [#41], Ex. M, Repinski Dep. at 63:19-23.  Mr. Repinski further stated he "would have written in the name of the drugs in the column" and this was "my own little petty rebellion against the redundancies of the paperwork." *Id.* at 23-25.  Finally, Mr. Repinski testified that while patients try to provide accurate answers sometimes they are unable to do so.  He stated, "[t]hat's frequently the case, especially at this hour of the night" when they're probably tired and "want to get this done with and over with as quickly as possible[,]" and "there's all sorts of reasons why you not get the most accurate information at the time of evaluation, especially on an overnight shift." *Pl.'s Mot.* [#44], Ex. 7, Repinski Dep. at 75:2-16.  However, Mr. Repinski testified that he asked more questions and was "more precise" in recording cocaine usage reported by a patient, as opposed to other substances, because cocaine use can result in severe depressive reactions and is of particular interest to the Highlands doctors. *Id.* at 69:19-70.

Carmen Merwin, who authored the Sky Ridge Record, interviewed Mr. Townsend while he was at Sky Ridge and before his transfer to Highlands.  Mr. Townsend was on an "M-1 hold" at Sky Ridge to assess whether he should be admitted to a mental health facility.  Ms. Merwin gave deposition testimony in this case that included the following: (1) she prepared the Sky Ridge Record based on information from Mr. Townsend (Plaintiff's Motion [#44], Ex. 10, Merlin Dep. at 42:16-43:4); (2) her routine practice was to accurately record what patients told her; she would ask patients about cocaine use; the notation that Mr. Townsend first used cocaine at age 43 was information provided by Mr. Townsend

(*id*. at 35:15-19, 42:16-43:4, 75:2-18); (3) she testified "that age of onset I would say is fairly accurate as to what the client is reporting because that's a much easier number to come up with than a calendar day" (*id*. 76:13-16); (4) she would take notes during her interviews and then immediately input the information into a computer program (*id*. 48:24-49:19); and (5) she would be unwilling to speak to individuals about the Sky Ridge Record without authorization (*id*., 90:5-91:11).

The form Ms. Merwin completed did not look like the record from the computer system, and she did not recall specifics about the interview with Mr. Townsend including, in particular, the discussion about drug use.   *Pl.'s Mot.* [#44], Merlin Dep. at 20:12-18, 46:25- 47:9, 65:3-17, 68:24-69:18.

Northwestern deposed Plaintiff, who testified that Mr. Townsend admitted to her in June 2018 that he had tried cocaine once earlier that year.

## II.  Standard of Review

### A.    Summary Judgment

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary.   *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Pursuant to Fed. R. Civ. P. 56(a), summary judgment should be entered if the pleadings, the discovery, any affidavits, and disclosures on file show "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  The burden is on the movant to show the absence of a genuine issue of material fact.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323).

When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler*, 144 F.3d. at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing Celotex, 477 U.S. at 324).

Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2738 (4th ed. 2017).

When the parties file cross motions for summary judgment, the Court is "entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts.'" *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted). Cross motions for summary judgment must be treated separately –

the denial of one does not require the grant of another. *Buell Cabinet v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

**B.     Motion to Exclude**

Expert opinion testimony is admissible under Fed. R. Evid. 702 if the expert is qualified to render the opinion, and the opinion is both reliable and relevant. An opinion is "reliable" if the "reasoning or methodology of the expert is valid" – that is, "supported by good grounds, based on what is known," and "can be applied to the facts in issue." *Lua v. QBE Ins. Corp.*, No. 18-cv-01233-KLM, 2019 WL 5104477, *2, n.3 (D. Colo. Oct. 11, 2019) (internal quotations omitted). An opinion is relevant if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* The testimony's proponent has the burden of demonstrating compliance with Rule 702. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

The underlying basis for expert opinion must be of sufficient probative force and reliability that a reasonable expert could base an opinion on such facts. *See In re Breast Implant Litigation*, 11 F. Supp. 2d 1217, 1234 (D. Colo. 1998); Fed. R. Evid. 703. Thus, admissible opinions must be based on "more than subjective belief or unsupported speculation." *Id.* at 1222; *O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 927 (D. Colo. 2017).

Finally, the expert opinion must not invade the province of the jury or of the judge. *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988). Thus, the expert's testimony may not encroach upon the court's "authority to instruct the jury on applicable law, for it is axiomatic that the judge is the sole arbiter of the law and its applicability." *Id.* Further, the expert "may not simply tell the jury what result it should reach without providing any

explanation of the criteria on which that opinion is based or any means by which the jury can exercise independent judgment." *O'Sullivan*, 253 F. Supp. 3d at 929.

### III.  Analysis

### A.    Summary Judgment Motions

As noted previously, Plaintiff sues for breach of contract and bad faith in connection with Northwestern's refusal to pay the life insurance claim submitted by Plaintiff. Defendant's Motion [#41] seeks judgment as a matter of law on both claims.  As to the breach of contract claim, Northwestern argues that summary judgment is appropriate because Plaintiff's late husband made a material misstatement in applying for the Policies which entitled Northwestern to rescind the Policies. *Def.'s Mot.* [#41] at 1.  Northwestern thus asserts that Plaintiff cannot prove that it breached the policies by denying coverage for Plaintiff's claim for policy benefits. *Id.*  Northwestern further asserts that Plaintiff cannot prove bad faith as it cannot demonstrate that Northwestern acted without a reasonable basis in denying the claim. *Id.* at 2.   Plaintiff's Motion [#44] seeks judgment as a matter of law on the breach of contract claim, arguing that Northwestern cannot demonstrate through admissible evidence that Mr. Townsend made a material misrepresentation on his application entitling it to rescind the Policies. *See id.* at 1.  The Court thus turns to those issues.

### 1.    Breach of Contract

Northwestern avers that the fact Mr. Townsend told two different medical providers (Sky Ridge and Highland) that he used cocaine during the one-year period before his policy application is a material misrepresentation as to his drug use by Mr. Townsend which allowed Northwestern to deny coverage and rescind the policies.  As discussed in

Section I, *supra*, the Policies allow Northwestern to rescind the insurance or deny a claim if a material misstatement is made in the applications.  Mr. Townsend answered "no" to the MHQ question regarding cocaine use during the preceding ten years, and he reaffirmed the continuing accuracy of the MHQ representations in three subsequent PHSD submissions.  This "no" answer in the MHQ was contrary to his admission of cocaine use at age 43, within one year before the MHQ, as reported in the Highlands Record and, as discovered later by Northwestern, in the Sky Ridge Record.[8]

Plaintiff does not deny that the statements of cocaine use, if accurate, give rise to a material misrepresentation that would allow Northwestern to rescind the Policies and entitle Northwestern to judgment as a matter of law on the breach of contract claim. However, Plaintiff asserts that Mr. Townsend's statements of cocaine use in his medical records are inadmissible hearsay.  As Northwestern has no admissible evidence establishing that Mr. Townsend made a material misrepresentation entitling it to rescind the Policies, Plaintiff argues that judgment is appropriate as a matter of law in her favor on the breach of contract claim.  In other words, Plaintiff avers that the undisputed facts demonstrate that there is no admissible evidence that Mr. Townsend was 43 years old when he tried cocaine for the first time – the factual accuracy of which is necessary in order for Northwestern to be establish that Mr. Townsend made a false representation on his application entitling it to rescind the Policies.

---

[8]  Information generated after the claim determination is relevant as to the issue of whether there was coverage under the policy.  *See Curtis Park Grp., LLC v. Allied World Specialty Ins. Co*., No. 20-cv-00552-CMA-NRN, 2020 WL 5406130, *5 (D. Colo. Sept. 9, 2020) (finding that evidence as to the cause of the construction damage, even evidence acquired after Allied World made its decision, is "relevant to the underlying question as to whether there is coverage for this loss under the policy"); *Rowell v. Northwestern Mutual Life Ins. Co.*, 21-cv-00098-PAB-NYW, 2021 WL 5072064, *5 (D. Colo. Aug. 23, 2021).

Turning to the analysis, for Plaintiff to establish her breach of contract claim, she must demonstrate failure to perform the policy's obligations by Northwestern, as well as existence of the contract, Mr. Townsend's performance of the contract, and resulting damages.   *See Marechal v. Safeco Ins. Co*., No. 19-cv-02572-RM-KLM, 2021 WL 4046415, *4 (D. Colo. June 7, 2021).  On the other hand, for Northwestern to demonstrate it was entitled to rescind or "avoid a life insurance policy on the basis of misrepresentations in the application" it must satisfy five factors.  *Hollinger v. Mut. Benefit Life Ins. Co*., 192 Colo 377, 560 P.2d 824, 827 (1977).  They are: (1) "the applicant made a false statement of fact or concealed a fact in his application for insurance"; (2) "the applicant knowingly made the false statement or knowingly concealed the fact"; (3) the omitted fact materially affected the risk; (4) the insurer was ignorant of the fact; and (5) the insurer relied on the omission of the fact in issuing the policy.  *Id*.

### a.     The Validity of the Rescission

The Court first addresses the validity of Northwestern's rescission of the Policies, since that issue determines whether there was a breach of contract.   Plaintiff has not disputed the elements as to rescission or that rescission was appropriate based on the material misstatements by Mr. Townsend.  Again,  Plaintiff asserts only that Northwestern cannot prevail because the evidence as to the material misstatements is not admissible. Nonetheless, the Court finds for the record that the five factors required for a rescission are met in this case.

As to the first element, while Northwestern did not identify a decision from this Court with similar facts to those here, courts from other jurisdictions have held life insurance companies may rely on statements by an insured in his or her medical records concerning

drug use in determining whether misrepresentations in an application have been made. *See, e.g., Burkert v. Equitable Life Assurance Soc'y of Am.*, 287 F.3d 293, 297 (3d Cir. 2002);*Mass. Mut. Life. Ins. Co. v. Jordan*, No. 3:10-0016, 2011 WL 1770435, *4, nn.2,3 (S.D.W.V. May  9, 2011); *Moeller Tevez v. Allmerica Fin. Life. Ins. and Annuity Co.*, 534 F. Supp. 2d 253, 260 (D. P.R. 2008); *Am. Gen. Life Ins. Co. v. Green*, No. 2:06-CV-02048-MCE-KJM, 2008 WL 2096833, *2, 5 (E.D. Cal. May 16, 2008).  The Court finds these cases to be persuasive in concluding that Mr. Townsend made a false statement of fact in connection with his application for insurance.

The second *Hollinger* factor, whether the applicant knowingly made the false statement, is based on an objective standard – that is, "whether a reasonable person, under the circumstances, would have known that the application called for such disclosure."  *Peterson v. USAA Life Ins. Co.*, 814 F. App'x 408, 413 (10th Cir. 2020).  The insurer is not required to prove the insured's subjective intent or intent to deceive the insurer.  *Hollinger,* 560 P.2d at 826-27.  This factor may be decided as a matter of law. *See id.*  The Court also finds that this factor has been met.  *Id.*  (affirming JNOV for insurer where decedent failed to provide information on mental health treatment that was called for in policy application, making a "knowing misrepresentation as a matter of law"); *Peterson*, 814 F. App'x. at 409-11 (affirming summary judgment for insurer where insured omitted respiratory illness information despite unambiguous application question about such illness).  Here, given the unambiguous nature of the question about drug use, the Court finds that a reasonable person would have known the information that was sought from the question and the answer required.  Again, Plaintiff does not dispute this.

The other three factors required for a valid rescission are met as well. The materiality of the cocaine use information, Northwestern's ignorance of that information, and Northwestern's reliance on the Policies' applications have been shown based on the undisputed facts in case. Further, Plaintiff effectively concedes the third factor for purposes of her Motion [#44] (*see id.* at pp. 7, 8 n.3), and does not dispute the remaining factors.

Accordingly, the Court finds that judgment as a matter of law is appropriate in favor of Northwestern on the breach of contract claim unless the evidence about the use of cocaine which forms the basis of the misrepresentation is inadmissible. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985) (holding that only admissible evidence may be considered when ruling on a summary judgment motion). If the medical records relied on by Ms. Townsend are not admissible, then Northwestern does not have a factual basis for supporting its claim of a misrepresentation, and would be unable to prove the first two elements of *Hollinger*. *See Pl.'s Mot.* [#44] at 7. Thus, the Court turns to that issue.

### b.  Whether the Evidence of Misrepresentations is Admissible

The Court first notes as to admissibility of the medical records at issue that there is no material dispute about the authenticity or relevance of the Highlands Record or Sky Ridge Record. As to Plaintiff's hearsay objection to the records, Northwestern argues that the Highlands and Sky Ridge Records are admissible as non-hearsay business records under Fed. R. Evid. 803(6), and that the statements therein as to Mr. Townsend's drug use at age 43 are admissible under Fed. R. Civ. 803(4) as statements for medical treatment purposes. *See Def.'s Mot.* [#41] at 14.

16

Plaintiff disagrees, arguing that the requirements of Rules 803(6) and (4) are not met.  *See Pl.'s Resp.* [#50] at 7-8. Further, Plaintiff argues that the records at issue contain double hearsay because they were recorded by Mr. Repinski and Ms. Merwin in response to a question to Mr. Townsend about his drug use and how old he was when he tried cocaine the first time.  *Id*.  This means, according to Plaintiff, that both levels of hearsay within the records must meet an exception, and that Northwestern cannot demonstrate this.  The Court finds, subject to a discussion of Plaintiff's objections below, that the medical records and the statements at issue therein regarding Mr. Townsend's drug use at age 43 are admissible under Fed. R. Civ. 803(6) and 803(4).

### i.    Admissibility Under Rule 803(6)

Rule 803(6) states, as an exception to the hearsay rule, that records of a  regularly conducted activity are admissible if the requirements of the rule are met.  This is commonly referred as to the business records exception, and such records "are presumed reliable because businesses depend on them to conduct their own affairs, so there is little if any incentive to be deceitful, and because the regularity of creating such records leads to habits of accuracy."  *Jordan v. Binns*, 712 F.3d 1123, 1135 (7th Cir. 2013); *see also* Fed. R. Evid. 803(6) Advisory Committee comments.

Hospital and medical records have been held to conceptually fall within the business records exception, so long as the statements within them meet a hearsay exception.  *See, e.g., United States v. Durham*, 902 F.3d 1180, 1234 (10th Cir. 2018) (citing *Manocchio v. Moran*, 919 F.2d 770, 776 (1st Cir. 1990)); *Walker v. Spina*, No. CIV 17-0991 JB\SCY, 2019 WL 418420, at *2 (D.N.M. Feb. 1, 2019).  Here, Northwestern has demonstrated that the Highlands Record it relied on to deny coverage and rescind the

Policies meets the requirements of Rule 803(6)(A)-(D) for the business record exception. The Highlands Record was identified by Mr. Repinski as prepared by him on behalf of Highlands, at or about the time when he spoke with Mr. Townsend on October 15, 2018, and it was his routine practice to prepare such assessments of patients as part of Highlands' treatment of patients. *See Pl.'s Mot.* [#44], Ex. 7, Repinski Dep. at 9:1-15; 16:11-19:11; 32:11-33:11; 34:9-20; 38:2-43:14; 47:22-49:5. While Plaintiff argues that the record was not one that Mr. Repinski kept in the course of a business activity that he regularly conducted (Plaintiff's Motion [#44] at 14), the proper inquiry is whether the record was kept in the course of a business activity of the business at issue. Here, Plaintiff has not disputed that the Highland record was kept in the course of a business activity (medical services) that Highlands regularly conducted, and Mr. Repinski was an employee of Highlands. Accordingly, Plaintiff's argument as to that issue is without merit.

Mr. Repinski is a qualified witness to testify to the foregoing issues. He is not required to have detailed personal information about Highlands' medical records system in order to do so. *See United States v. Penn*, No. 20-cr-00152-PAB, 2021 WL 4943647 at *3 (D. Colo. Oct. 22, 2021) (rejecting argument that a records custodian can only testify as to documents he or she has first-hand knowledge of) (citing *In re Kim*, 809 F. App'x 527, 540 (10th Cir. 2020) ("[T]he 'custodian or other qualified witness need not have personal knowledge regarding the creation of the document offered, or personally participate in its creation, or even know who actually recorded the information'") (quotation omitted)). Further, application of Rule 803(6) is not limited to statements made to physicians but can include statements made to hospital attendants, *United States v. Woody*, 336 F.R.D. 293, 348 (D.N.M. 2020), and to mental health professionals. *United*

*States v. Gonzalez*, 905 F.3d 165, 199-200 (3d Cir. 2018).  Moreover, it has been applied to statements in evaluations made for involuntary commitment purposes.  *AJ v. Logansport State Hosp.*, 956 N.E.2d 96, 110 (Ind. App. 2011) (decided under state rule counterpart to Rule 803(4), and determining that evaluation report was admissible as business record under state rule counterpart to Fed. R. Evid. 803(6)).

Similarly, Northwestern has shown that the Sky Ridge Record that Northwestern later obtained, and which further supports its decision to rescind the policies is admissible as a business record under Rule 803(6).  Ms. Merlin, a licensed professional counselor and certified addiction counselor, identified the Behavioral Health Assessment she prepared for Mr. Townsend for the HealthOne Crisis Assessment Team while Mr. Townsend was at Sky Ridge.  *Pl.'s Mot.* [#44], Ex. 8.  She further testified that it was accurate based on her notes from her assessment of Mr. Townsend; she initialed the document, and it was then scanned into HealthOne/Sky Ridge's electronic health records; and it was her routine practice in her employment to prepare such assessments for evaluation of emergency room patients whose safety was in question.  *Def.'s Mot.* [#41], Ex. 10, Merwin Dep. at 10-13; 12:12-14:11; 22:2-20; 24:14-17; 30:2-7; 30:18-32:20.[9]

Plaintiff acknowledges that each of the documents at issue constitutes a "record" within the meaning of Rule 803(6) but asserts that the notation to "43" (the age when Mr. Townsend first tried cocaine) does not constitute a record of an "act, event, condition,

---

[9]  In addition, Dr. Holland, the attending emergency room physician at Health One/Sky Ridge when Mr. Townsend was treated there, identified the Sky Ridge Record as having been prepared under his watch by the HealthOne Crisis Assessment Team and being part of "my electronic medical record."  *Def.'s Resp.* [#49], Ex. A, Holland Dep. at 9:10-10-2; 41:8-44:8.  Dr. Holland testified that he would generally expect patients' statements to be accurately reported in such assessments.  *Id*.

opinion, or diagnosis" as required for documents to qualify as a business record. *Pl.'s Mot.* [#44] at 10-11, 19. The Court disagrees, finding that the recording of the age when a person first tried cocaine is the record of an event, relevant to the act of use of cocaine. *See also Walker*, 2019 WL 418420, at *2 (stating that "medical records record an 'act, event, condition, opinion, or diagnosis'" for purposes of Fed. R. Evid. 803(6)) (citing *Doali-Miller v. SuperValu, Inc.*, 855 F. Supp. 2d 510, 516 (D. Md. 2012)).

Plaintiff next argues that the statement "43" was made orally by Mr. Townsend and recorded by Mr. Repinski and Ms. Merlin so it does not qualify as a memorandum, report, record, or data compilation as required by Rule 803(6). *Pl.'s Mot.* [#44] at 14; *see* Advisory Notes to Rule 803(6). Plaintiff asserts that Rule 803(6) was not intended to cover a recording of verbal statements by persons who are not associated with the business. *See Pl.'s Mot.* [#44] at 14. Plaintiff's argument is misplaced. Mr. Repinski, a mental health professional of Highlands, prepared the Highlands Record as part of his duties to obtain information from Mr. Townsend relevant to treatment. Mr. Repinski had a duty on behalf of Highlands to prepare such record accurately, as he testified that the information he sought from Mr. Townsend was required to determine whether the referral to Highlands was appropriate. *See* Ex. 7, Repinski Dep. at 16:6-17. Thus, as Plaintiff acknowledges, Highlands wanted the information in the Highlands Record in order to make a treatment determination. *Pl.'s Mot.* [#44] at 5 n.1, 14 n.4. Based on the foregoing, the requirements of Rule 803(6)(A)-(D) are met.

Plaintiff argues, however, that the Highland Record (and the Sky Ridge Record) do not fall within the business records exception under Rule 803(6)(E) because the source of the information and the method and circumstances of its preparation indicate a lack of

trustworthiness.  *Pl.'s Mot.* [#44] at 11, 14, 19-20.  According to Plaintiff, the character of the statements in the records regarding drug use at age 43, the motivation of Mr. Townsend in making them, and the circumstances under which the statements were made support the lack of trustworthiness of the records.  *See id.* at 8.  The Court addresses each of these issues in more detail, but first addresses the legal standard relevant to a finding of untrustworthiness under Rule 803(6)(E).

There is a presumption in favor of a finding of trustworthiness, and the burden of showing a business record is untrustworthy is on the party opposing the record's admission.  *See* Fed. R. Evid. 803(6)(E); *Kim*, 809 F. App'x at 542.  Factors that may be considered when analyzing trustworthiness are: "(I) the statement's character; (ii) whether the statement is written or oral; (iii) the parties' relationship; (iv) the declarant's probable motivation in making the statement; and (v) the circumstances under which the statement is made."  *New Mexico ex rel. Balderas v. Real Estate Law Ctr.,* 406 F. Supp. 3d 1049, 1073, 1080-81 (D.N.M. 2019) (addressing in context of Rule 807).  Plaintiff concedes as to the Highlands Record (and presumably the Sky Ridge Record) that the statements are written, and that Mr. Repinski (and presumably Ms. Merlin) had an arms-length relationship with Mr. Townsend.  *Pl.'s Mot.* [#44] at 11.  Plaintiff argues, however, that the rest of the factors relevant to a finding of trustworthiness are not met.  *Id*.

Plaintiff first argues that the character of the statement that Mr. Townsend first tried cocaine at age 43 is problematic because no information is known about what the statement "43" actually represents.  *Pl.' s Mot.* [#44] at 11.  Mr. Repinski has no recall of interviewing Mr. Townsend, the specific questions he asked Mr. Townsend, or any answer that Mr. Townsend gave in response.  *Id*. (citation omitted).  At most, Plaintiff asserts that

21

Mr. Repinski could testify to what he believes he *would have* asked Mr. Townsend initially, but without any recall of the rest of the conversation it is not possible to extrapolate that Mr. Townsend definitively told Mr. Repinski that he was 43 years old when he tried cocaine the first (and possibly only) time. *Id*. at 11-12. Plaintiff avers that Mr. Repinski acknowledged that sometimes he has to help patients come up with answers to the substance use questions on the form. *Id*. However, there is no place on the form to record if a patient was unsure of his answer or if Mr. Repinski helped coax an answer. *Id*. The Court rejects this argument as it bears on the issue of untrustworthiness.

Mr. Repinski testified he wrote down what Mr. Townsend told him regarding age of first use of cocaine. *Def.'s Mot.* [#41], Ex. M at 56:17-57:2; *see also* 51:2-4; 57:18-23;70:12-13 (stating "I wrote down 43, and so I'm led to believe he said 43"). Mr. Repinski stated that he would try to record this information as accurately as possible. *Id*. 68:20-69:1. Further, Mr. Repinski further testified that he asked more questions and was "more precise" in recording cocaine usage reported by a patient, as opposed to other substances, because cocaine use can result in severe depressive reactions and is of particular interest to the Highlands doctors. *Id*. at 69:19-70. Under these circumstances, Plaintiff's assertion that the statement regarding first use of cocaine at age 43 is untrustworthy and should be excluded under Rule 803(6) because it is not known what the statement "43" actually represents is rejected as unsupported by the record. This appears to be an attempt by Plaintiff to interject ambiguity in the record when there is none.

Second, as to an alleged lack of trustworthiness based on motivation, Plaintiff asserts that the specific age at which Mr. Townsend tried cocaine the first time was not

important to Mr. Repinski.  *Pl.'s Mot.* [#44] at 12 (citing Ex. 7, Repinski Dep. at 66:5-18; 68:20-69:1, 70:21-71:14).  Mr. Repinski's motivation in recording the statement was not to get a precisely accurate age but to assess whether Mr. Townsend's history of using the drug would make him an unsuitable candidate for treatment at the facility.  *Id.*, Ex. 7 at 69:4-70:2.  Thus, Plaintiff avers that whether Mr. Townsend was 43 or 44 did not matter to Mr. Repinski. *Pl.'s Mot.* [#44] at 12.  Again, the Court rejects this argument, finding that this does not weigh against the trustworthiness of the statement.  First, Mr. Repinski did not actually testify that this information was not important.  He stated that while he *did not know* if it was important, he would try to record it as accurately as possible.  *Id.*, Ex. 7 at 68:20-69:1.  Mr. Repinski further stated that as Mr. Townsend had only used cocaine once or twice, he "would have expected him to have a little more accuracy on when it was. . . . [s]o I'm assuming he recalled that one because it was more recent to his age, but that would have been the number he gave me."  *Id.* 66:23-67:5.

Third, Plaintiff argues that the circumstances under which the statement "43" was made suggest that trustworthiness is lacking, as Mr. Repinski acknowledged that he did not complete the form correctly.  *Pl.'s Mot.* [#44] at 12.  In fact, Plaintiff notes that Mr. Repinski referred to himself as "sloppy" and advised that he would have gotten in trouble in an audit.  *Id.* (citation omitted).  Mr. Repinski further testified that sometimes he would be in a rush or in a hurry and that may affect how he completes a form, and that this was particularly true with an early morning admission.  *Id.* at 12-13 (citation omitted).  The Court again rejects this argument as a basis to find the Highland Record inadmissible under Rule 803(6)(E) on the basis that it is untrustworthy.  While Mr. Repinski may not have filled out the Highland Record perfectly, his testimony regarding the statement at

issue here is unequivocal: he wrote down what Mr. Townsend told him - that Mr. Townsend used cocaine at age 43. *Def.'s Mot.* [#41], Ex. M, Repinski Dep. at 56:17-57:2. Any minor imperfections in the Highlands Record, including alleged failure to check boxes, do not render it so untrustworthy as to be deemed inadmissible under Rule 803(6), given Mr. Repinski's unequivocal testimony that he wrote down what Mr. Townsend said. *See Pettway v. Squier*, No. 12–11040, 2014 WL 4924302, *8 (E.D. Mich. Sept. 25, 2014) (stating that a "minimal misstatement" in a medical record does not render the record untrustworthy); *see also Kitchen v. BASF*, 952 F.3d 247, 255 (5th Cir. 2020) (rejecting challenge to trustworthiness of medical records containing plaintiff's statements regarding his reported alcohol usage, finding that "it was not an abuse of discretion to admit what appear to be routine medical records").

Plaintiff also asserts that the circumstances in which the Highland Record (and Sky Ridge Record) were made indicate that they lack the trustworthiness required for admission as a business record. Mr. Townsend was sent to Highlands (and Sky Ridge) on an involuntary mental hold and because he was not there by choice, his motivation to provide accurate information did not exist like it would if he had sought treatment on his own. *Pl.'s Mot.* [#44] at 14, 19. In addition, Plaintiff notes that Mr. Townsend arrived at Highlands at approximately 1:30 a.m. by ambulance, on a gurney, after having spent seven or eight hours at Sky Ridge Medical Center. *Id.* Mr. Repinski testified that these factors can affect recall. *Id.* at 14-15 (citation omitted). Mr. Townsend had also just been through the trauma of attempting suicide after consuming several alcoholic drinks. *Id.* at 15. These are circumstances that could affect Mr. Townsend's recall according to Ms. Merwin. *Id.* at 19 (citation omitted). Further, because the form does not give the

technician the ability to record details about patients' answers, it cannot be known whether Mr. Townsend gave any indications that he was struggling with accurate recall. *Id*. Again, the Court rejects these arguments as a basis to find that the statements are sufficiently untrustworthy to be denied admission under Rule 803(6)(E).

Even if Mr. Townsend were unhappy to be subject to a mental health hold as Plaintiff argues, the Court agrees with Northwestern that such circumstance would actually buttress the trustworthiness of his admissions regarding cocaine use instead of the opposite. Mr. Townsend would have had no incentive to falsely state he had used cocaine at age 43 if he sought to be released from treatment as quickly as possible. *See Def.'s Resp.* [#49] at 16. As Plaintiff acknowledges, the motivation of the patient making the statements in reference to medical treatment "is the factor crucial to reliability." *Moeller Tevez*, 534 F. Supp. 2d at 260.[10] Moreover, nothing in Rule 803(4), which is more specific as to the statements in the medical records as discussed in the next section, precludes the Rule's application to mental health treatment provided after a mental health

---

[10] The cases cited by Plaintiff in her Motion [#44] at page 13 do not correlate to the facts here and do not aid her argument regarding the inadmissibility of the Highlands Record. *See Arbuckle v. Dorsey*, 189 F.3d 477, 1999 WL 672274, at *4 n. 2 (10th Cir. 1999) (unpublished) (in *habeas* case involving child abuse conviction, holding inadmissible statements by defendant's girlfriend regarding the defendant, incorporated into medical records, as girlfriend was under no "business duty or compulsion to provide accurate information"); *New England Mut. Life Ins. Co. v. Anderson*, 888 F.2d 646, 650-51 (10th Cir. 1989) (statements by defendant admitting to conspiring to kill her husband, contained in newspaper article, not admissible under residual hearsay exception); *Morrissey v. Ulibarri*, No. 8-CV-246 WJ/RHS, 2010 WL 11469913, **3-4 (D.N.M. Apr. 28, 2010) (in Eighth Amendment deliberate indifference case, statement by nurse in medical records recounting conversation between physician and prison warden regarding defendant's having missed medical appointments was inadmissible under Rule 803(4) as it was not made by the plaintiff (the patient) and thus bore "no indicia of reliability similar to that of a patient's description of his symptoms to his doctor").

hold is placed on a patient, and the rule has been applied in involuntary commitment proceedings.  *See AJ*, 956 N.E.2d at 110.

Plaintiff further asserts that the Highland Record indicates that Mr. Townsend was, in fact, unsure about the answers he was giving.  *Pl.'s Mot.* [#44] at 15.  Mr. Townsend reported to Mr. Repinski using cocaine "1-2x only."  *Id*.  Plaintiff avers that those two statements were potentially true according to Mr. Townsend's memory, *i.e.,* that he tried cocaine one time *or* that he tried it two times.  *Id*. at 16.  In other words, Plaintiff avers that Mr. Townsend appears to have told Mr. Repinski that he may have only tried cocaine once; he was not certain; and at most he would have tried it twice.  *Id*.  According to Plaintiff, the lack of certainty about how many times Mr. Townsend used the drug calls into question the accuracy of any subsequent statement about when he used it.  *Id*. Likewise, if Mr. Townsend tried cocaine just one time, Plaintiff asserts that the "Age of 1st Use" should match up with the "Last Use" answer.  *Id*.  Mr. Townsend was 44 in March 2018, so if Mr. Townsend used cocaine once in March 2018, the answer "43" to the "Age of 1st use" question was incorrect.  *Id*.  Plaintiff further avers that another potentially true statement according to the form is that Mr. Townsend tried cocaine twice in March 2018 and in that case as well, "43" would be incorrect.   Again, the Court rejects these arguments.

Mr. Repinski did not testify, as Plaintiff asserts in her Motion [#44] at 16, that the statements as to first and last use of cocaine conflicted.  Instead, Mr. Repinski testified that he did not "know it's that's an inconsistency or what that might refer to[,]" but that he wrote down what Mr. Townsend said about the age of first use of cocaine.  *Pl.'s Mot.*, Ex. 7, Repinski Dep. at 56:17-57:23.  From a purely common-sense viewpoint, it appears

from the record that while Mr. Townsend initially said he used cocaine one to two times, he then implicitly acknowledged using it at least twice when he said he was 43 when he first used it and last used it in March 2018 (when he would have been 44).  No other explanation makes sense.   In any event, the record unambiguously states that Mr. Townsend first used cocaine at age 43.  This is the statement that Northwestern relied on in denying coverage. Plaintiff's assertion that Mr. Townsend may have been "unsure" about that is mere conjecture that is not supported by the record.   *See Coleman-Domanoski v. St. Paul Guardian Ins. Co.*, 456 F. Supp. 3d 1250, 1254 (D. Colo. 2020) (holding that "statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence"); *see also Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1061 (10th Cir. 2009) (holding that "the argument of counsel is not evidence, and cannot provide a proper basis to deny summary judgment").

Further supporting the Court's view that the above-referenced argument of Plaintiff does not support a finding that the Highlands Records is untrustworthy such that it should be denied admission under Rule 803(6) is the fact that Mr. Townsend made the same statement about the first use of cocaine at 43 and last use in March 2018 to Ms. Merlin in connection with the Sky Ridge Record, only hours before he was transferred to Highlands. *Def.'s Mot.* [#41], Ex. L.  Ms. Merlin testified that the notation that Mr. Townsend first used cocaine at age 43 was information provided by Mr. Townsend.  *Pl.'s Mot.* [#44], Ex. 10, Merlin Dep. at 35:15-19, 42:16-43:4, 75:2-18.  Based on the foregoing, the Court finds no basis to conclude that the statement in the Highlands Record regarding first use of cocaine at 43 (as corroborated by the Sky Ridge Record) is untrustworthy such that the records should be deemed inadmissible under Rule 803(6)(E).  Accordingly, the Court finds that

the requirements of Rule 803(6) are met as to the Highlands and Sky Ride Records such that they are admissible under that rule.  That does not, however, address whether the statements within the records are admissible.  Thus, the Court turns to Rule 803(4).

### ii.    Admissibility Under 803(4)

Statements in medical records by a patient such as Mr. Townsend are admissible under Fed. R. Evid. 803(4) as a hearsay exception if they are made for purposes of medical diagnosis or treatment and describing medical history.  *See, e.g., Golden Rule Ins. Co. v. Skees*, No. 05-cv-00803-EWN, 2008 WL 11515575, *1 n.1 (D. Colo. July 29, 2008).[11]   Courts have found that this includes statements in medical records by the insured concerning the insured's drug use.  *See, e.g., Mass.* Mut. *Life Ins. Co. v. Jordan*, No. 3:100016, 2011 WL 1770435 at *4, n.3 (S.D.W.V. May 9, 2011) (admission by decedent in medical records that he used heroin on the date of the overdose was admissible under 803(6) and 803(4); *Moeller Tevez v. Allmerica Fin. Life Ins. and Annuity Co.*, 534 F. Supp. 2d 253, 260-61 (D. P.R. 2008); *Am. Gen. Life Ins. Co. v. Green*, No. 2:06-CV-02048-MCEKJM, 2008 WL 2096833 at *4-5 (E.D. Cal. May 6, 2008).[12]

---

[11]  While Plaintiff relies on this case to support her argument regarding the inadmissibility of the medical records under Rule 803(4), this argument is unavailing.  In the *Golden Rule* case, Plaintiff notes that the Court considered that there was no "specific allegation on Defendants' behalf disputing the accuracy of any piece of information on the record or offering any alternative fact scenario or contrary evidence that would suggest the falsity of the record" in determining whether to admit the medical records.  *Pl.'s Resp.* [#50] at 14 (quoting *id.*, 2008 WL 11515575, at *1 n. 1). According to Plaintiff, that is the opposite of the circumstances here.  *Id*.  However, the *Golden Rule* Court considered that issue only in the context of an objection to the *authenticity* of the records, *id.*, which is not at issue here.  *Id.*, 2008 WL 11515575, at *1 n. 1.  Relevant to this case, the Court found the medical records were admissible under Rule 803(4), and that they demonstrated material misstatements as required to establish the first *Hollinger* element regarding rescission of the policy at issue.  Id. at *1-2 and n. 1.

[12]  Plaintiff provides no authority for her attempt to factually distinguish these cases based on the timing of when the medical records were generated.  *See Pl.'s Resp.* [#50] at 14. In fact, the

The Tenth Circuit has characterized the exception to hearsay under Rule 803(4) as "founded on a theory of reliability that emanates from the patient's own selfish motive" – the understanding that the "effectiveness of the treatment received" will "depend upon the accuracy of the information provided."  *United States v. Joe*, 8 F.3d 1488, 1493-94 (10th Cir. 1993); *see also White v. Illinoi*s, 502 U.S. 346, 355 (1992) ("statements made in the course of receiving medical care . . . are made in contexts that provide substantial guarantees of their trustworthiness").  "The same guarantee of trustworthiness extends to statements of past conditions and medical history, made for purposes of diagnosis or treatment."  Fed. R. Evid. 803(4) Advisory Committee comments.

Turning to Plaintiff's objections, she first argues that the statements do not qualify under Rule 803(4) because Mr. Townsend did not make them so that he could get medical treatment or so that a doctor could diagnose a medical (or mental health) condition.  *Pl.'s Mot.* [#44] at 13-14; *see* Fed. R. Evid. 803(4)(A) (requiring that a statement be made and reasonably pertinent to medical diagnosis or treatment).  Plaintiff notes that Mr. Townsend was at Sky Ridge and Highlands involuntarily and made a statement to the effect that he thought the admission was a "charade."  *Pl.'s Mot.* [#44] at 14 (citing Ex. 6 at 48, Ex. 19).  Plaintiff avers that the fact that Highlands or Sky Ridge may have wanted the information for purposes of assessing whether Mr. Townsend was a candidate for treatment is not relevant to the analysis of the motivation regarding Mr. Townsend's statements.  *Id.* at 14 n. 4.  In fact, according to Plaintiff, Mr. Townsend did not say anything about using cocaine in the context of getting treatment for his slashed wrist, and he was not asked any drug

---

records at issue in *Moeller Tevez* were generated after the life insurance policy had issued, and included statements of drug use predating the policy application.  534 F. Supp. 2d at 260.

use questions at that time.  *Pl.'s Reply* [#54] at 8.  It was not until Mr. Townsend was under an "M-1" involuntary hold that he was asked about substance usage. *Id*.  In addition, Plaintiff argues that Mr. Townsend was not describing any "medical history" or "past or present symptoms or sensations" as required for admission pursuant to Rule 803(4)(B). *Pl.'s Mot.* [#44] at 14; *Pl.'s Reply* [#54] at 8.  Accordingly, Plaintiff contends that the medical diagnosis or treatment exception does not apply.   Id.  The Court rejects these arguments.

It is undisputed that Mr. Townsend presented to Sky Ridge for treatment of a slashed wrist which he eventually conceded was a suicide attempt.  As a result, Mr. Townsend received mental health assessment at Sky Ridge and Highlands and treatment at Highlands.  The statement made by Mr. Townsend responding to an inquiry about cocaine use was part of his relevant history for purposes of medical treatment, and was part of the assessment as to whether he could be treated at Highlands as testified to by Mr. Repinski.  Whether or not Mr. Townsend thought his admission was a "charade[,]" his statement about past cocaine use is one of "past conditions and medical history, made for purposes of diagnosis or treatment."   Rule 803(4) Advisory Committee comments to Rule 803(4).  The Tenth Circuit has made clear that "drug use is an important indicator of a patient's physical condition." *Phillips v. Hillcrest Med. Center*, 244 F.3d 790, 800 (10th Cir. 2001); *see also Kelly v. Haralampopolous*, 327 P.3d 255, 264 (Colo. 2014); *Wilson v. Greyhound Lines, Inc.*, No. 13-cv-3013-SHL-cgc, 2016 WL 8314608, at *7 (W.D. Tenn. Jan. 19, 2016).

Further, as noted earlier, the fact that Mr. Townsend may have been on an involuntary hold does not change this result.  Even if Mr. Townsend did not want to be at

Sky Ridge or Highlands, he knew he was being evaluated for possible medical treatment. Accordingly, he would have had no motivation to lie about drug use as previously discussed, particularly as his admission of that use would likely not facilitate his release.

Finally, Plaintiff argues that because Mr. Townsend's statements were made in response to questioning from Mr. Repinski and Ms. Merlin and were recorded by them on the form, this constitutes inadmissible double hearsay under Fed. R. Evid. 805. *See Pl.'s Mot.* [#44] at 9, 18; *Pl.'s Resp.* [#50] at 7. The Court agrees with Plaintiff that the statements constitute double hearsay, but disagrees that the statements are inadmissible.

This issue was addressed by the Fifth Circuit in *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260 (5th Cir. 1991). The *Wilson* court found that a hospital record prepared by a hospital employee with information supplied by another person is double hearsay. *Id.* at 271. It held that if both the source and recorder of information, as well as every other participant in the chain which produces the record, are acting in the regular course of business, multiple hearsay is excused by the business records exception. *Id*. If, however, the information is provided by an outsider to the business, such as in this case with Mr. Townsend, then the outsider's statement must fall within another hearsay exception to be admissible. *Id*. The Fifth Circuit held that such statements in medical records may come in under Rule 803(4) when the statements are made for purposes of medical diagnosis or treatment. *Id*.

Consistent with that holding, courts routinely find that statements of patients that are recorded in medical records by employees of the health care facility are admissible under Rules 803(6) and (4). *See, e.g., Darby v. Primamerica Life Ins. Co.,* No. 20-1723, 2021 WL 1753812, *3, 5 (E.D. La. May 4, 2021) (finding that medical records may be

admissible as business records and that statements made by insured or medical treatment or diagnosis are not excluded by the hearsay rule, including statement where insured told his health care providers that he suffered from panic attacks, depressed mood, and that he "[r]eport[ed] problems w/mood swings and anxiety for the past 8 yrs or so"); *Montoya v. Sheldon*, No. CIV 10–0360 JB/WDS, 2012 WL 6632524, at *7 (D.N.M. Oct. 31, 2012) (finding that the plaintiff's statements within emergency room record were not inadmissible double hearsay); *Mass. Mut. Life. Ins. Co.*, 2011 WL 1770435, *4, nn.2, 3 (finding that medical record with admission that the insured used heroin the evening of the overdose was admissible under Rule 803(4) and (6)); *Moeller Tevez*, 534 F. Supp. 2d at 260 (holding that information given by insured to healthcare providers in the context of supplying medical treatment constitutes a hearsay exception under Rule 803(4)); *cf. Walker*, 2019 WL 418420, at *1 (admitting statements that Walker made to her treatment providers for medical diagnosis or treatment under Rule 803(4)(b) and 803(6), but not statements about who or what caused Walker's injuries that were not reasonably pertinent to medical diagnosis or treatment).

In short, "[h]earsay within hearsay" is "admissible 'if each part of the combined statements conforms with an exception to the rule.'" *Montoya v. Sheldon*, 2012 WL 6632524, at *7 (quoting Fed. R. Evid. 805). Here, based on the above-cited cases, the recording of Mr. Townsend's statement made in the regular course of business by Mr. Repinski and Ms. Merlin is admissible under Rule 803(6), and the underlying statement made by Mr. Townsend is  admissible under Rule 803(4). Accordingly, the statements by

Mr. Townsend in the Highlands Record and Sky Ridge are admissible, and Plaintiff's argument to the contrary is rejected.[13]

Because Northwestern has shown that it was entitled to rescind the Policies based on admissible evidence regarding material misstatements by Mr. Townsend in the Highlands and Sky Ridge Records, Defendant's Motion [#41] is **granted** as to the breach of contract.  Plaintiff's Motion [#41] is **denied**.

### 2.    Bad Faith Claim

For Plaintiff to state a plausible bad faith claim, she must demonstrate that Northwestern acted without a reasonable basis and knowingly or recklessly disregarded the validity of Plaintiff's claim.  *See Marechal v. Safeco Ins. Co.*, No. 19-cv-02572-RM-KLM, 2021 WL 4046415, *7 (D. Colo. June 7, 2021).  "'What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury. However, in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law.'"  *Polland v. State Farm Mut. Auto. Ins. Co.*, No. 19-cv-01416-KLM, 2019 WL 10258801, *7 (D. Colo. Oct. 15, 2019) (quotation omitted).

---

[13]  To the extent Plaintiff argues that statements Mr. Townsend made to her and a close family friend, Heather Kazarian, contradict the Highlands and Sky Ridge Records regarding the timing of Mr. Townsend's cocaine use, this argument is unavailing.  Plaintiff argues that the statements support the conclusion that Mr. Townsend only used cocaine in March 2018, and thus that he did not make a false statement on the MHQ in June 2017.  *Pl.'s Resp.* [#50] at 16. However, this is not accurate as the statements relied on by Plaintiff do not definitively show when Mr. Townsend first used cocaine.  While Plaintiff notes Plaintiff's testimony that Mr. Townsend told her in June 2018 that he used cocaine "earlier that year" (Plaintiff's Motion [#44], Ex. 4, Karen Townsend Dep. at 38:18-23), Plaintiff conceded that she could not rule out the possibility that Mr. Townsend used cocaine when he was 43 years old.  *Pl.'s Resp.* [#50], Ex. 4, Karen Townsend Dep. at 75:17-77:21.  The statement by Mr. Townsend to Ms. Kazarian in July 2018 stated only that he knew where to get cocaine, and did not discuss the timing of drug use.  *Id.*, Ex. 5. Accordingly, these statements do not contradict the unambiguous statements in the Highlands and Sky Ridge Records that Mr. Townsend first used cocaine at age 43.

The Court finds that judgment as a matter of law in Northwestern's favor is appropriate on the bad faith claim.  First, Plaintiff has provided no authority to refute the case authority cited by Northwestern that holds when the Court has found there is no underlying coverage, as here, a bad faith claim cannot lie.  *Coleman-Domanoski*, 456 F. Supp. 3d at 1263.  The *Coleman-Domanoski* case cited *MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184 (10th Cir. 2009), which "concluded that the insurance companies' denial of coverage was proper as a matter of law" and that as a result the district court's grant of summary judgment in the insurance companies' favor on the bad faith claim must be affirmed. *Id*. at 1192.  In so finding, the Tenth Circuit stated that "[i]t is settled law in Colorado that a bad faith claim must fail if, as is the case here, coverage was properly denied, and the plaintiff's only claimed damages flowed from the denial of coverage."  *Id*. (citing cases).

Second, to the extent Plaintiff may be asserting that she has damages based on Northwestern's failure to properly investigate that are separate from the denial of coverage, the claim also fails.  It is undisputed that the Highlands Record containing Mr. Townsend's report of cocaine states on its face that Mr. Townsend used cocaine at age 43, which was within ten years of the MHQ.  This record is admissible as previously discussed, and the Court finds as a matter of law that it was reasonable for Northwestern to rely on that record in denying coverage.[14]  *See Am. Gen.,* 2008 WL 2096833 at *9 (stating, "Ms. Green cites to no relevant case law, nor has this Court found any, supporting the proposition that, in order to conduct an investigation in good faith, an insurer

---

[14]  The statement regarding drug use at age 43 was also later corroborated by the Sky Ridge Record.

confronted with evidence of an insured's past drug use must contact the insured's doctors, rather than relying solely on his medical records, to rescind a policy.  To the contrary, the relevant case law indicates that insurance companies can properly rely on medical records to deny a claim"); *Roberts v. State Farm Mut. Auto. Ins. Co.,* 61 F. App'x 587, 591-92 (10th Cir. 2003) (finding that where insurer requested all relevant information from Mr. Roberts' attorney and his doctors, and nothing in those records suggested they were incomplete or erroneous, "no reasonable jury could have concluded that State Farm's investigation was unreasonable under the circumstances")[15]; *see also Kimmel v. W. Reserve Life Assurance Co.,* 678 F. Supp. 2d 783, 805-06 (N.D. Ind. 2010).

Plaintiff argues, however, that summary judgment must be denied as to the bad faith claim because "there is evidence that Northwestern's investigation of the claim and its ultimate decision were unreasonable[,]" relying on the opinion of her expert Laura Parker.  *Resp.* [#50] at 18.  Ms. Parker opines that additional investigation should have been undertaken by Northwestern to ensure the accuracy of the information from the records at issue to ensure a full, fair, and thorough claims decision, especially when there were reasons to question the reliability of the records and they were used as the sole basis for invalidating a claim.  *Id.*; *see Parker Report*  [#40-4] at 17-27.  However, as discussed earlier, the Court found that Northwestern was entitled to rely on the Highlands Record to rescind the policies as a matter of law.  Moreover, Ms. Parker conceded in her deposition that Northwestern had the right under insurance industry standards to rely on the Highlands Record.  *Motion to Exclude* [#37], Ex. H at 67:11-68:4.

---

[15]  Here, it is undisputed that Plaintiff did not respond to Northwestern's invitation to submit further information in response to Northwestern's coverage determination letter.

In addition, the Court agrees with Northwestern that Plaintiff cannot show any further investigation would have changed the claim outcome. *See Def.'s Mot.* [#41] at 19. Plaintiff has not pointed to any such evidence. As the Court previously discussed, Mr. Townsend's statements which were made to Plaintiff and to family friend Heather Kazarian did not provide a definitive date of first use of cocaine. Similarly, the Court finds that Northwestern has demonstrated in its Motion to Exclude [#37] that the various avenues that Ms. Parker stated could have been explored also would not gained relevant information or refuted the Highland Record (and Sky Ridge Record) showing Mr. Townsend's drug use at 43. See *id.* at 7-8, 15-17. Insurers do not act unreasonably in failing to pursue investigation of claims that would not yield information that would change their coverage determinations. *See, e.g., Sims v. Great Am. Life Ins. Co*, 469 F.3d 870, 891-93 (10th Cir. 2006). As noted by the court in *American General*:

> [C]ontrary to the authority provided by [plaintiff], and contrary to her own argument in opposition of this Motion, any further investigation would have been futile. [The insurer] would not have uncovered additional facts that would have required it to honor the Policy. Indeed, [plaintiff] is unable, even now, to put forth such facts that she claims [the insurer] should have labored to expose.

*Id.*, 2008 WL 2096833 at *9. [16]

---

[16] While not necessarily dispositive, the Court further notes as to Ms. Parker's opinions regarding an alleged inadequate investigation that they appear to be based on an unreliable basis – a misstatement of Colorado law on insurer conduct. Opinions based on improper or erroneous legal standards are not admissible. *See Slavin v. Garrison Prop. & Cas. Ins. Co.*, No. 14-cv-01839-LTB-KMT, 2017 WL 2928030, *6-7 (D. Colo. July 10, 2017) ( excluding claim handling expert's opinions premised on erroneous purported "utmost good faith" standard). The relevant standard for an investigation is reasonableness under the circumstances. *Marechal*, 2021 WL 4046415 at *7. It is not, as the Response [#40] argues, a duty to "search[ ] out" further information. *Id.* at 9. In addition, Ms. Parker's opinions regarding "equal consideration" are not supported by Colorado law in this first-party life insurance case. *See, e.g., Zolman v. Pinnacol Assurance Co.*, 261 P.3d 490, 501 (Colo. App. 2011) (holding that equal consideration standard applies only in third-party context). Also, to the extent that Ms. Parker questions the veracity of the Highlands Record based

Based on the foregoing, Plaintiff has not shown that a reasonable jury could find that Northwestern acted without a reasonable basis on Plaintiff's claim for benefits, let alone that Northwestern acted with knowing or reckless disregard as required for a bad faith claim.  Accordingly, Defendant's Motion [#41] is **granted** as to the bad faith claim.

### 3.    Declaratory Judgment Claim

Plaintiff seeks a declaration that coverage under the joint policy should be reinstated.  Compl., ¶ 38.  However, as the Court has found that Plaintiff cannot prevail as a matter of law on her breach of contract claim, the declaratory judgment claim must also be dismissed. *See Adams v. FedEx Ground Package Sys., Inc.*, 564 F. App'x 772, (10th Cir. 2013) (finding that the declaratory judgment claim failed "because there are no rights left to be declared under [the plaintiff's] other failed claims).

### B.    Motion to Exclude

The Motion to Exclude [#37] is **granted** as to the opinions of Ms. Parker that were discussed in connection with the summary judgment motions.  To the extent that Ms. Parker opined to other issues that the Court did not find pertinent to resolution of the summary judgment motions and that were meant to assist the jury in resolution of the issues, the Court finds that these opinions are moot in light of this Order.  Accordingly, the Motion to Exclude is **granted in part** and **denied as moot** in part.

### IV.   CONCLUSION

Based upon the foregoing,

---

on alleged ambiguities (see Motion to Exclude [#37] at 6, summarizing these opinions), these issues were resolved by the Court in connection with Plaintiff's argument that the records were untrustworthy and should be denied admission under Rule 803(6)(E).

IT IS HEREBY **ORDERED** that Defendant's Motion for Summary Judgment [#41] is **GRANTED**.  Judgment shall enter in favor of Defendant on all claims.

 IT IS FURTHER **ORDERED** that Plaintiff's Motion for Partial Summary Judgment [#44] is **DENIED**.

IT IS FURTHER **ORDERED** that Defendant's Rule 702 Motion to Exclude Opinions of Plaintiff's Proffered Expert Laura Parker [#37] is **GRANTED IN PART AND DENIED AS MOOT IN PART, consistent with this Order.**

**IT IS FURTHER ORDERED** that in light of the grant of summary judgment in favor of Northwestern on all claims, the five-day jury trial set to commence on April 18, 2022, and the Final Pretrial/Trial Preparation and Jury Instructions Conference set on April 13, 2022, at 9:30 a.m. are **VACATED**. The Clerk of Court is directed to **CLOSE** this case.

Dated:  February 28, 2022

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge